UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

VIRTUAL STUDIOS, INC.

      Plaintiff,

v.

BEAULIEU GROUP, LLC,

      Defendant.

CIVIL ACTION NO. 1:11-cv-359

CLC/Lee

JURY DEMAND

---

**Virtual's Brief in Response to Beaulieu's Motions for Summary Judgment**

---

## I. Introduction

In disposing of Beaulieu's motions, the Court must primarily address only four simple, straightforward issues:

1. **Existence of an accord and satisfaction** – In Tennessee, a binding accord and satisfaction exists when the parties manifest their unmistaken intent to enter an agreement settling a debt or dispute. Here, the parties did not execute a settlement or release, did not agree on settlement terms, and did not exchange consideration to resolve Virtual's claim. Can Beaulieu show as a matter of law that Virtual entered a binding accord and satisfaction?

2. **Ownership of a copyright** – Under federal law, employers are the authors and owners of copyrighted works created by their employees absent a written agreement to the contrary. Here, Virtual's full-time staff photographers took photographs that Virtual later copyrighted. Without a written agreement to the contrary, is Virtual the owner of copyrighted photos taken by its photographers?

3. **Existence of a license agreement** – Beaulieu argues that it never agreed to the limited license governing Virtual's photos because it never signed such license and because its employees claimed they did not agree to one. But Virtual's president testified that he personally explained the terms of the license to Beaulieu's employees, and evidence shows that each invoice

Beaulieu paid to Virtual contained a written one-year term of use.  Can Beaulieu show as a matter of law that there was no license agreement?

4.  **Evidence of Infringement** – Beaulieu argues that Virtual has failed to "link" Beaulieu's use of any image to a breach of Virtual's limited license.  But both parties produced documents showing the dates Beaulieu paid for Virtual's images and Beaulieu's use of these images more than one year after payment.  When the use of the images more than a year after payment is prohibited by the license in every invoice, can Beaulieu show as a matter of law that Virtual has no evidence of infringement?

## II. Background

A.  **Virtual offered digital photographic alteration services to customers within the carpet and flooring industry.**

In 1996 Virtual began business as a graphic design company that catered to carpet manufacturers in Dalton, Georgia.[1]  Though it offered a number of services to its clients, one of the most significant was that of "virtual room scene" manipulation.  This process entailed the digital alteration of photographs of rooms so as to virtually display an image of a client's flooring product—be it carpet, tile, or wood—in a room.[2]  Virtual could do this by taking high resolution photographs of small carpet samples called "swatches."[3]  Then, instead of photographing rooms with a client's carpet actually installed, Virtual could just digitally add the carpet to a pre-existing "room scene" photograph.[4]

In addition to offering this photographic manipulation service, Virtual also offered its clients a large and growing selection of room scene images in which to advertise their products.[5]  These images ranged broadly in type and style.  There were pictures of bedrooms, bathrooms,

---

[1] Sucher Aff. at ¶ 3.

[2] Sucher Dep. at 40:21-41:14.  Excerpts of Mr. Sucher's deposition transcript are attached to this brief as Exhibit A.

[3] Sucher Aff. at ¶ 6.

[4] Sucher Aff. at ¶ 7.

[5] Suhcer Aff. at ¶ 8.

dining rooms, and living rooms in houses of varying decorum, just as there were images of modern offices and school rooms.[6] Virtual obtained a small handful of these pictures from others, but the vast majority of Virtual's huge room scene library was comprised of images its staff photographers took on location.[7]

When clients wanted to use one of these room scenes to advertise their products, they had three different license options:

Option 1:     They could purchase a room scene outright for a flat fee of $750.

Option 2:     They could purchase the exclusive right to use one of Virtual's room scenes for one year for a flat fee of $500, though they had to hire Virtual to perform any additional manipulations of that image—at around $300 per manipulation—during the one-year term.

Option 3:     They could obtain the non-exclusive right to use one of Virtual's room scenes for one year for no fee, though they had to hire Virtual to perform any additional manipulations—at around $300 per manipulation—of that image during the one-year term.[8]

## B.      Beaulieu began using Virtual for room scene manipulation in the late 1990s.

Around 1997, Virtual began doing work for Beaulieu, one of the largest carpet manufacturers in the world.[9] At that time Beaulieu already owned a number of room scenes, so it used Virtual only for its manipulation services.[10] But within a couple of years, Beaulieu

---

[6] Sucher Aff. at ¶ 9.

[7] Sucher Aff. at ¶ 10. The only third party from which Virtual purchased room scenes was called Crown Craft. Sucher Aff. at ¶¶ 32, 33. Other than the approximately 16 images it obtained from Crown Craft, every other image in Virtual's room scene library was photographed by a Virtual staff photographer. *Id.*

[8] Sucher Dep. at 24:21 - 25:18.

[9] Sucher Dep. at 39:18-21. Beaulieu claims on its website that it is "the third largest flooring manufacturer and the largest carpet-only maker in the world." http://www.blissflooring.com/bliss/about/beaulieu/beaulieu/floor-covering.aspx (last accessed April 2, 2013).

[10] Sucher Aff. at ¶ 11.

started obtaining new room scenes from Virtual's library.[11]  Though Virtual's president, Tom

Sucher, explained all three of Virtual's room scene options, Beaulieu only wanted to do business

under the terms of Option 3.[12]

So, starting around 1999 or 2000, Virtual began providing room scene images to

Beaulieu for its advertising under a non-exclusive, one-year term of use.[13]  Whether or not

Beaulieu sent Virtual purchase orders for this room scene work, Virtual issued invoices to

Beaulieu detailing its work and charges.[14]  Though the terms of Option 3 were not listed in the

invoices, each did contain written "Terms and Conditions" outlining a number of the parties'

rights and responsibilities.[15]  And indeed, some of these reflected the short duration and limited

nature of Beaulieu's license to use Virtual's room scenes under Option 3:

1.  Virtual Studios will provide its Client with the unlimited use of all photographs for a period of one year from the day of completion and payment of services as stated below.

4.  Client may not assign or transfer this agreement, or any rights granted hereunder.  This agreement binds and inures to the benefit of Virtual Studios; Client, Client's principals, employees, agents and affiliates are jointly and severally liable for the performance of all payment and other obligations hereunder.  No amendment or waiver of any terms is binding unless set forth in writing and signed by the parties.  This agreement incorporates by reference Article 2 of the Uniform Commercial Code, and the Copyright Act of 1976, as amended.[16]

Beaulieu never voiced any objection to these terms, nor did it fail to make payment on

most, if not all of Virtual's invoices over the next eight or nine years.[17]

---

[11] Sucher Aff. at ¶ 12.

[12] Sucher Aff. at ¶¶ 13, 14.

[13] Sucher Aff. at ¶ 15.

[14] Suhcer Aff. at ¶16.

[15] The "Terms and Conditions" are attached to this brief as Exhibit B.

[16] *Id.*

[17] Stern Dep. at 44:21-45:4; Sucher Aff. at ¶¶ 17, 18.  Attached as Exhibit C to this brief are excerpts from Mr. Stern's deposition transcript.  Attached to this brief as Exhibit D is a spreadsheet Beaulieu created that lists information related to the hundreds of payments Beaulieu made to Virtual over the years on Virtual's invoices.

**C.  Virtual discovered that Beaulieu had been using its room scenes beyond the one year term of use and had been getting third parties to perform manipulations upon the images.**

In 2007 or 2008, Virtual discovered that Beaulieu had not been abiding by the terms of their arrangement.[18]  Specifically, Mr. Sucher noticed that Beaulieu's products were being advertised in retail stores such as Home Depot, Lowe's, and Carpets of Dalton with images that Virtual provided Beaulieu years before.[19]  Further, he noticed that some of these images contained manipulations that Virtual had not performed.[20]  And after checking online, he found that this phenomenon was not limited to brick-and-mortar retailers—internet carpet sellers' websites contained similar images, as did Beaulieu's webpage, which used Virtual's images to display Beaulieu products.[21]

Mr. Sucher brought this to Beaulieu's attention, and had discussions with executives at Beaulieu in 2008 about how to remedy the company's impermissible use.[22]  An art director in Beaulieu's marketing department, Bruce Stern, was one of the first Beaulieu representatives to work with Mr. Sucher on this issue.[23]  After discovering that his employer's website did in fact contain images that belonged to Virtual, Mr. Stern agreed that those images should be removed and allegedly instructed the web designer to remove them immediately.[24]

---

[18] Sucher Dep. at 169:25 – 170:25.

[19] Sucher Aff. at ¶ 19.

[20] Sucher Dep. at 163:3-7; Sucher Aff. at ¶ 20.

[21] Sucher Aff. at ¶ 21.

[22] Virtual's Resp. to Beau.'s Stat. of Undisp. Mat. Facts at ¶ 72; Sucher Aff. at ¶ 22.

[23] Sucher Aff. at ¶ 23.

[24] Stern Dep. at 80:8-81:13; Stern Dep. at Ex. 2.  Though, as it would turn out, the images in question remained on Beaulieu's website for at least another year.  *See supra* at 19.

5

But aside from that overture, Mr. Stern provided Virtual with little other assistance. He claimed that Beaulieu's continued use of Virtual's images was an "innocent" mistake.[25] He simply "assumed" that Beaulieu had the right to use Virtual's images indefinitely and for any reason, though he admitted that no one at Virtual ever said as much.[26] He did not make any effort to contact retailers that used promotional "deck boards" or "rack cards" containing Virtual's images to advertise Beaulieu products, and he did not ever get Beaulieu to pay Virtual additional compensation for its excessive use of the images.[27]

Given Mr. Stern's response to this issue, Mr. Sucher next broached the subject with Patricia Flavin, who at that time was Beaulieu's Senior Vice President of Marketing. Over the remaining months in 2008 and first half of 2009, the two engaged in a series of discussions in an attempt to resolve the parties' dispute.[28] Virtual made a number of proposals, all of which included some form of payment or guaranteed level of additional business, but Beaulieu did not accept them.[29] Similarly, though Beaulieu made a number of offers to Virtual during this period—such as offering to give "all" of its room scene work to Virtual for an unspecified length of time—Mr. Sucher never accepted any such offer as a final resolution.[30]

After months of this back and forth, Mr. Sucher finally emailed Ms. Flavin in the late summer of 2009 to inquire about Beaulieu's intentions.[31] If the two companies could not work

---

[25] Stern Dep. at 86:6-23.

[26] Stern Dep. at 46:25-47:9.

[27] Stern Dep. at 90:6-10; Sucher Aff. at ¶ 24.

[28] Virtual's Resp. to Beau.'s Stat. of Undisp. Mat. Facts at ¶ 74.

[29] Virtual's Resp. to Beau.'s Stat. of Undisp. Mat. Facts at ¶¶ 75, 76, 77; Sucher Aff. at ¶ 25.

[30] Virtual's Resp. to Beau.'s Stat. of Undisp. Mat. Facts at ¶ 75, 76, 77.

[31] This email is contained within a larger email chain attached to this brief as Exhibit E.

something out, Mr. Sucher explained, Virtual would have to seek legal redress with an attorney.[32]  Ms. Flavin responded to this email by repeating assurances she previously made about providing Virtual with more work.[33]  But she also specifically addressed Mr. Sucher's legal threats as well:

**From**: Patricia Flavin
**To**: 'tom@virtualstudiosinc.com'
**Sent**: Thu Jul 02 14:02:09 2009
**Subject**: Re: Update

Tom
There are some room scenes on the way to you within the next two weeks. However, if we are to continue to help in deveoping this relationship, I will need you to sign a release to drop your grievances with the company.

I will have something drafted up next week and sent over to you.
Patricia
[34]

Mr. Sucher did not respond to this request, nor did he ever sign any such settlement or release.[35]  In 2011, Virtual filed suit against Beaulieu.

### III. Summary Judgment Standard of Review

A party may obtain summary judgment when it proves that "there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Because this Rule essentially "operates to deny a litigant his day in court," a motion thereunder should be granted "only with extreme caution . . . ."  *Smith v. Hudson*, 600 F.2d 60, 63, (6th Cir. 1979).  *See also JB Oxford & Co. v. First Tenn. Bank Nat'l Ass'n*, 427 F. Supp. 2d 784, 798 (M.D. Tenn. 2006) (noting that "[i]n copyright infringement cases 'granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly. . . .'").  It is for

---

[32] Ex. C.

[33] *Id.*

[34] *Id.*

[35] Suhcer Aff. at ¶¶ 26.

7

this reason that a trial court must consider the evidence, as well as any evidentiary inferences it can make, "in the light most favorable to the party opposing the motion." *Hudson*, 600 F.2d at 63.

## IV. Discussion

**A.**   **Beaulieu is not entitled to summary judgment—on either its counterclaim or Virtual's claims—under the doctrine of "accord and satisfaction."**

> **1.**   **The parties did not reach an enforceable "accord and satisfaction" or other type of agreement resolving their dispute in 2008 or 2009.**

"Accord and satisfaction" is often used as an affirmative defense in cases involving disputed debts where one party allegedly accepted some form of payment as satisfaction of the debt then in dispute. To establish evidence sufficient to support this defense, a party must prove that a number of events occurred:

> [D]efendant, where he relies on an accord and satisfaction as a defense, has the burden of proving . . . [the existence of] an accord or new agreement, inclusion of the item or items of indebtedness in the action or suit, satisfaction by performance of the agreement or the agreement itself, that the payment was offered on the condition that, if accepted, it would be in full settlement of the demand, and that the creditor understood the conditions of the tender, or the circumstances under which it was made were such that he was bound to understand, an acceptance by plaintiff in full satisfaction of his demand.

*Quality Care Nursing Servs. v. Coleman*, 728 S.W.2d 1, 5 (Tenn. 1987).  The defendant must also show that the parties both intended to reach an enforceable accord and satisfaction:

> [I]t is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.

*Id.*

In this case, there is no undisputed evidence supporting the existence of any of these elements as a matter of law. Virtual tendered multiple proposals of settlement to Beaulieu in 2008 and 2009, but none were accepted and Beaulieu never made any payment to Virtual in satisfaction of the dispute.[36] The parties never entered into any written settlement agreement or release, and in fact when Beaulieu suggested this in an email, Virtual did not acquiesce.[37]

Likewise, Beaulieu's statement of "undisputed fact" that "Mr. Sucher and Ms. Flavin finally settled the parties' dispute during" a meeting in 2009 is inaccurate. This statement of fact is based solely upon the testimony of one person, Ms. Flavin. But even if she was somehow in a position to authoritatively state that both parties do not dispute something, her testimony in question does not support the proposition that the parties "settled" their dispute.[38]

Rather, Ms. Flavin testified only that, after a series of discussions with Mr. Sucher, she formed a number of "assumptions" and "understandings" about the parties' desire to "move forward."[39] "[I]t was [her] understanding" that the parties' "business relationship was moving ahead," she "believed" they reached a "resolution to move forward," she "guess[ed]" that she "assumed" that "some" of Virtual's photos "were okay to be used" after their negotiations, and

---

[36] Virtual's Resp. to Beau.'s Stat. of Undisp. Mat. Facts at ¶¶ 75, 76, 77; Flavin Dep. 81:11-14, 83:12. Excerpts of Patricia Flavin's deposition transcript are attached to this brief as Exhibit F.

[37] Sucher Aff. at ¶ 26; Ex. C.

[38] Beaulieu also argues that Virtual "admitted" all of the allegations of accord and satisfaction because it did not file an answer to Beaulieu's counterclaim until 2013. Def.'s 1st Brief at 7 n. 3 (Court Doc. No. 46-1). Virtual incorporates by reference the brief it filed on this issue—Court Doc. No. 45—that addresses the numerous ways in which Virtual challenged Beaulieu's counterclaim. Further, Virtual refers the Court to paragraph 81 in its response to Beaulieu's statement of undisputed material facts. In this portion of its response, Virtual notes, among other things, that the parties' Rule 26(f) report contains Virtual's unequivocal denial of Beaulieu's allegations.

[39] Flavin Dep. at 36:1 – 37:14, 81:2-10.

she "assumed" Mr. Sucher "was comfortable with the ongoing business relationship" between the parties.[40]

Nowhere in these portions of Ms. Flavin's testimony did she detail any written, concrete, or specific terms of any alleged "settlement" between the parties. In fact, a number of times she stated that she did not "recall" all the details of the final meeting she had with Mr. Sucher, and that she did not recall what she understood "was going to happen" next.[41] Though she noted that Mr. Sucher made a number of demands in lengthy emails, she testified only that her last meeting with him "was probably to come to a more realistic number" and "an expectation of a business relationship going forward . . . ."[42] At best, it was Ms. Flavin's "understanding that [they] were working towards a goal to continue a business relationship."[43] When asked whether she had been given the authority to pay any specific amount to settle Virtual's claims, Ms. Flavin responded simply and unequivocally: "No."[44]

Further, Mr. Sucher stated in at least one portion of his deposition that what potential non-monetary offers the parties did discuss were not "going to resolve the dispute."[45] Likewise, when asked specifically whether he "believed that [Virtual] had a deal with Beaulieu to address

---

[40] Flavin Dep. at 36:1-19, 37:4-14.

[41] Flavin Dep. at 75:12-16, 76:5-11.

[42] Flavin Dep. at 76:5-11, 80:7-15.

[43] Flavin Dep. at 81:7-10.

[44] Flavin Dep. 81:11-17, 82:13-15. Ms. Flavin did, however, come up with a figure that, if the decision was up to her, she would have offered Virtual "to resolve" its claims—"under $10,000." Flavin Dep. at 82:16-23.

[45] Sucher Dep. at 233:11-15.

the room scene images problems that [he] brought to Beaulieu's attention in 2008," Mr. Sucher replied, "No."[46]

> **2.** **Even if Beaulieu did establish the existence and validity of an accord and satisfaction claim as a matter of law, and that Virtual breached such accord, it has not established the element of damages.**

The only damages Beaulieu claims as a result of Virtual's alleged breach of an accord and satisfaction are attorneys' fees.[47] It has not, however, provided any citation to Tennessee precedent that would entitle it to receive compensation for such fees as an element of damages.

And indeed, this omission is significant given the Tennessee judiciary's longstanding adherence to the "American Rule," which generally prohibits parties from recovering attorneys' fees as an element of damages without a contractual or statutory exception:

> Tennessee follows the American Rule requiring "litigants to pay their own attorney's fees in the absence of a statute or contractual provision otherwise." *A party, even a prevailing party, is not entitled to an award of attorney's fees absent a contractual or statutory provision allowing such an award.*

*Hall v. Hamblen*, No. M2002-00562-COA-R3-CV, 2004 Tenn. App. LEXIS 524, *7-8 (Tenn. Ct. App. Aug. 16, 2004) (emphasis added) (reversing a trial court's award of attorneys' fees to the prevailing party in a breach of contract case because no applicable statute or contract entitled the party to recover such fees). *See John J. Heirigs Constr. Co. v. Exide*, 709 S.W.2d 604, 609 (Tenn. Ct. App. 1986) (recognizing that "it is well established that in the absence of a statutory

---

[46] Sucher Dep. at 209:6-12. Further evidencing Beaulieu's failure to carry its burden to establish accord and satisfaction is the incongruence of its allegations. In one of its briefs, it states simply as a matter of fact that "Virtual admitted that the 2009 Settlement constitutes an accord and satisfaction with Beaulieu, thus establishing its existence." Def.'s 1st Brief at 3 (Court Doc. No. 46-1.) In support of this statement, Beaulieu cited its ninetieth statement of undisputed material fact. But that statement falls short of the assertion in the brief. For instead of stating that Virtual "admitted" that an alleged settlement "constitutes an accord and satisfaction," the statement of fact says only that Virtual "admitted and testified to the facts underlying" the alleged satisfaction, such as the parties' negotiations and offers. Def.'s Stat. of Undisp. Mat. Facts at ¶ 90 (Court Doc. No. 48.) This, of course, is as much as Beaulieu can say—though Virtual still disputed the statement—given that nowhere in the record is there evidence of Virtual "admitting" that anything "constituted an accord and satisfaction."

[47] Def.'s 1st Brief at 9 (Court Doc. No. 46-1).

11

or contractual agreement between the parties, allowance of attorneys' fees as part of damages recoverable is contrary to the public policy of the state"); *Gray v. Boyle Inv. Co.*, 803 S.W.2d 678 (Tenn. Ct. App. 1990) (noting that "[i]n the absence of a statutory provision therefor, [or] contractual agreement between the parties, attorney fees incurred . . . is not a proper element of damages . . . .").

And yet this is exactly what Beaulieu now asks this Court to assume—that the damages element of its contract claim can be established as a matter of law *solely* because it has incurred attorneys' fees in this litigation. Without some authority for this position, Beaulieu's request for summary judgment cannot succeed.[48]

## B. Virtual Studios has established a presumption of copyright ownership.

### 1. Employers whose employees create a work that is later copyrighted are the presumptive owners of such copyrighted work.

Under federal law, the person or entity that owns a "[c]opyright in a work [is] . . . initially the author or authors of the work." 17 U.S.C. § 201(a). The "author" of a work is, in turn, generally "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (U.S. 1989). So when a person creates a sculpture, for instance, that person would generally be considered the "author," and therefore owner of the sculpture. 17 U.S.C. § 102(a)(5) (providing that "works of authorship include . . . pictorial, graphic, and sculptural works . . . .").

But this general rule is not universally applicable. Federal copyright law also creates a category of authorship for employers whose employees physically create a work in the course

---

[48] Further, without some precedent entitling it to move forward on a contract claim with evidence only of alleged damages in the form of attorneys' fees, the Court should consider whether Beaulieu's counterclaim is sufficient as a matter of law. *See* Def.'s 1ˢᵗ Brief at 8 (Court Doc. No. 46-1) (admitting that an essential element of a contract claim in Tennessee is the existence of "damages caused by the breach").

and scope of their employment.  This "important exception" is thus applicable to "works made for hire:"

> If the work is for hire, 'the employer or other person for whom the work was prepared is considered the author' and owns the copyright, unless there is a written agreement to the contrary.

*Reid*, 490 U.S. at 737 (citing 17 U.S.C. § 201(b), which provides that such an employer "owns all of the rights comprised in the copyright").  Though the words "employee" and "employment" are not is defined in the statute, the *Reid* Court found that they should be interpreted in terms of "the conventional relation of employer and employee" and "the general common law of agency." *Id.* at 740-41 n. 8 ("reject[ing] the suggestion . . . that . . . "employee" refers only to formal, salaried employees").  To decide whether such relation existed, courts should therefore review the totality of the circumstances surrounding the relationship between the hiring party and the party that created the work.

> **2.      Virtual was the employer of the individual that photographed nearly every one of the room scenes it later copyrighted, and therefore is and always has been the author and owner of the copyrights.**

Though Beaulieu failed to mention the "works made for hire" doctrine in its brief, there is undisputed evidence about the relationship of Virtual and its photographers that is determinative of Virtual's copyright ownership.  During Mr. Sucher's deposition, Beaulieu's attorney inquired about the photographers Virtual employed over the years to photograph its room scene images. Mr. Sucher in turn named a number of individuals that worked as staff photographers at Beaulieu.   After asking about some of the details of room scene photography, Beaulieu's questions turned directly to Virtual's employment relationship with these photographers:

> Q:      Were all of these photographers that you have identified full-time employees of Virtual Studios?
>
> A:      Yes.

Q:      Did Virtual Studios ever use freelance photographers to take photos of room scenes?

A:      No.

Q:      Why not?

A:      Because we had photographers on staff.

Q:      Ok. So you just didn't need freelancers?

A:      No.[49]

So the undisputed evidence is that all the photographers that photographed Virtual's room scenes were full-time employees, not "freelance" photographers hired for specific one-off jobs. Though Beaulieu did not question Mr. Sucher any further about Virtual's employment relationship with its photographers, if it had, it would have found numerous other facts showing that these photographers were "employees" for the purpose of the "works made for hire" doctrine.[50] Beaulieu's allegation that Virtual "has failed to demonstrate ownership" of it copyrights is therefore far from "undisputed," and should not serve as the basis for summary judgment.[51]

---

[49] Sucher Dep. at 51. The Court should also note that the testimony of the only Virtual photographer that Beaulieu deposed, Phil Farmer, mirrored Mr. Sucher's on this point. Farmer Dep. at 9:8-10; 11:8-15. Excerpts of Mr. Farmer's deposition transcript are attached to this brief as Exhibit G.

[50] Sucher Aff. at ¶¶ 27-30. *See Reid*, 490 U.S. at 751.

[51] Beaulieu also takes issue with Virtual's acquisition of a few room scenes from a company called Crown Craft. However, as Mr. Sucher stated in his deposition, Virtual purchased these room scenes outright via a written agreement. Sucher Dep. at 47:1-23. Virtual has still been unable to locate the written documents related to this transaction, but Mr. Sucher has reaffirmed in his affidavit that Virtual indeed purchased these images outright. Sucher Aff. at ¶¶ 32, 33.

14

**C.    Virtual has produced evidence that Beaulieu purchased a limited, temporary license to use room scene images.**

Beaulieu argues that even if Virtual validly owns the copyrights in question, it cannot be held liable for infringement because, as a matter of law, it "never agreed to a one-year" limited license.[52]    In support of this argument, Beaulieu cites no case law or statutes, but rather summarizes circumstantial evidence it will presumably use at trial and repeats allegedly "undisputed" facts that disfavor Virtual.[53]

But after even a cursory review of the facts behind Beaulieu's statements, it is evident that the proof is far less one-sided.  Every invoice Beaulieu received from Virtual contained a provision that explicitly set a one-year term of use.[54]  Beaulieu has not disputed receiving these invoices, nor has it disputed the inclusion of the one-year term therein.  No Beaulieu employee ever objected to any term on Virtual's invoice, and in fact Beaulieu fully paid nearly every invoice it ever received from Virtual.[55]

And what of Beaulieu's allegation's that Mr. Sucher "admitted" that the parties never discussed the Terms and Conditions on the invoices, or that he did "not recall" discussing Virtual's three licensing options with Beaulieu?  Simply put, they are inaccurate.  Mr. Sucher specifically stated in his deposition that he spoke with Beaulieu employees—Bruce Stern and potentially one of Mr. Stern's superiors—about the one-year term of use around the year 2000.[56]  Likewise, Mr. Sucher stated in his affidavit that he discussed the three available license options

---

[52] Def.'s 2nd Brief at 13 (Court Doc. No. 47-1.)

[53] *Id.* at 13-17.

[54] Sucher Dep. 17:9-17.

[55] Sucher Aff. at ¶¶ 17, 18.

[56] Sucher Dep. at 137:2-8.

with Beaulieu's employees years before the parties' dispute, and that Beaulieu chose to order room scenes from Virtual under Option 3.[57]

So while Beaulieu may now argue that it "never agreed" to conduct business with Virtual under the terms at issue, this is far from an "undisputed fact" that could serve as the basis of summary judgment.

**D.      Virtual has produced evidence that Beaulieu's use exceeded its license and therefore infringed Virtual's copyrights.**

But even if there could have been a one-year license, Beaulieu claims, Virtual has "not produced any evidence tying Beaulieu's room scene use to any breach" of that license.[58]  This is apparently true for two reasons:  (1) the words "unlimited use" in the Terms and Conditions granted Beaulieu all the rights afforded copyright owners under federal law, and thus allowed Beaulieu to manipulate Virtual's images at will; and (2) "Virtual has not linked any . . . image to any Beaulieu payment . . . and thus failed to establish" the one-year period of use "for any of those images."[59]

Like Beaulieu's contention regarding the non-existence of a license agreement, however, these arguments are specious.  As Virtual noted in its response to Beaulieu's "undisputed facts," the words "unlimited use" do not appear in 17 U.S.C. § 106, which contemplates only the rights of copyright owners, and Beaulieu did not cite any case law supporting its conflation of the invoice and the statute.  But even if it had, it has not articulated any legal reason why the term

---

[57] Suhcer Aff. at ¶¶ 13, 14.

[58] Def.'s 2nd Brief at 17 (Court Doc. No. 47-1).

[59] *Id.* at 17-19.

"unlimited use" in the invoices would as a matter of law be construed so as to negate the non-manipulation term of Option 3, to which Beaulieu agreed.[60]

Similarly, Beaulieu's claim that Virtual has failed to produce evidence establishing specific one-year terms for images is inaccurate. In the course of this litigation, the parties have exchanged around 12,000 pages of documents, many of which are directly relevant to this issue. For instance, included among these documents are invoices, detailed "job tickets" that describe Virtual's work, accounts payable records, documents Virtual deposited with the United States Copyright office, and photographs or website screen shots showing Beaulieu's use of Virtual's images much more than one year after payment.[61]

Of particular value to this inquiry is a spreadsheet Beaulieu produced that links exact dates of payments to specific Virtual invoices.[62] This spreadsheet shows, for example, that on October 11, 2006, Beaulieu paid Virtual $6,600 on an invoice number 14489.[63] The documents associated with that invoice—including the invoice itself, which lists the appropriate purchase order number also listed on Beaulieu's payment spreadsheet—are in job tickets Virtual produced during discovery.[64] Those documents show that one of the room scenes Virtual provided in relation to this job was called "10461LR10."[65] This is a copy of that original room scene:

---

[60] Sucher Aff. at ¶ 14.

[61] Sucher Aff. at ¶ 31.

[62] Ex. D.

[63] Ex. D at line 403.

[64] The job ticket for invoice 14489 is attached to this brief as Exhibit H.

[65] Ex. H at VS BEAU 0002400, 0002410, 0002423.



That image, in turn, was one that Virtual copyrighted in 2008 under Copyright No. 1-428-943, which is evidenced by that room scene's inclusion on the list of those deposited with the United States Copyright Office.[67]

Even though Beaulieu made payment for the use of this room scene in October 2006, Virtual has produced evidence showing that Beaulieu used this image to advertise its products in retail stores in 2011, years after the one-year term of use had run:

---

[66] Exhibit I (*see supra* at n. 66).

[67] The copyright registration documents in question, as well as the deposit copy of 10461LR10, are attached to this brief collectively as Exhibit I.



Another example is a Virtual room scene called "11203 Dining Room 1," or "11203DR1" for short.[69]  Though Beaulieu's spreadsheet shows that it paid the invoice for this room scene on March 29, 2004, Beaulieu's use of the image was not confined to a one year period following that payment.[70]  Virtual produced evidence showing that Beaulieu displayed the

---

[68] A copy of this photograph is attached to this brief as Exhibit J.

[69] This image was registered under Copyright No. 1-428-944.  The copyright registration documents in question, and the deposit copy of 11203 Living Room 1, are attached collectively as Exhibit K.

[70] Ex. D at line 309.    The job ticket for this invoice—Invoice No. 12065—is attached to this brief as Exhibit L.

image on at least 19 pages of its website between December 2008 and October 2009.[71]  Indeed, even Beaulieu admits to this large number of uses years after it made payment.[72]

These are but two examples of the many "links" established by the evidence that the parties produced during this litigation.  But most germane to this Court's inquiry is the level of evidence Beaulieu has marshaled to support its claims.  There is proof of Beaulieu's payment dates for nearly ever invoice Virtual issued.  There is proof in Virtual's job tickets of the room scene images Virtual provided to Beaulieu with these invoices.  There is proof tying these images to specific copyrights and to images Virtual listed in its registration documents.  And there is proof showing that Beaulieu used many of these images well beyond the one year term of use for specific images.

This evidence is more than sufficient to show that Beaulieu has failed to meet its burden under Rule 56, and that Virtual should be permitted to present its evidence to a jury.

**E.     Virtual has produced sufficient evidence of post-registration infringement to survive Beaulieu's summary judgment motion as to statutory damages and innocent infringement.**

Virtual acknowledges that the date of an infringement's commencement is relevant to any entitlement to statutory damages, but disagrees with Beaulieu's contention that the evidence of commencement here is insufficient as a matter of law.  The only evidence produced by either party showing Beaulieu's use of many of the images at issue on the internet or in stores shows only post-2008 use.  And indeed, as Beaulieu recognized in its brief, many of the photos Virtual took in stores date from 2009, 2010, and 2011.[73]  The in-store photo of "10461LR10" referenced

---

[71] Def.'s Stat. of Undisp. Mat. Facts at ¶ 69.  The Court should note that Mr. Stern's effort to remove Virtual's images from Beaulieu's website occurred around August 2008.

[72] Def.'s Stat. of Undisp. Mat. Facts at ¶ 69.

[73] Def.s' 2nd Brief at 21 (Court Doc. No. 47-1).  The Court should note that, according to Mr. Sucher, some of these photographs were also taken in 2012.  Sucher Aff. at ¶ 31.

above is an example of this. This is the only concrete evidence of which Virtual is aware that shows Beaulieu's use that image, and it indicates only that this use occurred in 2011.

While Beaulieu notes Virtual's "concession" about the absence of evidence showing dates that in-store displays were printed, it fails to note that this is an issue of its own creation. During discovery, Virtual specifically asked for materials related to the time and manner in which Beaulieu used the room scenes:

> 2.      For each Virtual Studios room scene image you [have used since January 1, 2008], please identify and describe with particularity the medium – e.g., web address, catalog, product brochure, etc. – in which you reproduced or otherwise displayed such Virtual Studios room scene image, as well as the dates on which you reproduced or displayed such room scene image.[74]

Here is the entirety of Beaulieu's original and supplemental response to Virtual's interrogatory:

> RESPONSE: Beaulieu objects to this interrogatory to the extent it seeks information that is in the possession of the plaintiff. Beaulieu also objects to this interrogatory to the extent it is overly broad, unduly burdensome, vague, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the forgoing objections, Beaulieu states that it has used Virtual Studios room scene images in various mediums, including print and electronic formats to market and display certain of Beaulieu's carpet products. Beaulieu further states that it does not maintain complete records on the various formats in which room scene images are used or the dates of each such use. Discovery is ongoing and Beaulieu reserves the right to supplement its response to this interrogatory.

> SUPPLEMENTAL RESPONSE: Beaulieu incorporates by reference, to the extent applicable, its specific and general objections, reservation of rights, and responses to this interrogatory as set forth in Beaulieu's response to this interrogatory. Without waiving its objections, and subject to its reservation of rights, Beaulieu further responds, supplements and/or amends its prior responses as follows:

> Beaulieu did not track its use of room scene images because it was under no obligation to do so. Thus, Beaulieu cannot state how or when each of the room scene images that Virtual Studios supplied to Beaulieu was used. For the reasons detailed in its Supplemental Response to Interrogatory No. 1, Beaulieu's representatives reasonably believed Beaulieu had the right to unlimited use of the images in perpetuity. As noted above in its supplemental

---

[74] This interrogatory appeared in Virtual's First Set of Interrogatories, which Virtual served upon Beaulieu in or around May 2012. This interrogatory, along with Beaulieu's original and supplemental response thereto, is attached to this brief as Exhibit M.

response to interrogatory 1, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Beaulieu is producing several categories of documents that may provide a partial response to this interrogatory. Discovery is ongoing and Beaulieu reserves the right to further supplement its response to this request. [75]

And the documents Beaulieu produced responsive to Virtual's first interrogatory did not contain photographic proof that it used every image in question—those photographed in retail stores by Mr. Sucher from 2008-2012—before the copyright registrations.

Given the evidence Virtual has marshaled showing Beaulieu's untimely use of Virtual's images and the absence of any evidence showing Beaulieu's previous use of many of these images, Beaulieu cannot show that Virtual's claim for statutory damages is unfounded as a matter of law.

Similarly, Beaulieu's claim that it should be granted summary judgment on the matter of "innocent infringement" is misplaced. As Virtual demonstrated in this brief and its response to Beaulieu's statement of "undisputed facts," Beaulieu did not stop using Virtual's images even after receiving notice from Virtual in 2008. Virtual's images remained on Beaulieu's website until at least October 2009, and Beaulieu continued to display its products in stores with Virtual's images through 2012. However "reasonable" Beaulieu's beliefs or assumptions about Virtual's images may have been, it knew after 2008 that Virtual contested those beliefs, yet did not pull the images from its advertising

Under these circumstances, Beaulieu has not shown that every reasonable juror would find its actions "innocent," and its request for summary judgment on this issue should duly fail.

---

[75] Ex. M.

## V. Conclusion

The function of a Rule 56 motion is to dispose of a claim about which there is no material dispute. If, upon viewing a claimant's undisputed evidence, a court can grant one party judgment as a matter of law, it can do so. If it cannot, then it will deny the motion.

In this case, Virtual has disputed over a third of the *ninety-two* material facts about which Beaulieu alleges there is no dispute. It has cited specific testimonial and documentary evidence bolstering these disputes, and reiterated the parties' disagreement over what actually happened during their business dealings. Beaulieu claims that it never agreed to or knew about the terms of Virtual's license, but Virtual's testimony directly contradicts this. Beaulieu argues that Virtual "admitted" the existence of an agreement settling the parties' dispute in 2009, but Virtual's President flatly denied this. And while Beaulieu posits that there is no proof of infringement, Virtual has cited specific documentary evidence from both parties that clearly shows Beaulieu's use of Virtual's images years beyond the one-year term.

In short, there is a host of disputed evidence in this case, and much of it is material to the parties' respective claims. The Court should therefore deny Beaulieu's motions and allow this case to proceed to trial.[76]

---

[76] The Court should note that the omission of any discussion about Virtual's common law claims is intentional. Virtual has chosen to focus solely upon its cause of action under federal copyright law, and will not contest Beaulieu's motion as it pertains to Virtual's other alternative claims.

Respectfully submitted,

PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.

By:    s/Michael A. Anderson
       Michael A. Anderson, BPR # 012368
       McKinley S. Lundy, Jr. BPR # 027391
       Attorneys for Plaintiff
       537 Market Street, Suite 202
       Chattanooga, TN 37402
       (423) 756-7117
       (423) 267-5032 (fax)

## CERTIFICATE OF SERVICE

I certify that on April 5, 2013, a copy of the foregoing brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

s / Michael A. Anderson

F:\WpDocs\CLG\Clients\Virtual Studios\Beaulieu\Pleadings\MSJ Response - Brief.doc