UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| VIRTUAL STUDIOS, INC. | |
| Plaintiff, | CIVIL ACTION NO. 1:11-cv-359 |
| v. | CLC/Lee |
| BEAULIEU GROUP, LLC, | JURY DEMAND |
| Defendant. | |

---

**Virtual's Response to Beaulieu's Statement of Undisputed Material Facts**

---

For its response to Beaulieu Group, LLC's Statement of Undisputed Materials Facts,
Virtual Studios states as follows:

1.      Virtual filed its Complaint on December 1, 2011.  Stella Decl. ¶ 3, Exh. A,
Complaint, D.I. 1 ("Complaint") ¶ 34 (DX 3).

**RESPONSE:** Virtual does not dispute Beaulieu's first statement of undisputed material
facts.

2.      Count IV of Virtual's Complaint alleges a claim for misrepresentation based on
Beaulieu's "represent[ation] that it would compensate Virtual for its claims through a proposed
payment of money and additional work."  Stella Decl. ¶ 3, Exh. A, Complaint ¶ 34.

**RESPONSE**: Virtual does not dispute Beaulieu's second statement of undisputed material facts.

3. Virtual further alleges that Beaulieu "either intentionally or negligently misrepresented its willingness to properly compensate Virtual and to provide Virtual with additional work," and Virtual "relied upon these representations to its detriment." Stella Decl. ¶ 3, Exh. A, Complaint ¶¶ 34–36.

**RESPONSE**: Virtual does not dispute Beaulieu's third statement of undisputed material facts.

4. Count IV of the Complaint incorporates by reference factual allegations recited elsewhere in the Complaint. Stella Decl. ¶ 3, Exh. A, Complaint ¶ 33.

**RESPONSE**: Virtual does not dispute Beaulieu's fourth statement of undisputed material facts.

5. The incorporated factual allegations do not address any of Virtual's allegations under Count IV. Stella Decl. ¶ 3, Exh. A, Complaint ¶¶ 1–32.

**RESPONSE**: Virtual does not dispute Beaulieu's fifth statement of undisputed material facts.

6. Virtual alleges in its Complaint that "contrary to its agreement with Virtual and without Virtual's permission or assent, Beaulieu has continued to copy, use, disseminate and

digitally manipulate and alter hundreds of Virtual's copyrighted images." Stella Decl. ¶ 3, Exh. A, Complaint ¶ 20.

**RESPONSE**: Virtual does not dispute Beaulieu's sixth statement of undisputed material facts.

7. Virtual alleges in its Complaint that Beaulieu's "continued use of Virtual's product constitutes a willing and continuing breach of contract." Stella Decl. ¶ 3, Exh. A, Complaint ¶ 25.

**RESPONSE**: Virtual does not dispute Beaulieu's seventh statement of undisputed material facts.

8. Virtual alleges that Beaulieu has used and continues to use room setting images provided to it by Virtual for its own marketing, financial benefit and advantage. Beaulieu has willfully failed and refused to properly compensate Virtual for the reasonable value of the products that it continues to use. Beaulieu has been unjustly enriched and will continue to be unjustly enriched if it continues to have the use and benefit of Virtual's products without paying the reasonable value thereof. Beaulieu has derived a benefit and is indebted to Virtual for the reasonable value of the use of Virtual's products. Stella Decl. ¶ 3, Exh. A, Complaint ¶¶ 29–32.

**RESPONSE**: Virtual does not dispute that it alleges that Beaulieu has used and continues to use Virtual's images for the purposes noted in the first sentence of Beaulieu's eighth statement of undisputed material facts. Virtual also does not dispute the second, third, and fourth sentences in this statement related to Beaulieu's intent, liability, and indebtedness to Virtual.

3

9.     Virtual incorporated into its unjust enrichment claim its allegations in support of its copyright infringement claim, in addition to the allegations that (1) Beaulieu represented it would compensate Virtual for its alleged infringement "through a proposed payment of money and additional work," (2) Beaulieu "either intentionally or negligently misrepresented its willingness to properly compensate Virtual and to provide Virtual with additional work, and (3) Virtual "relied upon these representations to its detriment." Stella Decl. ¶ 3, Exh. A, Complaint ¶¶ 34–36.

**RESPONSE**:  Virtual disputes Beaulieu's ninth statement of undisputed material facts. In paragraph 28 of its Complaint, Virtual incorporated only paragraphs 1 – 27 into its unjust enrichment claim.  But the additional allegations cited here by Beaulieu appeared in paragraphs 34 – 36 of Virtual's Complaint.


10.     Five of Virtual's copyright registrations were made more than five years after the dates of first publication claimed in the registrations.  Those registrations are: VA 1-428-943 (8 years later); VA 1-428-944 (8 years later); VA 1-429-975 (10 years later); VA 1-430-766 (5+ years later); and VA 1-431-194 (10 years later).  Stella Decl. ¶ 8, Exh. F, Copyright Registration VA 1-428-943 (DX 9); Stella Decl. ¶ 9, Exh. G, Copyright Registration VA 1-428-944 (DX 10); Stella Decl. ¶ 11, Exh. I, Copyright Registration VA 1-429-975 (DX 12); Stella Decl. ¶ 13, Exh. K, Copyright Registration VA 1-430-766 (DX 14); Stella Decl. ¶ 17, Exh. O, Copyright Registration VA 1-431-194 (DX 18).

4

**RESPONSE**: Virtual does not dispute Beaulieu's tenth statement of undisputed material facts.

11.     Virtual has asserted six additional copyright registrations in this case.  Stella Decl. ¶ 10, Exh. H, Copyright Registration VA 1-429-974 (DX 11); Stella Decl. ¶ 12, Exh. J, Copyright Registration VA 1-430-765 (DX 13); Stella Decl. ¶ 14, Exh. L, Copyright Registration VA 1-430-767 (DX 15); Stella Decl. ¶ 15, Exh. M, Copyright Registration VA 1-430-768 (DX 16); Stella Decl. ¶ 16, Exh. N, Copyright Registration VA 1-431-032 (DX 17); Stella Decl. ¶ 18, Exh. P, Copyright Registration VA 1-431-195 (DX 19).

**RESPONSE**:  Virtual does not dispute Beaulieu's eleventh statement of undisputed material facts.

12.     Virtual's current Studio Manager Phil Farmer has worked for Virtual as a full-time employee since October 1999, and as a photographer of its room scenes since late 1999 or early 2000.  Stella Decl. ¶ 47, Exh. SS, November 30, 2012 Deposition of Phil Farmer ("Farmer Tr.") at 9:8–15; 11:8–15; 11:20–12:1; 12:19–13:3.

**RESPONSE**:  Virtual does not dispute Beaulieu's twelfth statement of undisputed material facts.

13.     Mr. Farmer authored numerous room scene photographs between 2001 and 2009, Stella Decl. ¶ 47, Exh. SS, Farmer Tr. at 9:8–15; 11:8–15; 11:20–12:1; 12:19–13:3.

**RESPONSE**: Virtual disputes Beaulieu's thirteenth statement of undisputed material facts to the extent that it implies Mr. Farmer was the "author" of the room scene to the exclusion of Virtual, or that he somehow has or had ownership of the copyrighted images. At all times Mr. Farmer photographed room scenes for Virtual, he did so solely as Virtual's employee.[1] Because he was Virtual's employee, Virtual is the "author" of the room scene as that term is used in 17 § U.S.C. 201.

Further, Virtual disputes Beaulieu's thirteenth statement to the extent that Mr. Farmer served as Virtual's principal photographer from 2001 – 2009. In his deposition Mr. Farmer stated that until 2006, his role in the photography of room scenes for Virtual was that of an "assistant."[2]     He primarily arranged the lighting for principal photographer Greg Wright, another Virtual employee, and only "on occasion" took room scene photographs. (*Id.*) It was not until after Mr. Wright left Virtual in 2006 that Mr. Farmer became the principal room scene photographer for the company.[3]


14.     Mr. Farmer is credited with authorship of approximately 233 room scene photographs that are the subject of a single registration, VA 1-431-195, all of which Virtual certified were created and published in January 2008. Stella Decl. ¶ 18, Exh. P, Copyright Registration VA 1-431-195 (DX 19).

---

[1] Farmer Dep. at 9:8-10; 11:8-15; Sucher Dep. at 50:21-25; 51:1-22. All materials Virtual cites in this response are attached as exhibits to Virtual's brief.

[2] Farmer Dep. 17:14-25; 18:1-20.

[3] Farmer Dep. at 20:1-3.

**RESPONSE**: In response to Beaulieu's fourteenth statement of undisputed material facts, Virtual states that the copyright registration form in question speaks for itself. But Virtual again disputes any characterization of Mr. Farmer as the "author" of the room scene to the exclusion of Virtual, or that he somehow has or had ownership of the copyrighted images. At all times Mr. Farmer photographed room scenes for Virtual, he did so solely as Virtual's employee.[4] Because he was Virtual's employee, Virtual is the "author" of the room scene as that term is used in 17 § U.S.C. 201.

15.    Mr. Farmer and Mr. Sucher testified that Virtual has employed a total of at least nine full-time photographers since 1996. Stella Decl. ¶ 43, Exh. OO, November 13, 2012 Deposition of Thomas Sucher ("Sucher Tr.") at 50:21–51:14; Stella Decl. ¶ 47, Exh. SS, Farmer Tr. at 13:4–15:2; Stella Decl. ¶ 46, Exh. RR, Clay Tr. at. 138:2–139:15.

**RESPONSE**:  In response to Beaulieu's fifteenth statement of undisputed material facts, Virtual does not dispute that it employed multiple individuals to work in the area of photography between 1999 – 2009.  But Virtual disputes this statement to the extent that it implies that Virtual employed nine or more principal photographers to photograph room scenes during this period. Mr. Sucher, Mr. Farmer, and Ms. Clay did not testify to that fact in the portions of their depositions to which Beaulieu cites.

16.    Virtual's eleven copyright registrations, which include a total of approximately 1700 room scene photographs, identify a total of three photographers—Greg Wright, Phil

---

[4] Farmer Dep. at 9:8-10; 11:8-15; Sucher Dep. at 50:21 - 51:22.

Farmer, and Byron Williams—as authors. Stella Decl. ¶ 8, Exh. F, Copyright Registration VA 1-428-943 (DX 9); Stella Decl. ¶ 9, Exh. G, Copyright Registration VA 1-428-944 (DX 10); Stella Decl. ¶ 10, Exh. H, Copyright Registration VA 1-429-974 (DX 11); Stella Decl. ¶ 11, Exh. I, Copyright Registration VA 1-429-975 (DX 12); Stella Decl. ¶ 12, Exh. J, Copyright Registration VA 1-430-765 (DX 13); Stella Decl. ¶ 13, Exh. K, Copyright Registration VA 1-430-766 (DX 14); Stella Decl. ¶ 14, Exh. L, Copyright Registration VA 1-430-767 (DX 15); Stella Decl. ¶ 15, Exh. M, Copyright Registration VA 1-430-768 (DX 16); Stella Decl. ¶ 16, Exh. N, Copyright Registration VA 1-431-032 (DX 17); Stella Decl. ¶ 17, Exh. O, Copyright Registration VA 1-431-194 (DX 18); Stella Decl. ¶ 18, Exh. P, Copyright Registration VA 1-431-195 (DX 19).

**RESPONSE**: In response to Beaulieu's sixteenth statement of undisputed material facts, Virtual states that the copyright registration forms in question speak for themselves.


17.     Virtual identified Mr. Wright as the author of only the 251 room scene photographs covered by Copyright Registration 1-431-032. Stella Decl. ¶ 16, Exh. N, Copyright Registration VA 1-431-032 (DX 17).

**RESPONSE**: Virtual denies Beaulieu's seventeenth statement of undisputed material facts. First, Virtual states that the copyright registration form in question speaks for itself. Second, this registration form lists the "Author" as "Virtual Studios," and notes Greg Wright's name only insofar as he was an "employee for hire" of Virtual. Third, Virtual disputes this statement to the extent that it implies that Mr. Wright was the "author" of these room scenes to the exclusion of Virtual, or that he somehow has or had ownership of the copyrighted images.

8

At all times Mr. Wright photographed room scenes for Virtual, he did so solely as Virtual's employee.[5] Because he was Virtual's employee, Virtual is the "author" of the room scene as that term is used in 17 § U.S.C. 201.

18.     Copyright Registration 1-431-032 certifies a creation date of 2007.  Stella Decl. ¶ 16, Exh. N, Copyright Registration VA 1-431-032 (DX 17).

**RESPONSE**:  In response to Beaulieu's eighteenth statement of undisputed material facts, Virtual states that the copyright registration form in question speaks for itself.

19.     Mr. Wright left his job at Virtual in 2006.  Stella Decl. ¶ 47, Exh. SS, Farmer Tr. at 15:6–14.

**RESPONSE**:  In response to Beaulieu's nineteenth statement of undisputed material facts, Virtual admits that Philip Farmer testified in his deposition that he though Mr. Wright left his employment at Virtual in late 2006.  However, Virtual denies that this is the only evidence about Mr. Wright's employment dates.  Mr. Sucher stated in his affidavit that Mr. Wright did not finish his employment with Virtual until sometime in 2008.[6]

20.     Virtual built its room scene image catalog by photographing model homes and the creations of interior designers, and by purchasing room scene images from other companies, such as Crown Craft.  Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 41:15–51:22.

---

[5] Farmer Dep. at 13:4-8; 14:22-25; 15:1-9; Sucher Dep. at 50:21 - 51:22.

[6] Sucher Aff. at ¶ 34.

9

**RESPONSE**:  In response to Beaulieu's twentieth statement of undisputed material facts, Virtual admits that it obtained room scenes in the manners Beaulieu describes, but denies that these were the only methods it used to do so.  Virtual also obtained room scenes by photographing such scenes in its own studio.[7]

21.     Virtual left it to the individual photographers to draft copyright agreements with the room owners and interior designers, but the photographers did not always do so.  Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 41:14–46:19.

**RESPONSE**:  Virtual does not dispute Beaulieu's twenty-first statement of undisputed material facts.

22.     Mr. Sucher testified that Crown Craft transferred to Virtual by written agreement copyright ownership in 15 room scene images, which Virtual then added to its room scene catalog.  Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 46:20–48:11.

**RESPONSE**:     Virtual  does  not  dispute  Beaulieu's  twenty-second  statement  of undisputed  material  facts  insofar  as  it  says  Virtual  obtained  a  few  room  scenes  from  Crown Craft.  However, Mr. Sucher indicated that the number "15" was only an approximation of how many room scenes Virtual obtained from Crown Craft.[8]

---

[7] Sucher Dep. at 44:1-2, 9-10.

[8] Sucher Dep. at 47:1-10.

23.     Mr. Sucher and Ms. Clay testified that Virtual has a number of those agreement records but they have not been produced in response to Beaulieu's requests.  Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 45:14–17; Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 135:11–137:3.

**RESPONSE**:  In response to Beaulieu's twenty-third statement of undisputed material facts, Virtual acknowledges that it did not provide Beaulieu releases from premises owners as part of its discovery responses.  After reviewing Beaulieu's statement, however, Virtual was able to locate some of these documents and has since provided Beaulieu with copies.


24.     Virtual and Beaulieu conducted business in the same manner for eleven years without any mention of a one-year limitation on Beaulieu's use of room scene images.  Stella Decl. ¶ 44, Exh. PP, November 27, 2012 Deposition of Bruce Stern ("Stern Tr.") at 38:20–25, 91:16–94:17; Stella Decl. ¶ 45, Exh. QQ, November 27, 2012 Deposition of Wendy Jaynes ("Jaynes Tr.") at 14:19–22, 34:18–35:5, 37:6–38:7, 42:11–43:1.

**RESPONSE**:     Virtual disputes Beaulieu's twenty-fourth statement of undisputed material facts.  The parties began doing business with each other in 1997, and the invoices Virtual sent Beaulieu with Virtual room scene images contained an explicit one-year term of use:

Terms and Conditions

> 1.   Virtual Studios will provide its Client with the unlimited use of all photographs for a period of one year from the day of completion and payment of services as stated below.                                                    9

Further, Virtual discussed the one-year term of use of its images with Beaulieu as early as 2000. (Sucher Dep. at 237:2-8.)

---

[9] Sucher Dep. at 39:18-24; 137:2-8; Exhibit B to Virtual's brief.

25.     Virtual's President, Mr. Sucher and his current Accountant/former Production Manager, Heather Clay, testified that they do not recall ever discussing a one-year limitation with anyone from Beaulieu. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 39:18–40:2; Stella Decl. ¶ 46, Exh. RR, November 14 & 30, 2012 Deposition of Heather Clay ("Clay Tr.") at 15:18–17:22, 87:1–12.

**RESPONSE**:   Virtual disputes Beaulieu's twenty-fifth statement of undisputed material facts. The parties began doing business with each other in 1997, and the invoices Virtual sent Beaulieu with Virtual room scene images contained an explicit one-year term of use.[10] Further, Virtual discussed the one-year term of use of its images with Beaulieu as early as 2000.[11]


26.     Virtual first raised its assertion of a one-year term to Beaulieu in 2008, when it notified Beaulieu of its copyright infringement allegations. Stella Decl. ¶ 44, Exh. PP, Stern Tr. at 46:25–47:21; Stella Decl. ¶ 45, Exh. QQ, Jaynes Tr. at 43:22–44:2; Stella Decl. ¶ 42, Exh. NN, January 10, 2013 Deposition of Patricia Flavin ("Flavin Tr.") at 66:8–14.

**RESPONSE**:   Virtual disputes Beaulieu's twenty-sixth statement of undisputed material facts. The parties began doing business with each other in 1997, and the invoices Virtual sent Beaulieu with Virtual room scene images contained an explicit one-year term of use.[12] Further, Virtual discussed the one-year term of use of its images with Beaulieu as early as 2000.[13]

---

[10] Sucher Dep. at 39:18-24; 137:2-8; Exhibit B to Virtual's brief.

[11] Sucher Dep. at 137:2-8.

[12] Sucher Dep. at 39:18-24; 137:2-8; Exhibit B to Virtual's brief.

[13] Sucher Dep. at 137:2-8.

12

27.     Beaulieu and Virtual began doing business together in 1997.  Stella Decl. ¶ 44, Exh. PP, Stern Tr. at 12:18–22; Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 17:18–18:8.

**RESPONSE**:     Virtual does not dispute Beaulieu's twenty-seventh statement of undisputed material facts.

28.     The relationship between Virtual and Beaulieu was forged by Virtual President Thomas Sucher and Beaulieu Art Director Bruce Stern.  Stella Decl. ¶ 44, Exh. PP, Stern Tr. at 33:16–34:13; Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 39:3–10.

**RESPONSE**:     Virtual does not dispute Beaulieu's twenty-seventh statement of undisputed material facts, though it is important to note that Sam Ruble was one of Virtual's first contacts at Beaulieu along with Bruce Stern.[14]

29.     Beaulieu initially hired Virtual to digitize Beaulieu's existing room scene library.  Stella Decl. ¶ 44, Exh. PP, Stern Tr. at 36:20–24; Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 51:23–52:25.

**RESPONSE**:     Virtual does not dispute Beaulieu's twenty-ninth statement of undisputed material facts.

30.     Beaulieu supplied Virtual with transparencies of Beaulieu's own room scene images and swatches of Beaulieu carpet, and Virtual digitized those room scene images and

---

[14] Sucher Dep. at 39:18-24; 137:2-8.

added the digitized carpet swatches to Beaulieu's room scenes. Stella Decl. ¶ 44, Exh. PP, Stern Tr. at 45:5–46:11; Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 51:23–52:25.

**RESPONSE**:    Virtual does not dispute Beaulieu's thirtieth statement of undisputed material facts.

31.    Virtual then began to supply its own room scenes, which Beaulieu also purchased. Sucher Tr. at 53:7–61:23.

**RESPONSE**:    Regarding Beaulieu's thirty-first statement of undisputed material facts, Virtual does not dispute that shortly after the parties began their business relationship, it began supplying Beaulieu with original room scenes.    However, Beaulieu disputes that Beaulieu "purchased" these room scenes from Beaulieu outright.  The invoices Virtual sent Beaulieu with Virtual room scene images contained an explicit one-year term of use, and Virtual discussed the one-year term of use of its images with Beaulieu as early as 2000.[15]  Further, Beaulieu chose to use Virtual's room scenes under the terms of "Option 3," a limited license that permitted non-exclusive use of a room scene for a one-year period, and required Beaulieu to hire Virtual for any further manipulations to the scene.[16]

32.    Beaulieu used room scene images for displays and advertisements, for example, on its website, and on deck boards and rack cards that it distributed to its dealers and resellers. Stella Decl. ¶ 44, Exh. PP, Stern Tr. at 34:14–35:5.

---

[15] Sucher Dep. at 39:18-24; 137:2-8; Exhibit B to Virtual's brief.

[16] Sucher Dep. at 24:21-15, 25:1-18; Sucher Aff. at ¶¶ 13, 14.

**RESPONSE**: Virtual does not dispute Beaulieu's thirty-second statement of undisputed material facts.

33.     Whether the room scene image originated with Virtual or Beaulieu, the purchasing procedures and deliverables were always the same: Beaulieu would contact Virtual with an order, and Virtual would deliver the photographs of room scene images. Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 15:18–17:22, 19:15–20:8, 29:19–31:4, 34:23–36:9; 61:20–65:2, 68:21–70:1, 75:11–14.

**RESPONSE**:     Virtual does not dispute Beaulieu's thirty-third statement of undisputed material facts.


34.     The recipient of the delivered room scene, e.g., Bruce Stern, Wendy Jaynes or Gina Floyd, typically signed the delivery receipt, which included a simple order description, such as "1 DVD containing banner scenes," "7 proofs, 7 samples," or "5 carpet swatches." Stella Decl. ¶ 49, Exh. UU, 7/10/06 Delivery Receipt (VS-BEAU 0002318); Stella Decl. ¶ 50, Exh. VV, 1/03/07 Delivery Receipt (VS-BEAU 0002512); Stella Decl. ¶ 51, Exh. WW, 4/04/06 Delivery Receipt (VS-BEAU 0002290); Stella Decl. ¶ 52, Exh. XX, 10/21/09 Delivery Receipt (VS-BEAU 0002762).

**RESPONSE**:     Virtual does not dispute Beaulieu's thirty-fourth statement of undisputed material facts.


35.     The delivery receipt contained no information relating to pricing or terms and conditions. Stella Decl. ¶ 49, Exh. UU, 7/10/06 Delivery Receipt (VS-BEAU 0002318); Stella

15

Decl. ¶ 50, Exh. VV, 1/03/07 Delivery Receipt (VS-BEAU 0002512); Stella Decl. ¶ 51, Exh. WW, 4/04/06 Delivery Receipt (VS-BEAU 0002290); Stella Decl. ¶ 52, Exh. XX, 10/21/09 Delivery Receipt (VS-BEAU 0002762).

**RESPONSE**: Virtual disputes Beaulieu's thirty-fifth statement of undisputed material facts. The delivery receipts signed by Beaulieu employees typically listed the job number with which the receipts were associated. For example, the receipt Beaulieu identified in its Exhibit UU—VS-BEAU 0002318—listed Virtual Job Number 16793. This Job Number, in turn, was "related to" a specific invoice Beaulieu received that contained references to pricing and Virtual's terms and conditions.[17]

36.     Virtual delivered room scene images by email, CD, or DVD, and neither the delivery media nor the images themselves, ever included any terms and conditions or notice of copyright. Stella Decl. ¶ 7, Exh. E, Compact Disc, file contents and file properties (DX 8); Stella Decl. ¶¶ 30–32, Exhs. BB–DD, 11/19/07 Clay-Floyd emails (DX 34–36); Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 61:20–65:2, 68:21–70:1, 70:19–75:14; Stella Decl. ¶ 45, Exh. QQ, Jaynes Tr. at 13:2–14:18, 34:4–14; Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 46:15–47, 69:25–70:6; 71:1–13.

**RESPONSE**: Virtual does not dispute Beaulieu's thirty-sixth statement of undisputed material facts.

37.     None of the CDs, DVDs or files were ever labeled "Virtual Studios." Stella Decl. ¶ 7, Exh. E, Compact Disc, file contents and file properties (DX 8); Stella Decl. ¶¶ 30–32, Exhs.

---

[17] Sucher Dep. at 39:18-24; 137:2-8; Exhibit B to Virtual's brief.

BB–DD, 11/19/07 Clay-Floyd emails (DX 34–36); Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 61:20–65:2, 68:21–70:1, 70:19–75:14; Stella Decl. ¶ 45, Exh. QQ, Jaynes Tr. at 13:2–14:18, 34:4–14; Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 46:15–47, 69:25–70:6; 71:1–13.

**RESPONSE**: Virtual does not dispute Beaulieu's thirty-seventh statement of undisputed material facts insofar as it describes appearance of discs and files Virtual gave to Beaulieu. But it does dispute this statement to the extent that it implies Virtual's conduct was substantially different from that of other companies in the room scene business. According to Mr. Stern, most if not all of the discs in Beaulieu's room scene library were unlabeled regardless of their source.[18] Further, it was Mr. Stern that decided to "rename" Virtual's room scenes "to suit [his] filing system," not Virtual.[19]

38.  Virtual also supplied Beaulieu with a hard copy of a catalog that included a blended assortment of Virtual and Beaulieu room scene images (Stella Decl. ¶ 5, Exh. C, Coronet Room Scenes (DX 5)), and a second catalog containing only Virtual Images (Stella Decl. ¶ 6, Exh. D, Virtual Image Catalog (DX 7)). None of the images in either catalog was identified by ownership, or included any notice of copyright. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 53:7–61:23, 77:8–84:1, 86:21–87:1.

**RESPONSE**: Virtual disputes Beaulieu's thirty-eighth statement of undisputed material facts. Indicia of ownership, such as Virtual's logo and trade name, are located in various places

---

[18] Stern Dep. at 73:3-16.

[19] Stella Decl. ¶ 19, Exh. Q, 8/08 email chain (DX 22), at B0000004.

17

throughout the Virtual Image Catalog referenced in Beaulieu's statement. For example, this is the cover of the Catalog in question attached as Exhibit D to Ms. Stella's Declaration:



And this is one of the pages in Beaulieu's Exhibit D, which is substantially similar to all the other pages in the Catalog displaying Virtual's room scenes:



39. Beaulieu stored the catalogs and CDs in a CD library that numbered in the thousands in Mr. Stern's office—just as Virtual delivered them. Stella Decl. ¶ 44, Exh. PP, Stern Tr. at 12:18–22, 13:22–24, 14:11–20; Stella Decl. ¶ 45, Exh. QQ, Jaynes Tr. at 13:2–14:18, 34:4–14.

**RESPONSE**:   Virtual disputes Beaulieu's thirty-ninth statement of undisputed material facts.  The evidence Beaulieu cites in support of this statement does not indicate that Virtual delivered CDs or catalogs to be stored in the fashion chosen by Mr. Stern.  It was his choice, not Virtual's, to store around 1,000 discs containing room scenes in a manner such that a person retrieving a room scene disk "would have no way of knowing where [he] got [it] from."[20]

40.    Beaulieu received all Virtual invoices in hard copy by mail.  Stella Decl. ¶ 48, Exh. TT, Beaulieu's Interrogatory Response in Response to Area of Inquiry 12 of Plaintiff's Notice of 30(b)(6) Deposition Duces Tecum ("Rog. Resp. A.I. 12"); Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 43:20.

**RESPONSE**:   Virtual disputes Beaulieu's fortieth statement of undisputed material facts.  Virtual sent Beaulieu invoices by mail, email, and fax.[21]

41.    Whether they were addressed to the company, generally, or to an employee, specifically, as a rule, all invoices were routed to Accounts Payable ("A/P").  Stella Decl. ¶ 45, Exh. QQ, Jaynes Tr. at 37:6–18; Stella Decl. ¶ 44, Exh. PP, Stern at Tr. 44:1–20; Stella Decl. ¶ 48, Exh. TT, Rog. Resp. A.I. 12; Stella Decl. ¶ 28, Exh. Z, 12/06/05 Virtual Invoice (DX 32); Stella Decl. ¶ 29, Exh. AA, 4/07/08 Virtual Invoice (DX 33).

**RESPONSE**:   Virtual does not dispute Beaulieu's forty-first statement of undisputed material facts, though it notes that the evidence cited by Beaulieu in support of this statement

---

[20] Stern Dep. at 73:3-16.

[21] Sucher Dep. at 199:10-14.

shows that the decision to "route" all of Virtual's invoices to "A/P" was Beaulieu's, not Virtual's.

42.     The invoices, which Plaintiff asserts have included Virtual's preprinted "Terms and Conditions" on the back since the company's inception in 1996, were not reviewed by employees outside A/P, nor were they ever signed by any Beaulieu employee. Stella Decl. ¶ 45, Exh. QQ, Jaynes Tr. at 37:6–18; Stella Decl. ¶ 44, Exh. PP, Stern at Tr. 44:1–20; Stella Decl. ¶ 48, Exh. TT, Rog. Resp. A.I. 12; Exh. XX, 12/06/05 Virtual Invoice (DX 32); Exh. XX, 4/07/08 Virtual Invoice (DX 33); Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 17:9–21:23; Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 66:8–14.

**RESPONSE**:     Virtual disputes Beaulieu's forty-second statement of undisputed material facts. Mr. Stern stated in his deposition that he may have reviewed Virtual's invoices during the early years of the parties' business relationship.[22] Further, even without signing these invoices, Beaulieu paid nearly every one Virtual ever issued to it for room scene work.[23]

43.     Plaintiff asserts it has used two nearly identical sets of "Terms and Conditions" since 1996. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 17:9–21:23; Stella Decl. ¶ 4, Exh. B, Virtual's Terms and Conditions (1996) ("T&C 1996") (DX 4); Stella Decl. ¶ 20, Exh. R, Virtual's Terms and Conditions (revised 2003) ("T&C 2003") (DX 23).

---

[22] Stern Dep. at 94:5-17.

[23] Sucher Aff. at ¶¶ 17, 18; Exhibit D to Virtual's brief.

**RESPONSE**: Virtual does not dispute Beaulieu's forty-third statement of undisputed material facts.

44. Virtual amended its Terms and Conditions in 2003, but has since used the old and new versions interchangeably. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 17:9–21:23; Stella Decl. ¶ 4, Exh. B, Virtual's Terms and Conditions (1996) ("T&C 1996") (DX 4); Stella Decl. ¶ 20, Exh. R, Virtual's Terms and Conditions (revised 2003) ("T&C 2003") (DX 23).

**RESPONSE**: Virtual does not dispute Beaulieu's forty-fourth statement of undisputed material facts, though it states that the evidence cited by Beaulieu does not indicate the extent to which this interchangeable use occurred.

45. Paragraph 1 of both versions of the Terms and Conditions states that a client has "unlimited use of all photographs for a period of one year from the day of completion of payment and services . . . ." Stella Decl. ¶ 4, Exh. B, T&C 1996 (DX 4); Stella Decl. ¶ 20, Exh. R, T&C 2003 (DX 23).

**RESPONSE**: Virtual does not dispute Beaulieu's forty-fifth statement of undisputed material facts.

46. Virtual confirmed that although those Terms and Conditions apply only to a specific room scene purchase option, they were preprinted on the back of all Virtual invoices, regardless of the invoiced goods or services. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 37:21–38:25; Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 84:4–85:2.

**RESPONSE**: Virtual does not dispute Beaulieu's forty-sixth statement of undisputed material facts.

47. Virtual's Complaint alleges, "The parties discussed these terms and conditions before the commencement of their business relationship, and Beaulieu knew the foregoing language was in Virtual's invoices." Stella Decl. ¶ 3, Exh. A, Complaint ¶ 10.

**RESPONSE**: Virtual does not dispute Beaulieu's forty-seventh statement of undisputed material facts.

48. Neither Mr. Sucher nor any other employee of Virtual has any recollection of discussing the Terms and Conditions with anyone from Beaulieu. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 39:18–40:2; Stella Decl. ¶ 47, Exh. SS, Farmer Tr. at 50:1–51:9; Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 87:1–12.

**RESPONSE**: Virtual disputes Beaulieu's forty-eighth statement of undisputed material facts. The parties began doing business with each other in 1997, and the invoices Virtual sent Beaulieu with Virtual room scene images contained an explicit one-year term of use.[24] Further, Virtual discussed the one-year term of use of its images with Beaulieu as early as 2000.[25]

49. Neither Virtual nor Beaulieu ever presented a formal contract to the other party, nor did they ever discuss Virtual's room scene purchase options or ownership of those room

---

[24] Sucher Dep. at 39:18-24; 177:23 – 178:1; Exhibit B to Virtual's brief.

[25] Sucher Dep. at 137:2-8.

scenes. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 39:18–40:2, 51:23–52:25; Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 87:1–12; Stella Decl. ¶ 44, Exh. PP, Stern Tr. at 38:20–25, 91:16–94:17; Stella Decl. ¶ 45, Exh. QQ, Jaynes Tr. at 14:19–22, 34:18–35:5, 37:6–38:7, 42:11–43:1.

**RESPONSE**:   Virtual disputes Beaulieu's forty-ninth statement of undisputed material facts.   The portions of Mr. Sucher's and Ms. Clay's depositions to which Beaulieu cites in support of this statement do not contain testimony about whether Virtual discussed the room scene purchase options with Beaulieu.   And indeed, Virtual did discuss these options with multiple Beaulieu employees around 1999 or 2000.[26]   Further, the written invoices Beaulieu received from Virtual indicated that Beaulieu had only a temporary right to use Virtual's room scenes.[27]

50.     Plaintiff alleges that the Terms and Conditions governed "all work between Virtual and Beaulieu." Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 82:10–14.

**RESPONSE**:   Virtual disputes Beaulieu's fiftieth statement of undisputed material facts. Virtual did not "allege" that each of the Terms and Conditions on its invoices "governed 'all work between'" the parties.   For example, the one year term of use did not control when Virtual was manipulating an image already owned by Beaulieu.[28]

51.     Mr. Sucher claims that Virtual has always offered three room scene purchase options: (1) outright purchase of the copyright in a room scene image, with manipulation

---

[26] Sucher Aff. at ¶¶ 13, 14 .

[27] Exhibit B to Virtual's brief.

[28] Sucher Dep. at 137:2-22.

services available for an additional cost ("Option 1"); (2) purchase of an exclusive one-year "unlimited use" license, which excludes others from using the image during that one-year term, although Virtual maintains the copyright and prohibits manipulation by others ("Option 2"); and (3) a free, non-exclusive one-year "unlimited use" license, which allows other Virtual customers to use the image during that one-year term, with manipulation services offered for an additional cost, and Virtual maintaining the copyright and prohibiting manipulation by others ("Option 3"). Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 24:21–25:18.

**RESPONSE**: Virtual does not dispute Beaulieu's fifty-first statement of undisputed material facts.

52. Mr. Sucher admits that none of those purchase options are explained in Virtual's "Terms and Conditions." Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 25:19–25.

**RESPONSE**: Virtual does not dispute Beaulieu's fifty-sixth statement of undisputed material facts.

53. Mr. Sucher does not recall ever having discussed those options with anyone from Beaulieu. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 39:18–40:2.

**RESPONSE**: Virtual disputes Beaulieu's fifty-third statement of undisputed material facts. In the portion of Mr. Sucher's deposition transcript to which Beaulieu refers, Mr. Sucher discusses only the Terms and Conditions in Virtual's invoices:

```
18        Q    Okay.  And at the time that you started
19   working with Beaulieu back in 1996, as alleged --
20        A    Seven.
21        Q    -- or 1997, sorry, as alleged in the
22   complaint, did you sit down with Mr. Stern or with
23   Sam --
24        A    Sam Ruble, that's his name.
25        Q    Okay.  Great -- Mr. Ruble, and review the

1    terms and conditions found in Exhibit 4?
2         A    I'm not sure whether I did or not.                    29
```

So Mr. Sucher did not discuss and was not questioned about Virtual's three purchase options in this portion of his deposition.[30]   Further, Mr. Sucher stated in his affidavit that he did in fact discuss these purchase options with employees of Beaulieu well before the parties engaged in the current dispute.[31]


54.    Beaulieu has never identified an "Option 3" or a one-year non-exclusive license option in a purchase order to Virtual, nor has Virtual ever invoiced Beaulieu for that option. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 22:22–24:20, 30:18–25; Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 110:22–111:3.

**RESPONSE**:   Regarding Beaulieu's fifty-fourth statement of undisputed material facts, Virtual does not dispute the absence of language in Beaulieu's purchases orders related to its license option or one-year license.   Virtual also does not dispute that its invoices contained no

---

[29] Stella Decl. ¶ 43, Exh. OO, Sucher Dep. at 39:18–40:2.

[30] Later in Mr. Sucher's deposition he elaborated upon this testimony, noting that in 2000 he discussed the terms and conditions of Virtual's invoices with Beaulieu.  Sucher Dep. at 137:2-8.

[31] Sucher Aff. at ¶¶ 13, 14.

26

specific reference to Beaulieu's license option. However, the terms of Option 3 are such that Beaulieu never owed, and was therefore would not be billed for any separate license fee. Rather, customers like Beaulieu that chose Option 3 were billed only for Virtual's manipulations to room scene images.[32]

55.     Virtual never notified Beaulieu that a one-year license period was expiring. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 22:22–24:20, 30:18–25; Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 110:22–111:3.

**RESPONSE**:    Virtual does not dispute Beaulieu's fifty-fifth statement of undisputed material facts.

56.     Virtual gave notice to purchasers of Option 2, the one-year exclusive use option, when the one-year term was set to expire. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 24:4–20; Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 92:10–95:9, 96:11–97:7.

**RESPONSE**:    Virtual does not dispute Beaulieu's fifty-sixth statement of undisputed material facts.

57.     Virtual acknowledged that Beaulieu never purchased room scenes under Option 2, and thus never received such notice. Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 22:22–24:20, 30:18–25; Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 110:22–111:3.

---

[32] Sucher Dep. at 24:21 – 25:18.

**RESPONSE**: Virtual does not dispute Beaulieu's fifty-seventh statement of undisputed material facts.

58.     Paragraph 1 of both versions of Virtual's Terms and Conditions grants a client "unlimited use of all photographs" for one year. Stella Decl. ¶ 4, Exh. B, T&C 1996 (DX 4); Stella Decl. ¶ 20, Exh. R, T&C 2003 (DX 23).

**RESPONSE**: Virtual does not dispute Beaulieu's fifty-eighth statement of undisputed material facts.

59.     "Unlimited use" entitles licensees to those uses enumerated by section 106 of the Copyright Act, including the right to reproduce, prepare derivative works based upon, distribute copies of, or publicly display the copyrighted work. 17 U.S.C. § 106.

**RESPONSE**:     Before responding to Beaulieu's fifty-ninth statement of undisputed material fact, Virtual objects to the extent that this "statement of fact" is a legal conclusion apparently based upon Beaulieu's interpretation of a federal statute. Legal conclusions are not "facts" of the sort contemplated by Fed. R. Civ. P. Rule 56, and therefore statements like this do not warrant responses.[33]

---

[33] *See Banner Oil Co. v. Bryson,* 187 B.R. 939, 963 n. 21 (Bankr. N.D. Ill. 1995) (reasoning that "Rule 56(e) of the Federal Rules of Civil Procedure . . . contemplate[s] statements of material fact," that "[s]tatements that embody conclusions, especially legal conclusions, are outside the scope of summary judgment," and that therefore "[s]uch statements will not be treated as undisputed facts"); *G & K Servs. Co. v. Bill's Super Foods, Inc.,* 3:08CV00048, 2009 U.S. Dist. LEXIS 130284, *38 (E.D. Ark. July 23, 2009) (recognizing that where a party "is stating a legal conclusion that goes to the merits of its . . . claim, [s]uch a statement of law has no place in a Statement of Undisputed Fact"); *United States v. All Funds in the Account of Prop. Futures,* 820 F. Supp. 2d 1305, 1315 (S.D. Fla. 2010) (agreeing that some of a movant's "Statement[s] of Undisputed Facts are not facts at all, but rather are legal conclusions," and excluding "these so-called 'facts' . . . [from being considered as] either recitations or as findings of fact"); *Babish v. Sedgwick Claims Mgmt. Servs.,* 2:07-cv-1539, 2009 U.S. Dist. LEXIS 18594, *11 (W.D. Pa. Mar. 2, 2009) (stating that the court would "not accept [a party's] legal conclusions as undisputed facts"

28

But even if this "statement of fact" did warrant a response, Virtual would dispute it. 17 U.S.C. § 106 is a statute that lists the rights that accompany ownership of a copyrighted work. It does not contemplate the rights of limited licensees, nor does it contain the phrase "unlimited use."

60.     Mr. Sucher was fully informed of the manner in which Beaulieu used room scenes, testifying that Virtual's purported license permits licensees to "use it for a rack card or a deck board or whatever you want to use it for in your advertising." Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 37:4–7.

**RESPONSE**:  Virtual disputes Beaulieu's sixtieth statement of undisputed material facts as it is stated.  Upon being asked about his understanding of some of his customers' duties under Option 3, Mr. Sucher stated that they could "use [a room scene] for a rack card or a deck board or whatever [they] want[ed] to use it for in [their] advertising," but that "[a]fter the one year, they have to stop using the photograph."[34]  He also noted moments earlier that customers that chose Option 3 could not "manipulate the room in any way, shape, or form."[35]

61.     Virtual claims that its clients are prohibited from manipulating any Virtual room scene photograph, specifically, according to Mr. Sucher, by the terms of paragraph 4, which

---

in a summary judgment context); *Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1100 n. 1 (W.D. Ark. 2000) (noting, where a party's "statements are not statements of fact but legal conclusions," that a "party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted").

[34] Sucher Dep. at 37:2-12.

[35] Sucher Dep. at 25:13-18.

states that a "[c]lient may not assign or transfer this agreement, or any rights granted hereunder." Stella Decl. ¶ 43, Exh. OO, Sucher Tr. 26:1–10; Stella Decl. ¶ 3, Exh. A, Complaint ¶¶ 1, 4; Stella Decl. ¶ 4, Exh. B, T&C 1996 (DX 4); Stella Decl. ¶ 20, Exh. R, T&C 2003 (DX 23).

**RESPONSE**:   Virtual does not dispute Beaulieu's fifty-eighth statement of undisputed material facts insofar as it characterizes one portion of Mr. Sucher's testimony.   However, Beaulieu disputes this statement to the extent that it implies that paragraph 4 in Virtual's Terms and Conditions was the only source of the prohibition on manipulation.   Customers that chose either Option 2 or Option 3 were prohibited from manipulating Virtual's room scenes.[36]

62.    The language of paragraph 4 does not mention any prohibition on photo manipulations.   Stella Decl. ¶ 4, Exh. B, T&C 1996 (DX 4); Stella Decl. ¶ 20, Exh. R, T&C 2003 (DX 23).

**RESPONSE**:    Regarding Beaulieu's sixty-second statement of undisputed material facts, Virtual does not dispute the absence of an explicit prohibition on manipulations in the paragraph referenced by Beaulieu.   But, pursuant to Mr. Sucher's deposition testimony, Virtual interpreted the paragraph in question so as to include a prohibition on manipulation.[37]

63.    Photo manipulation is a derivative work expressly permitted by the "unlimited use" provision, as one of the section 106 exclusive rights of the copyright holder.   17 U.S.C. § 106.

---

[36] Sucher Dep. at 25:6-18.

[37] Suhcer Dep. at 26:1-10.

**RESPONSE**: Before responding to Beaulieu's fifty-ninth statement of undisputed material fact, Virtual objects to the extent that this "statement of fact" is a legal conclusion apparently based upon Beaulieu's interpretation of a federal statute. Legal conclusions are not "facts" of the sort contemplated by Fed. R. Civ. P. Rule 56, and therefore statements like this do not warrant responses.[38]

But even if this "statement of fact" did warrant a response, Virtual would dispute it. 17 U.S.C. § 106 is a statute that lists the rights that accompany ownership of a copyrighted work. It does not contemplate the rights of limited licensees, nor does it contain the phrase "unlimited use." All portions of § 106, including that permitting the creation of derivative works, relate to the "owner" of a copyright. As evidenced by the temporal restriction and bar against transfer in the Terms and Conditions, and the prohibition against manipulation under Option 3, Beaulieu in no way "owned" the copyrighted room scenes it obtained from Virtual.[39]

64.    Paragraph 1 of both versions of Virtual's terms and conditions grants a client unlimited use of its photographs "for a period of one year from the day of completion and payment of services." Stella Decl. ¶ 4, Exh. B, T&C 1996 (DX 4); Stella Decl. ¶ 20, Exh. R, T&C 2003 (DX 23).

**RESPONSE**: This statement is identical to Beaulieu's forty-fifth statement of undisputed material fact, and therefore Virtual repeats by reference its response to that statement.

---

[38] *See supra* at n. 31.

[39] Sucher Dep. at 25:13-18; Exhibit B to Virtual's brief; Sucher Aff. at ¶¶ 13, 14.

31

65.     According to Virtual's "Terms and Conditions," a client's payment commences the one-year license period.  Stella Decl. ¶ 4, Exh. B, T&C 1996 (DX 4); Stella Decl. ¶ 20, Exh. R, T&C 2003 (DX 23).

**RESPONSE**:    Virtual does not dispute Beaulieu's sixty-fifth statement of undisputed material facts.


66.     Ms. Clay testified that the one-year term begins on date of payment.  Stella Decl. ¶ 46, Exh. RR, Clay Tr. at 92:10–93:18.

**RESPONSE**:    Virtual does not dispute Beaulieu's sixty-sixth statement of undisputed material facts.


67.     Plaintiff admits it knew of Beaulieu's alleged infringement of room scene images as early as 2007, and its emails indicate that Virtual had such knowledge as early as 2004.  Stella Decl. ¶ 19, Exh. Q, 8/08 email chain (DX 22), at B0000001–02; Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 166:16–169:3.

**RESPONSE**:    Virtual disputes Beaulieu's sixty-seventh statement of undisputed material facts.  During his deposition, Mr. Sucher clarified statements about in the emails to which Beaulieu refers.  He indicated that he may have first observed Beaulieu's wrongful use of his room scenes as early as 2007, not 2004.[40]

---

[40] Sucher Dep. at 169:25 – 170:25.

68.     Virtual registered its copyrights between December 2007 and November 2009, after it claims it first learned of Beaulieu's alleged infringement.  Stella Decl. ¶ 8, Exh. F, Copyright Registration VA 1-428-943 (DX 9); Stella Decl. ¶ 9, Exh. G, Copyright Registration VA 1-428-944 (DX 10); Stella Decl. ¶ 10, Exh. H, Copyright Registration VA 1-429-974 (DX 11); Stella Decl. ¶ 11, Exh. I, Copyright Registration VA 1-429-975 (DX 12); Stella Decl. ¶ 12, Exh. J, Copyright Registration VA 1-430-765 (DX 13); Stella Decl. ¶ 13, Exh. K, Copyright Registration VA 1-430-766 (DX 14); Stella Decl. ¶ 14, Exh. L, Copyright Registration VA 1-430-767 (DX 15); Stella Decl. ¶ 15, Exh. M, Copyright Registration VA 1-430-768 (DX 16); Stella Decl. ¶ 16, Exh. N, Copyright Registration VA 1-431-032 (DX 17); Stella Decl. ¶ 17, Exh. O, Copyright Registration VA 1-431-194 (DX 18); Stella Decl. ¶ 18, Exh. P, Copyright Registration VA 1-431-195 (DX 19).

**RESPONSE**:   Virtual does not dispute Beaulieu's sixty-eighth statement of undisputed material facts

69.     Virtual produced screen captures from a now-defunct Beaulieu website that include twelve room scene images that Virtual claims to own.  Stella Decl. ¶ 53, Exh. YY, Virtual's accused room scene images (DX 21) (Image 1: VS-BEAU 0000047; VS-BEAU 0000074; VS-BEAU 0000078; VS-BEAU 0000084; VS-BEAU 0000114; VS-BEAU 0000125; VS-BEAU 0000194; VS-BEAU 0000236; VS-BEAU 0000240) (Image 2: VS-BEAU 0000049; VS-BEAU 0000089; VS-BEAU 0000108; VS-BEAU 0000124; VS-BEAU 0000131; VS-BEAU 0000133; VS-BEAU 0000215; VS-BEAU 0000218; VS-BEAU 0000222 - VS-BEAU 0000223; VS-BEAU 0000227; VS-BEAU 0000229; VS-BEAU 0000242) (Image 3: VS-BEAU 0000048;

VS-BEAU 0000065; VS-BEAU 0000073; VS-BEAU 0000095; VS-BEAU 0000117; VS-BEAU 0000120 - VS-BEAU 0000121; VS-BEAU 0000126; VS-BEAU 0000180; VS-BEAU 0000208; VS-BEAU 0000213 - VS-BEAU 0000214; VS-BEAU 0000221; VS-BEAU 0000225 - VS-BEAU 0000226; VS-BEAU 0000235) (Image 4: VS-BEAU 0000050; VS-BEAU 0000068; VS-BEAU 0000070 - VS-BEAU 0000071; VS-BEAU 0000076; VS-BEAU 0000079; VS-BEAU 0000083; VS-BEAU 0000085; VS-BEAU 0000087; VS-BEAU 0000099; VS-BEAU 0000107; VS-BEAU 0000178; VS-BEAU 0000210; VS-BEAU 0000220; VS-BEAU 0000228; VS-BEAU 0000233) (Image 5: VS-BEAU 0000051; VS-BEAU 0000066; VS-BEAU 0000081 - VS-BEAU 0000082; VS-BEAU 0000106; VS-BEAU 0000096; VS-BEAU 0000132; VS-BEAU 0000206; VS-BEAU 0000216; VS-BEAU 0000231) (Image 6: VS-BEAU 0000059; VS-BEAU 0000064; VS-BEAU 0000072; VS-BEAU 0000090 - VS-BEAU 0000091; VS-BEAU 0000093; VS-BEAU 0000105; VS-BEAU 0000109; VS-BEAU 0000239) (Image 7: VS-BEAU 0000062 - VS-BEAU 0000063; VS-BEAU 0000077; VS-BEAU 0000086; VS-BEAU 0000094; VS-BEAU 0000098; VS-BEAU 0000100; VS-BEAU 0000103; VS-BEAU 0000113; VS-BEAU 0000115; VS-BEAU 0000118; VS-BEAU 0000179; VS-BEAU 0000184; VS-BEAU 0000187; VS-BEAU 0000190; VS-BEAU 0000192 - VS-BEAU 0000193; VS-BEAU 0000195; VS-BEAU 0000224) (Image 8: VS-BEAU 0000067; VS-BEAU 0000075; VS-BEAU 0000088; VS-BEAU 0000092; VS-BEAU 0000097; VS-BEAU 0000116; VS-BEAU 0000127; VS-BEAU 0000185 - VS-BEAU 0000186; VS-BEAU 0000189; VS-BEAU 0000191; VS-BEAU 0000204 - VS-BEAU 0000205; VS-BEAU 0000209; VS-BEAU 0000211; VS-BEAU 0000217; VS-BEAU 0000230; VS-BEAU 0000243 - VS-BEAU 0000244) (Image 9: VS-BEAU 0000069; VS-BEAU 0000101; VS-BEAU 0000104; VS-BEAU 0000119; VS-BEAU 0000122; VS-BEAU 0000128; VS-BEAU

0000177; VS-BEAU 0000181; VS-BEAU 0000183; VS-BEAU 0000188; VS-BEAU 0000207; VS-BEAU 0000234) (Image 10: VS-BEAU 0000080) (Image 11: VS-BEAU 0000102; VS-BEAU 0000110 - VS-BEAU 0000112; VS-BEAU 0000123; VS-BEAU 0000129 - VS-BEAU 0000130; VS-BEAU 0000176; VS-BEAU 0000212; VS-BEAU 0000219; VS-BEAU 0000232; VS-BEAU 0000238; VS-BEAU 0000241) (Image 12: VS-BEAU 0000237).

**RESPONSE**:  Virtual does not dispute Beaulieu's sixty-ninth statement of undisputed material facts.


70.    Virtual also produced photos of carpet displays that Virtual contends contain infringing uses of Virtual's room scene images.  Mr. Sucher testified he has no evidence of the date(s) on which the accused room scene images from in-store displays were printed.  Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 204:11–16.

**RESPONSE**:    Regarding Beaulieu's seventieth statement of undisputed material facts, Virtual does not dispute that Mr. Sucher did not "know the exact dates" that the in-store displays were printed.  However, Virtual disputes Beaulieu's seventieth statement to the extent that implies there is "no evidence" of such displays' age.  Immediately after stating that he did not know exact printing dates for these displays, Mr. Sucher testified that he knew of "new displays at Home Depot and Lowe's"—his deposition occurred on November 13, 2012—that contained room scenes Virtual provided to Beaulieu.[41]

---

[41] Sucher Dep. at 204:4-18.

71.     Beaulieu raised an accord and satisfaction as an affirmative defense (D.I. 7, Answer at 7, Sixth Defense), and in its Counterclaim for Declaratory Judgment (*id.* at 11, ¶¶ 12–19).

**RESPONSE**:   Virtual does not dispute Beaulieu's seventy-first statement of undisputed material facts.


72.     In August 2008, Virtual President Tom Sucher complained in an email to Beaulieu Art Director Bruce Stern of Beaulieu's alleged misuse of Virtual's room scene images. Stella Decl. ¶ 19, Exh. Q, 8/08 Sucher-Stern email chain at (DX 22); Stella Decl. ¶ 21, Exh. S, December 18, 2008 Stern-Dempsey-Tijan email chain (DX 24).

**RESPONSE**:     Virtual does not dispute Beaulieu's seventy-second statement of undisputed material facts.


73.     Mr. Sucher alleged that Beaulieu had used several of Virtual's images for more than one year, and digitally manipulated those images, in violation of Virtual's terms and conditions.  Stella Decl. ¶ 19, Exh. Q, 8/08 Sucher-Stern email chain at (DX 22).

**RESPONSE**:   Virtual does not dispute Beaulieu's seventy-third statement of undisputed material facts insofar as it notes Mr. Sucher's email complaint to Mr. Stern in 2008.  But Virtual does dispute this statement to the extent that it implies that the Terms and Conditions of Virtual's invoices were the only conditions governing the parties' business relationship.[42]

---

[42] Sucher Aff. at ¶¶ 13, 14.

74.     Beaulieu's former Senior Vice President of Marketing, Patricia Flavin, negotiated with Tom Sucher over the next five or six months to resolve the dispute, conferring by phone, in-person, and through the exchange of numerous emails.  Stella Decl. ¶ 22, Exh. T, December 2008–March 2009 Sucher-Flavin email chain (DX 25); Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 37:9–14, 61:22–65:4, 67:20–72:17, 74:8–79:1, 80:7–81:10, 82:16–83:12; Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 197:13–199:25, 201:1–203:6, 209:18–210:21, 211:6–230:15, 233:23–238:13. Stella Decl. ¶ 21, Exh. S, December 2008-March 2009 Stern-Dempsey-Tijan email chain (DX 24).

**RESPONSE**:  Regarding Beaulieu's seventy-fourth statement of undisputed material facts, Virtual does not dispute that Mr. Sucher contacted Ms. Flavin in an attempt to resolve the dispute about Beaulieu's use of Virtual's room scenes by collecting payment from Beaulieu. Virtual also does not dispute that the two conducted some of these discussions via email and during two face-to-face meetings.

75.     Mr. Sucher's demands continually changed, at times including cash payments ranging from $8,000 to $25,500, a guaranty of all of Beaulieu's room scene business, and guaranteed business of $200,000 over a two-year period.  Stella Decl. ¶ 22, Exh. T, December 2008–March 2009 Sucher-Flavin email chain (DX 25); Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 75:8–11.

**RESPONSE**:  Virtual does not dispute Beaulieu's seventy-fifth statement of undisputed material facts.

76.     Ms. Flavin's counteroffers including cash payments ranging from $8,000 to $18,000.  Stella Decl. ¶ 22, Exh. T, December 2008–March 2009 Sucher-Flavin email chain (DX 25); Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 74:13–75:11, 82:16–83:3.

**RESPONSE**:  Virtual does not dispute Beaulieu's seventy-sixth statement of undisputed material facts.


77.     Mr. Sucher and Ms. Flavin finally settled the parties' dispute during their second in-person meeting in early 2009 ("2009 Settlement").  Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 37:9–14, 74:8–81:10.

**RESPONSE**:  Virtual disputes Beaulieu's seventy-seventh statement of undisputed material facts.  This statement of fact is based solely upon the testimony of one person, Patricia Flavin, an ex-Beaulieu employee. But even if Ms. Flavin was somehow in a position to authoritatively state that both parties do not dispute something, her testimony in question does not support the proposition that the parties "settled" their dispute.

Rather, Ms. Flavin testified only that, after a series of discussions with Mr. Sucher, she formed a number of "assumptions" and "understandings" about the parties' desire to "move forward."[43]  "[I]t was [her] understanding" that the parties' "business relationship was moving ahead," she "believed" they reached a "resolution to move forward," she "guess[ed]" that she "assumed" that "some" of Virtual's photos "were okay to be used" after their negotiations, and

---

[43] Flavin Dep. at 36:1 – 37:14, 81:2-10.

38

she "assumed" Mr. Sucher "was comfortable with the ongoing business relationship" between the parties.[44]

Nowhere in these portions of Ms. Flavin's testimony did she detail any written, concrete, or specific terms of any alleged "settlement" between the parties. In fact, a number of times she stated that she did not "recall" all the details of the final meeting she had with Mr. Sucher, and that she did not recall what she understood "was going to happen" next.[45] Though she noted that Mr. Sucher made a number of demands in lengthy emails, she testified only that her last meeting with him "was probably to come to a more realistic number" and "an expectation of a business relationship going forward . . . ."[46] At best, it was Ms. Flavin's "understanding that [they] were working towards a goal to continue a business relationship."[47] When asked whether she had been given the authority to pay any specific amount to settle Virtual's claims, Ms. Flavin responded simply and unequivocally: "No."[48]

Further, Mr. Sucher stated in at least one portion of his deposition that what potential non-monetary offers the parties did discuss were not "going to resolve the dispute."[49] Likewise, when asked specifically whether he "believed that [Virtual] had a deal with Beaulieu to address

---

[44] Flavin Dep. at 36:1-19, 37:4-14.

[45] Flavin Dep. at 75:12-16, 76:5-11.

[46] Flavin Dep. at 76:5-11, 80:7-15.

[47] Flavin Dep. at 81:7-10.

[48] Flavin Dep. 81:11-17, 82:13-15. Ms. Flavin did, however, come up with a figure that, if the decision was up to her, she would have offered Virtual "to resolve" its claims—"under $10,000." Flavin Dep. at 82:16-23.

[49] Sucher Dep. at 233:11-15.

39

the room scene images problems that you brought to Beaulieu's attention in 2008," Mr. Sucher replied, "No."[50]

78. During that meeting, Ms. Flavin explained to Mr. Sucher that his expectations regarding the requested level of Beaulieu's room scene business were unrealistic in light of the housing market crash. Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 72:9–17, 76:12–77:1.

**RESPONSE**: Regarding Beaulieu's seventy-eighth statement of undisputed material facts, Virtual does not dispute that Ms. Flavin testified that she felt Mr. Sucher's expectation of payment was "too high." But Virtual does dispute that Ms. Flavin said that this was due to "the housing market crash." In the portion of the deposition transcript to which Beaulieu cites, Ms. Flavin stated only that the "market face" in the "industry" had "changed" since 2006.

79. During that meeting, Mr. Sucher expressed the importance to his company of maintaining the business relationship with Beaulieu, and suggested that Beaulieu consider Virtual's capabilities beyond room scene work, including its printing and website design services. Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 75:12–81:10; Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 62:24–63:4; Stella Decl. ¶ 23, Exh. U, April 2009 Sucher-Flavin-McAllister email chain (DX 26).

**RESPONSE**: Virtual does not dispute Beaulieu's seventy-ninth statement of undisputed material facts.

---

[50] Sucher Dep. at 209:6-12.

80.     That meeting concluded with Beaulieu's receipt of Virtual's promise that its claims were resolved and would not be litigated, in exchange for Beaulieu's promise that it would continue to give Virtual room scene business, and that it would consider using Virtual's services beyond room scene work.  Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 36:1–19, 37:9–14, 44:22–25, 80:7–81:10.

**RESPONSE**:     Virtual disputes Beaulieu's eightieth statement of undisputed material facts. See Virtual's response to Beaulieu's seventy-seventh statement.


81.     Virtual failed to answer Beaulieu's counterclaim for over a year.  *See* D.I. 41, Request for Entry of Default; D.I. 44, Beaulieu's Reply in Support of Its Request for Entry of Default.

**RESPONSE**:     Regarding Beaulieu's eighty-first statement of undisputed material fact, Virtual does not dispute that it filed an Answer responsive to Beaulieu's counterclaim in 2013. Virtual does dispute this statement to the extent that it implies Virtual waived any defenses it may have to Beaulieu's counterclaim or that it failed to otherwise defend itself.  Virtual incorporates by reference the brief it filed in response to Beaulieu's "Application for Default," but also states that, in addition to its Answer, it has disputed and defended against Beaulieu's counterclaim a number of ways:

>    (1) It indicated in the Rule 26(f) report filed with the Court in March of 2012 that
>
>        it "denie[d] that Beaulieu [was] entitled to recovery on its counterclaim,"
>
>        "denie[d] that Virtual [was] liable to Beaulieu for any compensatory

consequential or other damages," and "denie[d] it breached any agreement with Beaulieu;"[51]

(2) It served written discovery upon Beaulieu in 2012 that sought documents and information related to or supported Beaulieu's counterclaim;[52]

(3) It questioned multiple deponents about the allegations in Beaulieu's counterclaim;[53] and

(4) It asserted its disagreement with Beaulieu about the allegations of the counterclaim through Mr. Sucher's deposition testimony.[54]

82.     Beaulieu purchased room scene images from Virtual into 2011. Stella Decl. ¶ 55, Exh. AAA, List of Virtual's 1999–2009 invoices to Beaulieu; Stella Decl. ¶ 56, Exh. BBB, List of Virtual's 2009–2011 invoices to Beaulieu.

**RESPONSE**:     Virtual disputes Beaulieu's eighty-second statement of undisputed material facts. Though Virtual and Beaulieu conducted a small amount of business with one another between 2009 and 2011, Beaulieu did not obtain or "purchase" any of Virtual's room scene images. Rather, it had Virtual manipulate images Beaulieu owned.[55]

---

[51] Rule 26(f) Report (Court Doc. No. 12.)

[52] Virtual's Resp. to Beau.'s Appl. for Default at 3-4, Exs. A & B (Court Doc. Nos. 45, 45-1, 45-2.)

[53] Virtual's Resp. to Beau.'s Appl. for Default at 4, Ex. C (Court Doc. Nos. 45, 45-3.)

[54] Virtual's Resp. to Beau.'s Appl. for Default at 5, Ex. D (Court Doc. Nos. 45, 45-4.)

[55] Sucher Aff. at ¶ 11.

83.     Beaulieu continued to purchase room scene work from Virtual well into 2011.
Stella Decl. ¶ 26, Exh. X, August 2009 Clay-Stern-Sucher email chain (DX 29); Stella Decl.
¶ 27, Exh. Y, December 16, 2010 Flavin-Stern email chain (DX 30); Stella Decl. ¶ 33, Exh. EE,
September 9, 2010 Farmer-Bakker/Floyd email (DX 40); Stella Decl. ¶ 34, Exh. FF, September
2010 Floyd-Thompson/Farmer-Clay email chain (DX 41); Stella Decl. ¶ 35, Exh. GG, December
17, 2010 Farmer-Stern/Floyd email (DX 42); Stella Decl. ¶ 3, Exh. A, Complaint ¶ 12 (DX 3).

   **RESPONSE**:   Virtual disputes Beaulieu's eighty-third statement of undisputed material
facts as it is stated.  See response to Beaulieu's eighty-second statement of undisputed material
facts.


84.     Ms. Flavin instructed the marketing and R&D departments to send all of their
room scene work to Virtual.  Stella Decl. ¶ 25, Exh. W, June-July 2009 Sucher-Flavin email
chain (DX 28).

   **RESPONSE**:   Virtual does not dispute Beaulieu's eighty-fourth statement of undisputed
material facts.


85.     In the months following, Mr. Sucher contacted Ms. Flavin to express his concern
over the amount of room scene work Virtual received from Beaulieu.  Stella Decl. ¶ 25, Exh. W,
June-July 2009 Sucher-Flavin email chain (DX 28).

   **RESPONSE**:   Virtual disputes Beaulieu's eighty-fifth statement of undisputed material
facts as it is stated.  As part of their ongoing attempt to resolve the parties' dispute, Ms. Flavin at

one point offered to give Virtual "all of Beaulieu's room scene work."[56] After receiving very little room scene work from Beaulieu over the intervening months, Mr. Sucher contacted Ms. Flavin to inquire about Beaulieu's intentions and lament their inability to resolve the parties' dispute:

> Virtual Studios has only produced two or maybe three room scenes at most since this conversation . . . started last year in August. As you also know I've tried to be very creative to try to resolve this but still nothing from Beaulieu . . . . Please get back to me this week on Beaulieu's plan to resolve this situation. If I don't hear from you at that time then I'm sorry but I must take this to our lawyer . . . .[57]

86.     Following Ms. Flavin's reassurance that more work could be expected later in the year, closer to the flooring industry's annual conference, and confirmation that Mr. Sucher would not pursue any legal claim, Mr. Sucher's emails stopped. Beaulieu received no further complaints from Mr. Sucher, until he filed suit years later. Stella Decl. ¶ 25, Exh. W, June-July 2009 Sucher-Flavin email chain (DX 28); Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 36:1–19; Stella Decl. ¶ 3, Exh. A, Complaint (DX 3).

**RESPONSE**:   Virtual disputes Beaulieu's eighty-sixth statement of undisputed material facts. The emails and deposition testimony cited here by Beaulieu do not contain any statements to the effect that Mr. Sucher "confirmed" that Virtual "would not pursue any legal claims . . . ." But even more telling of the inaccuracy of this "fact" is an email Ms. Flavin sent Mr. Sucher only hours after the ones Beaulieu cites:

---

[56] Sucher Dep. at 235:25 – 236:3.  Mr. Sucher also noted that Ms. Flavin's offer was not meant to be "compensation for all [of Beaulieu's] misuses of [Virtual's] rooms . . . ."

[57] Stella Decl. ¶ 25, Exh. W, June-July 2009 Sucher-Flavin email chain (DX 28).

From: Patricia Flavin
To: 'tom@virtualstudiosinc.com'
Sent: Thu Jul 02 14:02:09 2009
Subject: Re: Update

Tom
There are some room scenes on the way to you within the next two weeks. However, if
we are to continue to help in developing this relationship, I will need you to sign a
release to drop your grievances with the company.

I will have something drafted up next week and sent over to you.
Patricia
                                                                                    58

So within a few days of receiving an email from Mr. Sucher in which he confirmed that the
parties had not yet reached a resolution and threatened legal action, Ms. Flavin asked Mr. Sucher
to "drop" his "grievances" by signing a release. Mr. Sucher, of course, never affirmatively
responded to Ms. Flavin's email, nor did he ever sign any release.[59]

    87.    Beaulieu invited Virtual to present its range of services to several of Beaulieu's
key decision makers. Stella Decl. ¶ 23, Exh. U, April 2009 Sucher-Flavin-McAllister email
chain (DX 26); Stella Decl. ¶ 24, Exh. V, April-June 2009 Sucher-McAllister email chain (DX
27).

    **RESPONSE**:    Virtual does not dispute Beaulieu's eighty-seventh statement of
undisputed material facts.

    88.    Mr. Sucher met with Beaulieu's President and CEO, Ralph Boe, and VP of
Marketing Information Services, Mike McAllister—at Mr. Boe's request—to discuss Virtual's
website development capabilities. Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 44:4–25; 83:13–23;

---

[58] Exhibit E at Virtual's brief.

[59] Sucher Aff. at ¶ 26.

Stella Decl. ¶ 37, Exh. II, April 2009 Sucher-McAllister email chain (PX 13); Stella Decl. ¶ 38, Exh. JJ, April 2009 Hutchinson-Sucher-McAllister email chain (PX 14); Stella Decl. ¶ 39, Exh. KK, March 2009 Hutchinson-Sucher-McAllister-Wade email chain (PX 16); Stella Decl. ¶ 40, Exh. LL, May 2009 McAllister-Sucher email chain (PX 17); Stella Decl. ¶ 41, Exh. LL, June 9, 2009 Sucher-McAllister email (PX 18).

**RESPONSE**:  Virtual does not dispute Beaulieu's eighty-eighth statement of undisputed material facts.


89.     Mr. Sucher met with Frank Hutchinson, the head of Beaulieu's print shop, to discuss Virtual's printing capabilities.  Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 77:1–78:7; Stella Decl. ¶ 36, Exh. HH, March 2009 Hutchinson-Sucher-McAllister email chain (PX 12).

**RESPONSE**:   Virtual does not dispute Beaulieu's eighty-ninth statement of undisputed material facts.


90.     Mr. Sucher admitted and testified to the facts underlying the parties' accord and satisfaction, including his negotiations with Ms. Flavin, presentations to Beaulieu executives, and desire to maintain the parties' business relationship, particularly in light of Virtual's financial struggles.  Stella Decl. ¶ 43, Exh. OO, Sucher Tr. at 197:13–199:25, 201:1–203:6, 205:18–207:12, 209:18–210:21, 211:6–230:15, 233:23–238:13.

**RESPONSE**:    Virtual disputes Beaulieu's ninetieth statement of undisputed material facts.  Though Mr. Sucher testified about "negotiations with Ms. Flavin," "presentations to Beaulieu executives," and an attempt to "maintain the parties' business relationship," at no time

did he "admit" that the parties entered an "accord and satisfaction" that resolved the parties' dispute. See Virtual's responses to Beaulieu's seventy-seventh, eighty-first, eighty-fifth, and eighty-sixth statements of undisputed material facts.

91.     Virtual and Beaulieu continued their business relationship for nearly two and a half years, from July 2009 until December 2011, without any further allegations of room scene misuse. Stella Decl. ¶ 42, Exh. NN, Flavin Tr. at 36:1–19.

**RESPONSE**:   Virtual does not dispute Beaulieu's ninety-first statement of undisputed material facts.

92.     Beaulieu has incurred and is continuing to incur significant legal fees and costs defending itself against Virtual's complaint. Beaulieu has produced evidence of its partial fees and costs, and will supplement that proof at the conclusion of this matter. Stella Decl. ¶ 54.

**RESPONSE:**   Virtual does not dispute Beaulieu's ninety-second statement of undisputed material facts, but in so doing, it does not waive its objection to Beaulieu's continuing failure to provide such documents in discovery despite Virtual's requests.

Respectfully submitted,

PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.

By:    s/Michael A. Anderson
        Michael A. Anderson, BPR# 012368
        Attorneys for Plaintiff
        537 Market Street, Suite 202
        Chattanooga, TN 37402
        (423) 756-7117
        (423) 267-5032 (fax)

## CERTIFICATE OF SERVICE

I certify that on April 5, 2013, a copy of the foregoing response was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

s / Michael A. Anderson

F:\WpDocs\CLG\Clients\Virtual Studios\Beaulieu\Pleadings\MSJ Response - Resp. to Stat. of Facts.doc

48