UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

VIRTUAL STUDIOS, INC.

      Plaintiff,

v.

BEAULIEU GROUP, LLC,

      Defendant.

CIVIL ACTION NO. 1:11-cv-359

CLC/Lee

JURY DEMAND

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
BEAULIEU GROUP LLC'S MOTION FOR SUMMARY JUDGMENT
ON ITS DECLARATORY JUDGMENT COUNTERCLAIM AND ITS
MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S CLAIMS**

## I.    INTRODUCTION

Virtual's response[1] to Beaulieu's Summary Judgment Motions cites no evidence

presenting a triable issue as to any material fact in this case. Virtual instead attempts to

manufacture disputes of fact by raising disputes that are not supported by evidence, or by raising

collateral issues that are immaterial and not relevant or essential to the resolution of the issues

presented in Beaulieu's motions. Virtual also responds with the self-serving affidavit of its

President, Tom Sucher, in a failed attempt to erase his and other Virtual witnesses' damaging

deposition testimony. This eleventh-hour testimony is plainly insufficient to avoid summary

judgment, and the Court must dismiss such contradictory testimony. [2]

---

[1] Virtual's Brief in Response to Beaulieu's Motion for Summary Judgment is referred to
hereinafter as "Response" or "Response Br."
[2] When ruling on summary judgment motions, the Court cannot consider affidavits to the extent
that they contradict earlier deposition testimony. *Guster v. Hamilton Cnty. Dep't of Educ.*, 1:02-
CV-145, 2004 WL 1854181, at *25 (E.D. Tenn. Mar. 2, 2004) (Following a motion for summary

Virtual wholly ignores the testimony and actions of its own President, Mr. Sucher, which substantiate Beaulieu's undisputed statement of fact that the parties reached an accord and satisfaction—the existence of which bars all of Virtual's claims—which Virtual breached when it initiated this litigation.

Even absent the accord and satisfaction, however, each of Virtual's claims fails as a matter of law on the undisputed facts of this case. First, Virtual has conceded that copyright law preempts its state law claims. (Response Br. at 23 n.76.) Beaulieu is thus entitled to judgment dismissing those claims as a matter of law. Second, Virtual's copyright infringement claims fail because Virtual cannot establish the validity or ownership of its purported copyright registrations. Virtual conspicuously disregards considerable evidence establishing that all eleven of its asserted registrations should be rejected as completely unreliable because the information contained in them is contradicted by the record in this case. Without reliable evidence of registration and ownership, the copyright claims fail.

Finally, the undisputed facts establish that the purported "copyright license" terms Virtual seeks to enforce never existed. In its response, Virtual for the first time concedes that its purported Terms and Conditions neither expressly nor impliedly include a prohibition against manipulation of its room scene images. Furthermore, the factual record confirms that Beaulieu

---

judgment, a party "may not create an issue of material fact by filing an affidavit that contradicts [its] previous deposition testimony.). A party cannot create a disputed issue of material fact, after a summary judgment motion has been made, by filing an affidavit that contradicts the party's earlier deposition testimony. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006) (citing *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir.1997)). Moreover, the fact that a party has had ample opportunity during discovery to present evidence provides courts with reason to prevent that party from introducing new evidence in an affidavit opposing summary judgment. *Lockard v. Gen. Motors Corp.*, 52 F. App'x 782, 789 (6th Cir. 2002) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir.1984)).

never agreed to, nor was even aware of, Virtual's purported one-year license term.  Virtual

simply ignores the voluminous evidence pointing only to Beaulieu's decade-long right to

unlimited use of the images in perpetuity: (1) there is no signed contract accepting any time or

use limit; (2) Virtual's delivery media bore no copyright notice, or even a logo indicating their

source; (3) Virtual's image file properties stated the files were the property of "everyone"; (4)

Virtual's images, themselves, bore no copyright notice; (5)Virtual took no steps to notify

Beaulieu of impending expiration of any alleged time limits; and (6)Virtual waited until the

parties had been doing business for more than ten years before informing Beaulieu of its alleged

misuse of images based on Virtual's purported limitations.  Virtual failed to take any steps to

establish its purported ownership of these room scene images until December of 2007—fully ten

years after the parties first began doing business together.

For all of these reasons, Beaulieu is entitled to summary judgment dismissing Plaintiff's

claims, and entering judgment for Beaulieu on its declaratory judgment counterclaim, on the

undisputed facts of this case. [3]

## II.    ARGUMENT

### A.    Virtual Does Not Contest The Preemption of Its State Law Claims, Which Should Thus Be Dismissed as a Matter of Law.

Virtual intentionally has chosen not to contest Beaulieu's motion as it pertains to

Virtual's state law breach of contract, unjust enrichment and misrepresentation claims.[4]

---

[3] In further support of its motion, Beaulieu also submits herewith Defendant Beaulieu Group, LLC's Reply to Plaintiff Virtual Studios Inc.'s Response to Beaulieu's Statement of Undisputed Material Facts ("SUMF Reply"), and the Declaration of Stephanie G. Stella in Support of Beaulieu Group LLC's Reply Memorandum in Support of Its Motion for Summary Judgment on Its Declaratory Judgment Counterclaim and Its Motion for Summary Judgment Dismissing Plaintiff's Claims ("Stella Decl. 2").

(Response Br. at 23 n.76.)  Accordingly, Beaulieu is entitled to judgment dismissing those claims as a matter of law.

   **B.   On the Undisputed Facts, Beaulieu is Entitled to
        Summary Judgment Granting Its Declaratory Judgment
        Counterclaim Based on the Parties' Accord and Satisfaction.**

      **1.   Virtual Ignores Mr. Sucher's Deposition Testimony and Other
            Evidence Substantiating the Existence of an Accord and Satisfaction.**

The evidence establishes that Mr. Sucher agreed to drop his complaints about alleged misuse of Virtual's images in exchange for continuing a business relationship with Beaulieu. That agreement extinguished all of Virtual's copyright claims.  By filing this suit, Virtual breached that agreement as a matter of law and Beaulieu is entitled to judgment in its favor granting its pleaded declaratory judgment.

Virtual argues that "there is no undisputed evidence supporting the existence of" an accord and satisfaction because "Beaulieu never made any payment to Virtual in satisfaction of the dispute" over the alleged misuse of Virtual's room scene images.  (Response Br. at 9.)  This argument fails because it ignores Mr. Sucher's acceptance of the terms of the accord as a substitute for such payment.  Mr. Sucher's testimony confirms that the parties did, indeed, reach an agreement, and that Virtual initiated the instant suit due to its belief that Beaulieu did not perform on that agreement.  Mr. Sucher testified in relevant part:

   A.  [Ms. Flavin] said that we would get all Beaulieu room scenes.
   Q.  And Patricia said that the company would do that for you, right?
   A.  Yes.
   Q.  And now your claim is that Beaulieu didn't perform on that, that Beaulieu
       failed to do that?

---

[4] Virtual also fails to dispute any material fact set forth by Beaulieu in support of those arguments.

> A. That's correct.
> Q. All right.
> A. I did not get all Beaulieu room scenes.

(SUMF Reply ¶ 77.) Virtual also disregards Mr. Sucher's actions following the 2009 settlement

agreement with Ms. Flavin, actions that further substantiate the existence of that settlement: Mr.

Sucher's incessant emails suddenly stopped, Mr. Sucher's continual requests for additional

payment stopped, business between the parties continued, and Beaulieu received no further

complaints from Mr. Sucher until he filed suit years later. (SUMF Reply ¶¶ 77, 80, 85–86, 90.)

Virtual's assertion that Beaulieu's statement that "Mr. Sucher and Ms. Flavin finally

settled the parties' dispute" during a 2009 meeting is based "solely upon the testimony of one

person, Ms. Flavin"[5] not only ignores Mr. Sucher's testimony and actions, but also

mischaracterizes Ms. Flavin's testimony.

In paraphrasing Ms. Flavin's deposition testimony relating to the parties' accord, Virtual

omits her unequivocal testimony, "**I had an understanding and agreement**" with Virtual.

(SUMF Reply ¶¶ 77, 80.) Virtual complains that Ms. Flavin did not "detail any written,

concrete, or specific terms" of the settlement between the parties. (Response Br. at 10.) The

terms of the settlement, however, were simple: Beaulieu received Virtual's promise that its

claims were resolved and would not be litigated, in exchange for Beaulieu's promise that it

would continue to give Virtual room scene business, and that it would consider using Virtual's

services beyond room scene work.[6] (SUMF Reply ¶¶ 77, 80.)

---

[5] Response Br. at 9.

[6] Ms. Flavin also testified:
> Q. Or asked another way, did you intend to do business -- did Beaulieu intend to
> do business with Virtual Studios if it left Beaulieu open to being sued for
> copyright infringement?

5

Virtual's assertion that Ms. Flavin had not "been given the authority to pay any specific amount to settle Virtual's claims"[7] is misleading.  As Senior Vice President of Marketing, Ms. Flavin already had such authority.  This is evident from the several email offers from Ms. Flavin to Virtual of cash payments ranging from $8,000 to $18,000, as well as from her deposition testimony (SUMF Reply ¶¶ 77, 80):

> Q. (By Mr. Anderson) Did you ever conclude on your own what amount of money would be the most that you would propose offering to Virtual Studios to resolve these claims?
> A. Yes.
> Q. What was that?
> A. Off the top of my head, it was certainly under 10,000.
> Q. How did you arrive at that figure?
> A. Tom, I believe, had suggested 18 at some point.  So we were coming down in the right direction.  And I believe I came back with an 8, 9 figure.  I can't recall the exact.
> Q. Did someone give you direction to negotiate the best deal you could with Mr. Sucher?
> A. No.
> Q. Did Mr. Meadows tell you to negotiate the best deal you could with him?
> A. I don't recall.
> Q. Did Mr. Boe?
> A. No.

### 2. Beaulieu Has Established the Damages Element of Its Breach of Contract Claim.

Virtual argues that Beaulieu has not established the element of damages for breach of contract because Beaulieu's only damages are attorneys' fees, and Tennessee law prohibits parties from recovering attorneys' fees as an element of damages absent a contractual or statutory exception.  (Response Br. at 11–12.)  This is a misstatement of both fact and law.

---

A. It never got to that point.  (SUMF Reply ¶¶ 77, 80.)

[7] Response Br. at 10.

Virtual's argument disregards the fact that Beaulieu has sustained considerable injury resulting from the diversion of substantial corporate resources to this litigation. For example, countless employees, from corporate officers to accountants, have spent incalculable hours on activities directly related to defending Virtual's claims, including, for instance, document search and retrieval, depositions and related preparation, and attorney meetings and interviews.

Virtual's argument also ignores the law. Although Beaulieu's damages relating to diversion of its resources may not be calculated with reasonable certainty, Tennessee law provides that a party is "entitled to nominal damages for breach of the contract" where actual damages cannot be established:

> 'Upon breach of a valid and binding contract, the law infers some damages, and generally the person guilty of the breach is liable at least for nominal damages, if actual damages cannot be proved. Nominal damages only are recoverable upon the breach of a contract if no actual or substantial damage resulted from the breach or no damage has been or can be shown, as for example, *where actual damage is uncertain or not susceptible of proof or is too remote, conjectural, and speculative to form the basis of a legal recovery*, * * *.' Sec. 7, pp. 393, 394. (Emphasis supplied.)

*Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Pub. Co.*, 42 Tenn. App. 92, 105 (Ct. App. 1956) (quoting 15 Am. Jur.). Accordingly, regardless of whether Beaulieu may recover its attorneys' fees, Beaulieu has established the damages element of its breach of contract claim.

**C.    Even without the Accord and Satisfaction on the Undisputed Facts, Beaulieu is Entitled to Summary Judgment Dismissing Plaintiff's Copyright Infringement Claim.**

**1.    Virtual's Evidence Does Not Prove Infringement within the Three Year Limitations Period.**

Virtual admits that infringing acts must have occurred after December, 2008 to satisfy the statute of limitations. (Response Br. at 20–21.) But as explained in section C.4.b below, the date

7

of printing a display deck board is not proven simply by finding it in the store without proof of infringement during the limitary period, the claim fails.

## 2. Virtual Cannot Establish the Validity or Ownership of Its Asserted Copyright Registrations.

Even if Virtual never compromised its copyright claims, Virtual's whole copyright case fails because it provides no evidence to support its claims of validity and ownership of the works allegedly identified in eleven copyright registrations it asserts in this case. Virtual merely states without proof that it has "established a presumption of copyright ownership" because its purported employees for hire photographed "*nearly* every one of the rooms scenes it later copyrighted." (Response Br. at 12 (emphasis added).) Virtual's response ignores, however, that it is not entitled to such a presumption with respect to at least five of its asserted copyright registrations, and that all eleven registrations include completely unreliable ownership information, much of which is contradicted by the record in this case.

Virtual's ownership of the copyrights at issue depends on each photographer actually being an employee of Virtual at the time the photograph was taken. *See* 17 U.S.C. § 201 (a),(b); 17 U.S.C. § 101 (defining "work made for hire" as requiring employee status, with limited exceptions not applicable here); *see also Hi-Tech Video Prods. v. Capital Cities/ABC*, 58 F.3d 1093 (6th Cir. 1995). Virtual cannot establish the identity of the photographer for each photographic work. Therefore, it cannot establish that each photographer was an employee, and not a freelancer or independent contractor who retained his individual rights as the author. For example, Virtual neither disputes nor explains why its current Studio Manager, Phil Farmer, who has worked for Virtual since October 1999 and created countless room scene photographs over the years, is identified as the author of only a single group of approximately 233 room scene photographs that are the subject of a single registration, all of which Virtual certified were

8

created and published in the same month, in January 2008. (SUMF Reply ¶¶ 12, 14–15.) Virtual similarly fails to address why only three of its at least nine photographers were identified in the "Author" field of any of its eleven registrations, which purport to register approximately 1700 room scene images photographed between 1999 and 2009. And Virtual neither disputes nor explains why those photographers' names, in at least several instances, were later written in by someone who did not otherwise prepare the registrations. The registrations are wholly unreliable.

Virtual disputes the evidence that establishes that its former Studio Manager, Greg Wright, did not create the 251 room scene photographs of Copyright Registration 1-431-032, which records a creation date of 2007, and identifies Mr. Wright in the "Author" field. (SUMF ¶¶ 17–18.) According to Mr. Farmer, Mr. Wright left Virtual in 2006, and thus could not have created those images (at least, not as an employee for hire). (SUMF ¶ 19.) In its response, Virtual in one instance confirms Mr. Farmer's testimony, stating that "[i]t was not until **<u>after Mr. Wright left Virtual in 2006</u>** that Mr. Farmer became the principal room scene photographer for the company." (Response to SUMF ¶ 13.) Virtual subsequently "denies that Mr. [Farmer's testimony] is the only evidence about Mr. Wright's employment dates," and cites the conflicting testimony of Mr. Sucher, in the form of an affidavit, in which he claims that "Greg Wright did not leave Virtual Studio's [sic] employment until 2008." (Affidavit of Tom Sucher "Sucher Affidavit" ¶ 34.) The affidavit attempting to place Mr. Wright as a Virtual employee in 2007 and 2008 must be ignored because, when ruling on summary judgment motions, the Court cannot consider affidavits to the extent that they contradict earlier deposition testimony. *Guster v.*

*Hamilton Cnty. Dep't of Educ.*, 1:02-CV-145, 2004 WL 1854181, at *25 (E.D. Tenn. Mar. 2, 2004).[8]

Even if the Court were to consider Mr. Sucher's contradictory and self-serving affidavit testimony, Mr. Sucher's attempt to cure Mr. Farmer's damaging testimony fails. Assuming that, unbeknownst to Mr. Farmer (Virtual's Studio Manager beginning in 2006), Mr. Wright did photograph room scene images for Virtual into 2008, Mr. Farmer's testimony at the very least establishes the likelihood that, after 2006, Mr. Wright was no longer an employee for hire, but an independent contractor or freelance photographer for Virtual. If Mr. Wright created those photographs after he was no longer an employee of Virtual, as Virtual certified in its registration and now argues, he—not Virtual—is presumed the author and owner under the Copyright Act of the 251 photographs purportedly registered as Copyright Registration 1-431-032. *See* 17 U.S.C. § 201 (a),(b); 17 U.S.C. § 101 (defining "work made for hire" as requiring employee status, with limited exceptions not applicable here); *see also Hi-Tech Video Prods. v. Capital Cities/ABC*, 58 F.3d 1093 (6th Cir. 1995). Accordingly, with no reliable proof that Mr. Wright made these images when he was an employee, or that he otherwise assigned them to Virtual, Virtual does not own those images and the purported registration is invalid.

The registrations also are unreliable because Virtual failed to prove chain of title for images it acquired from others. Virtual acknowledges that it built its room scene image catalog by (1) photographing model homes and the creations of interior designers, (2) purchasing room scene images from other companies, such as Crown Craft,[9] and (3) photographing scenes in its

---

[8] *See* cases cited *supra* note 1.

[9] Beaulieu does not dispute Virtual's claim that Mr. Sucher estimated the number of room scene images Virtual obtained from Crown Craft; that number may, indeed, exceed his estimate of 16.

20980070.1

own studio. (SUMF Response ¶ 20.) Despite Beaulieu's repeated requests, Virtual has failed to produce any evidence to substantiate its ownership rights in those images created under categories one and two.

Virtual concedes that it failed to provide Beaulieu any releases from premises owners as part of Virtual's discovery responses.[10] (Response SUMF ¶ 23.) Those scenes, therefore, belong to others and not to Virtual. Likewise, despite Mr. Sucher's testimony that "there was a written agreement conveying [from Crown Craft to Virtual] copyright over those room scenes," Virtual has failed to produce *any* such agreement. (SUMF Reply ¶¶ 22–23.) Furthermore, Virtual states, "Mr. Sucher has reaffirmed in his affidavit that Virtual indeed purchased [the Crown Craft] images outright," but ignores Mr. Sucher's testimony that Crown Craft did not provide any evidence that it owned the images when it purportedly sold them to Virtual. (SUMF Reply ¶ 22.) Absent such evidence, the chain of title for the Crown Craft photos is incomplete, and Virtual cannot establish that it owns those images either. *See* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.").

Virtual argues, "Though Beaulieu did not question Mr. Sucher any further about Virtual's employment relationship with its photographers, if it had, it would have found numerous other facts showing that these photographers were 'employees' for the purpose of the 'works made for hire' doctrine." (Response Br. at 14.) Virtual's statement fails to cite any actual documentation

---

[10] Virtual's counsel finally produced documents it claims are responsive to Beaulieu's requests, Bates-numbered VS-BEAU 0007913–40, on April 4, 2013, more than two months after the February 1 close of fact discovery. Beaulieu will file a Motion to Exclude those and other late-produced documents at a later date.

20980070.1

of the identity of those photographers, or of their employee status.  Nor did Virtual produce any

in this case despite Beaulieu's repeated requests for the employment records of Virtual's

photographers, which would definitively establish the dates and status of their employment (i.e.,

employee for hire, independent contractor or freelancer).  Without that evidence, Virtual cannot

prove whether the photographers named in the registrations are the true authors of the room

scene images that Virtual purports to own as their employer.  In his role as President, Mr. Sucher

closely oversees his small company of just four employees (two of whom work only part-time),

and has intimate involvement in the company's daily operations, e.g., managing payroll, and

direct access to company records.  Curiously, despite that direct access, Mr. Sucher has ignored

Beaulieu's repeated requests and continually failed to produce any employment records or

documents for its photographers, records essential to perfecting the copyrights that Virtual now

is trying to enforce.[11]

Virtual responds to several of Beaulieu's statements of fact relating to ownership and

validity of the asserted registrations by contending that it matters whether an individual was

called a "principal" photographer.  But this is a collateral issue that is immaterial and not

relevant or essential to the resolution of the issues presented in Beaulieu's summary judgment

motions.  Specifically, Virtual disputes several of Beaulieu's statements only to the extent that

they imply that Virtual's photographers were "principal photographers."  The person who took

the photo, regardless of his title, is the author of the work.  Whether any of Virtual's

---

[11] This unwillingness to provide documentary proof of a key element of his company's case may
be tied to his casual treatment of his company's record-keeping duties.  (*See* Stella Decl. 2, Exh.
AAD, Clay Tr. at 22–27 (Ms. Clay is paid cash after Mr. Sucher writes a check and then cashes
it; she does not receive a W2 or 1099 tax form; Mr. Sucher is in charge of payroll).)

photographers were "principal," however, is irrelevant to and does not explain away the ample evidence of the unreliability of the information certified by Virtual in its copyright registrations.

Virtual asserts that it has established a presumption of ownership because its employees for hire photographed "nearly every one" of the room scenes it later purported to register. This assertion ignores the overwhelming evidence to the contrary. On the undisputed facts, the registrations are wholly unreliable. Virtual cannot establish itself as the lawful owner of any valid copyright. Should Virtual link any accused images to those registrations, Virtual's claims relating to those images should accordingly be dismissed.

### 3. The Copyright License Terms Virtual Seeks to Enforce Never Existed.

#### a) Virtual Concedes that Its Purported Terms and Conditions Do Not Prohibit Room Scene Manipulation.

Virtual concedes for the first time that its purported Terms and Conditions, which expressly grant "unlimited use," neither expressly nor impliedly include any prohibition against manipulation of its room scene images, and now relies only on the self-serving contradictory affidavit testimony of Mr. Sucher to support its new claim that Beaulieu verbally agreed to such a prohibition. Because that testimony is barred from consideration, and Virtual concedes that no written prohibition ever existed, Virtual's claims based on its allegations of prohibited manipulations should be dismissed.

Virtual concedes, "[P]ursuant to Mr. Sucher's deposition testimony, Virtual *interpreted* the paragraph in question [¶ 4 of the Terms and Conditions] so as to include a prohibition on manipulation,"[12] and disputes Beaulieu's statement of fact "to the extent that it implies that paragraph 4 in Virtual's Terms and Conditions was the only source of the prohibition on

---

[12] Response to SUMF ¶ 62.

20980070.1

manipulation."[13]  Virtual's misinterpretation of the language of its own Terms and Conditions does not alter the fact that nothing in those terms imposed such a restriction.

Virtual now claims that there was another "source" of the alleged prohibition on manipulation, that "[c]ustomers that chose either Option 2 or Option 3 were prohibited from manipulating Virtual's room scenes," and that "Beaulieu only wanted to do business under the terms of Option 3."  (Response to SUMF ¶ 61; Response Br. at 4.)  Yet Virtual fails to identify that other "source" of this alleged contractual duty, referring only vaguely in its Response Brief to an "arrangement," and implying the existence of an oral agreement under which Beaulieu declared that it "only wanted to do business under the terms of Option 3."  Virtual cites only the Sucher Affidavit (¶¶ 13–14) to support that claim.  (Response Br. at 4.)  As previously noted, such contradictory testimony is barred by law and must be rejected, particularly when it directly contradicts Mr. Sucher's deposition testimony.[14]

Even if the Court were to consider Mr. Sucher's new testimony, that testimony cannot overcome the true facts.  Virtual argues out both sides of its mouth when it insists that it had an oral arrangement with Beaulieu that prohibited Beaulieu from hiring another vendor to manipulate its room scene images.  On the one hand, Virtual contends that the invoice Terms and Conditions govern the breadth of the alleged license, and points to Paragraph 4 as the source of this alleged restriction.  When confronted with the indisputable fact that the Terms and Conditions contain no such restriction, Virtual resorts to manufacturing an alleged oral agreement to that effect.  Virtual cannot have it both ways.

---

[13] Response to SUMF ¶ 61.

[14] *See* cases cited *supra* note 1.

On the undisputed facts, Beaulieu was not prohibited from manipulating room scene images. Accordingly, any claim by Virtual of infringement based on room scene manipulation should be dismissed.

> **b) On the Undisputed Facts, Beaulieu**
> **Never Agreed to a One-Year License Term.**

Perhaps the strongest single piece of evidence that Beaulieu never agreed to and had no knowledge of the purported one-year license term is Mr. Stern's stunned response to Mr. Sucher's 2008 allegations of room scene misuse:

> Let me comment on time frame limitations. I do not subscribe to time frame limitations for the use of our products in your room scenes. I do not agree that we should have to pay anything again to use the image indefintely [sic]. If that is your position we will have to reevaluate our relationship.

(SUMF Reply ¶ 26.)

Virtual's own witnesses testified that they do not recall any discussion with Beaulieu relating to its purported Terms and Conditions. For example, Ms. Clay testified:

> Q. Did you ever receive questions from customers at all during the time that you were at Virtual Studios, not just when you were preparing invoices, but at all during your time at Virtual, questions from customers about what the terms and conditions meant?
> A. I don't recall any questions concerning that.
> Q. Do you recall having any conversations, either in person or on the telephone, about the terms and conditions?
> A. Not in particular. No.

(SUMF ¶ 25; SUMF Reply ¶ 25.) Mr. Sucher, himself, testified at deposition that *he has no recollection* of such a discussion with anyone at Beaulieu:

> Q: And at the time that you started working with Beaulieu back in 1996, as alleged --
> A: Seven.
> Q: -- or 1997, sorry, as alleged in the complaint, did you sit down with Mr. Stern or with Sam --
> A: Sam Ruble, that's his name.
> Q: Okay. Great -- Mr. Ruble, and review the terms and conditions found in Exhibit 4?

20980070.1

A: **I'm not sure whether I did or not.**

(SUMF Reply ¶¶ 25–26.)  It is clear that the portion of Mr. Sucher's deposition testimony relied upon by Virtual is entirely speculative:

> Q. What is the first conversation you remember having with a representative of Beaulieu, about the existence of the one-year time limit?
> A. Probably when we -- you know, around 2000.
> Q. Who did you have that conversation with?
> A. *I would say that Bruce Stern would be one person.  Sam Ruble would be another person.*

Mr. Sucher does not recall any particular relevant discussion with anyone from Beaulieu in 2000 or at any other time—he merely names people he believes could have been involved in such a discussion.  Virtual has not proven that any such discussion took place.

Virtual attempts to erase Mr. Sucher's and Ms. Clay's testimony with Mr. Sucher's spontaneous recollection of conversations he claims in his affidavit to have had 13 or 14 years ago.  (Sucher Affidavit ¶¶ 13–14.)  This plainly self-serving testimony is barred by law and must be rejected.[15]

Beaulieu and Virtual conducted business for eleven years, without any application of Virtual's Terms and Conditions, yet Plaintiff now argues that those terms, because they were preprinted on the back of its invoices, governed "all work between Virtual and Beaulieu." (SUMF ¶ 50.)  But by Virtual's own admission, during the first two or three years of that relationship, the purported Terms and Conditions were included on the back of Virtual's invoices *even though they did not apply to the invoiced work* because that work involved *Beaulieu's own room scene images*, to which even Virtual concedes that Beaulieu had unlimited rights.  Virtual claims that "Beaulieu purchased a limited, temporary license" when Beaulieu began purchasing

---

[15] *See* cases cited *supra* note 1.

Virtual's room scenes around 2000. Yet, as Virtual confirms, it never invoiced Beaulieu for a "license" or an "Option 3," but instead invoiced Beaulieu for "room scene replacement." (Stella Decl. ¶¶ 28–29, Exhs. Z, AA; Response to SUMF ¶ 54.) Virtual also admits that Beaulieu has never identified an "Option 3" or a one-year non-exclusive license option in a purchase order to Virtual. *Id.* And by Virtual's own admission, its purported Terms and Conditions neither identify nor explain its purchase options. *Id.*

Virtual's allegation that "Beaulieu chose to use Virtual's room scenes under the terms of 'Option 3,' a limited license that permitted nonexclusive use of a room scene for a one-year period, and required Beaulieu to hire Virtual for any further manipulations to the scene," is false. Virtual acknowledges that, in the course of the parties' 15-year business relationship, Beaulieu *never* purchased any room scene under Option 1 or 2. As supported by the undisputed evidence, Beaulieu could not have purchased those options because it had no knowledge that such options existed. And again, Virtual cites for support only the self-serving claims of Mr. Sucher's affidavit testimony,[16] which are barred by law and must be rejected.[17]

On the undisputed facts, Beaulieu never agreed to, nor was it even aware of, Virtual's purported one-year license term. Beaulieu had unlimited use of Virtual's images in perpetuity— no reasonable fact finder could find otherwise.

---

[16] Response to SUMF ¶ 31; Sucher Affidavit ¶¶ 13–14.

[17] *See* cases cited *supra* note 1.

20980070.1

### 4. Virtual Has Not Shown That Beaulieu's Exceeded Its Purported License Terms.

#### a) Beaulieu's Rights to Use Were Co-extensive with the Rights of a Copyright Owner.

Even assuming Beaulieu agreed to the one-year time limit (which it did not), Virtual purports to grant "unlimited use" of its room scene images during that one-year period under paragraph 1 of its Terms and Conditions. Yet Virtual now contends that such "unlimited use" is not truly unlimited, while conveniently disregarding that it has never bothered to define that term. Virtual focuses on the absence of the term "unlimited use" from Section 106 the Copyright Act, while never denying Beaulieu's statement that Virtual's grant of "unlimited use" could only have one meaning: the same rights as those enumerated in Section 106, including the right to reproduce, prepare derivative works based upon, distribute copies of, or publicly display a copyrighted work.

Virtual continues to sidestep the glaring issue of its failure to define "unlimited use," and instead goes on to argue that Beaulieu "has not articulated any legal reason why the term 'unlimited use' in the invoices would as a matter of law be construed so as to negate the non-manipulation term of Option 3, to which Beaulieu agreed." Setting aside that no reasonable interpretation of the term "unlimited use" would impose any such limitation, Beaulieu has already established on the undisputed facts that no such "non-manipulation term of Option 3" ever existed.

#### b) Virtual Cannot Prove Any Uses by Beaulieu Occurred After the Expiration of the Purported One-Year Period.

The undisputed facts substantiate that the copyright license terms Virtual seeks to enforce never existed. Even assuming, *arguendo*, that those terms applied, Virtual's evidence of misuse is nevertheless insufficient to overcome summary judgment.

18

Virtual's evidence that Beaulieu exceeded its purported license terms includes a single image from an in-store display, which Virtual refers to as 10461LR10, and a single image from a website display, which Virtual refers to as 11203DR1. Virtual claims with respect to the in-store display that "Beaulieu used this image [10461LR10] to advertise its products in retail stores in 2011, years after the one-year term of use had run." (Response Br. at 18.) The image appears to be part of a deck board on display in a retail store of one of Beaulieu's customers (Beaulieu does not have its own stores). Beaulieu's "unlimited" uses of the images Virtual delivered to it included providing those images to Beaulieu's customers for their use. According to Beaulieu employee Wendy Jaynes, "once we supplied [a room scene] to them, unless they tell me specifically what they're going to use it for, I would really not know that." (Stella Decl. 2, ¶ 6, Exh. AAE, Jaynes Tr. at 31:13–16.) Ms. Jaynes further testifies that Beaulieu's customers could have used the images on rack cards, for example. (*Id.* at 32:4–7.) Therefore, merely finding a Virtual image in print in a carpet retail store does not prove (1) that Beaulieu actually did the printing at issue, or (2) that Beaulieu did that printing more than one year after the beginning of the alleged license period.[18] So even assuming the one-year period applies, Virtual's proof of infringement falls short of the mark.

Virtual acknowledges that it has no evidence of the dates on which any of the accused room scene images from in-store displays were actually printed, or by whom. (Response to SUMF ¶ 70.) And Beaulieu was at no time under obligation to recover any of the advertising materials that it had distributed to its 1000s of dealers and resellers after the alleged one year period ended. Virtual cites no authority on this point. (SUMF Reply ¶ 70.) Since none of the

---

[18] For the same reason, merely finding a display in use in 2011 does not prove that Beaulieu committed an infringing act within the limitations period. (*See* Response Br. at 20–21.)

20980070.1

evidence gathered by Virtual actually establishes when any particular image was actually printed or distributed, or by whom, it fails to prove that Beaulieu used the images improperly after the expiration of the purported one-year license term.

Virtual claims that it produced website screen captures that demonstrate Beaulieu's alleged misuse of the website image between December 2008 and October 2009, and that "[i]ndeed, Beaulieu even admits to this large number of uses years after it made payment." (Response Br. at 19–20; SUMF ¶ 69.) Beaulieu made no such admission. Following Virtual's production of those screen captures, Beaulieu requested that Virtual produce its digital files as proof of the dates of those screen shots. Virtual responded, "Virtual Studios does not have any files responsive to this request." (Stella Decl. 2, ¶ 4, Exh. AAC, Plaintiff's Objections and Responses to Second Set of Requests for Production of Documents and Things ¶ 13.) Because Virtual has no concrete evidence establishing when any particular screen shot, including that of 11203DR1, was printed, Virtual fails to prove that Beaulieu used the images improperly after the expiration of the purported one-year license term.

### 5. Virtual's Purported Evidence of Infringement is Insufficient to Survive Summary Judgment as to Statutory Damages and Innocent Infringement.

Virtual claims that its "evidence" of post-2008 "use" establishes the dates of "commencement" of Beaulieu's alleged infringement, but the undisputed facts prove otherwise. Virtual admits that its photograph of 10461LR10 from the in-store display "is the only concrete evidence of which Virtual is aware that shows Beaulieu's use that [sic] image, and it indicates only that this use occurred in 2011," and Mr. Sucher testified that Virtual has no evidence of the dates on which any of the accused room scene images from in-store displays were printed. (Response to SUMF ¶ 70.)

20980070.1

There is nothing "concrete" about Virtual's evidence, which, assuming that Virtual's limitations applied (which Beaulieu does not concede), is insufficient to prove misuse. Virtual claims that "the absence of evidence showing dates that in-store displays were printed . . . is an issue of [Beaulieu's] own creation." (Response Br. at 21.) That is not the case. Beaulieu was never under any obligation to track print dates of deck boards or rack cards, or to recover any of the advertising materials that it had distributed to its 1000s of dealers and resellers. (SUMF Reply ¶ 72.) Virtual cites no authority imposing such an obligation. Furthermore, as detailed in Beaulieu's opening memorandum, Beaulieu reasonably believed it had the right to unlimited use of the images in perpetuity, at least because there is no signed agreement imposing a one-year limit; Virtual's delivery media bore no copyright notice; Virtual's image file properties stated the files were the property of "everyone"; Virtual's images bore no copyright notice; Virtual took no steps to notify Beaulieu of impending expiration of any alleged time limits; and Virtual waited until the parties had been doing business for more than ten years before informing Beaulieu of alleged misuse of images. Virtual's insufficient evidence is plainly an issue of *Virtual's* own creation.

Virtual notes that, during discovery, it asked for materials related to the time and manner in which Beaulieu used room scenes. (Response Br. at 21.) Virtual reproduces "the entirety of Beaulieu's original and supplemental response to Virtual's Interrogatory No. 2," while omitting the pertinent response to No. 1, which states, in relevant part:

> Beaulieu has offered, however, to make available to Virtual Studios for onsite inspection and copying all of the CDs in its possession containing room scene images delivered to it by Virtual Studios, and its archived print job tickets from the Beaulieu print shop from February 2009 (the inception of the print shop) through December 1, 2011.

20980070.1

Virtual curiously fails to disclose that Virtual's counsel, Mr. Lundy, indeed spent several hours during a January 29, 2013 visit to Beaulieu inspecting those very print job records, yet requested no copies of them.

Virtual argues that Beaulieu's claim of innocent infringement is misplaced because Beaulieu used Virtual's images in stores and online after receiving notice from Virtual in 2008. That argument ignores that Beaulieu reasonably believed it had the right to unlimited use of the images in perpetuity, including that there is no signed contract accepting that limit; Virtual's delivery media bore no copyright notice; Virtual's image file properties stated the files were the property of "everyone"; Virtual's images, themselves, bore no copyright notice; Virtual took no steps to notify Beaulieu of impending expiration of any alleged time limits; and Virtual waited until the parties had been doing business for more than ten years before informing Beaulieu of its alleged misuse of images based on Virtual's purported limitations. Furthermore, Beaulieu was at no time under obligation to recover any of the advertising materials that it had distributed to its 1000s of dealers and resellers for in-store displays.

Moreover, Virtual conveniently disregards that Beaulieu immediately removed from its website the twelve accused images identified by Mr. Sucher when he first notified Beaulieu of his infringement allegations in 2008 and, out of an abundance of caution, three additional images that Mr. Stern believed may have originated with Virtual. (SUMF ¶ 72, DX 24.) Any alleged infringement based on images remaining on the website was innocent at least because Beaulieu had no way to identify which of those images originated with Virtual—an issue of Virtual's own making. Virtual chose not to label its CDs, Virtual chose not include any information in the original file names that identified those files as Virtual's, and Virtual chose to omit any copyright notice on the images or CDs.

22 center

22

In an apparent attempt to skirt responsibility for such failures, Virtual, without citing any support or proof, or explaining why it is relevant, argues that its conduct was not "substantially different from that of others in the room scene business." (Response to SUMF ¶ 37.) The conduct of other companies is not at issue in this case, and is thus immaterial and not relevant or essential to the resolution of the issues presented in Beaulieu's summary judgment motions.

Contrary to Virtual's conclusion, on the undisputed facts, no reasonable juror would find Beaulieu's actions anything but innocent, and summary judgment on this issue should thus be granted.

## III.  CONCLUSION

For all of the foregoing reasons, and those stated in Defendant Beaulieu's opening memoranda in support of its motions for summary judgment, Beaulieu respectfully requests that its motion for summary judgment on its declaratory judgment counterclaim and its motion for summary judgment dismissing Plaintiff's claims be granted, and all relief prayed for be provided by this Court, including but not limited to dismissing Plaintiff's claims for copyright infringement, breach of contract, unjust enrichment, and misrepresentation in their entirety. Even if not completely dismissed, Beaulieu respectfully requests that this Court limit any award of damages to those acts of infringement that commenced after December 1, 2008, and that any statutory damages be limited on account of Beaulieu's innocent infringer status.

Dated: April 25, 2013                          Respectfully submitted,

                                               _/s/ Ann G. Fort_____
                                               Peter N. Farley
                                               Georgia Bar No. 255165
                                               (admitted *pro hac vice*)
                                               Ann G. Fort
                                               Georgia Bar No. 269995

(admitted *pro hac vice*)
Stephanie G. Stella
Virginia Bar No. 77358
(admitted *pro hac vice*)
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E., Suite 2300
Atlanta, Georgia 30309-3996
Phone: (404) 853-8000
Facsimile: (404) 853-8806
Email:   peter.farley@sutherland.com
         ann.fort@sutherland.com
         stephanie.stella@sutherland.com

*Attorneys for Defendant Beaulieu Group, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that exact copies of the following documents were filed electronically:

1.  Reply Memorandum in Support of Defendant Beaulieu Group LLC's Motion for Summary Judgment on Its Declaratory Judgment Counterclaim and Its Motion for Summary Judgment Dismissing Plaintiff's Claims;

2.  Declaration of Stephanie G. Stella in Support of Beaulieu Group LLC's Reply Memorandum in Support of Defendant Beaulieu Group LLC's Motion for Summary Judgment on Its Declaratory Judgment Counterclaim and Its Motion for Summary Judgment Dismissing Plaintiff's Claims; and

3.  Defendant Beaulieu Group, LLC's Reply to Plaintiff Virtual Studios, Inc.'s Response to Beaulieu's Statement of Undisputed Material Facts.

Notice of these filings will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt or will be served by first-class postage prepaid mail to the following:

Michael A. Anderson
McKinley S. Lundy, Jr.
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street
Suite 202, Market Court
Chattanooga, Tennessee 37402-1240
Email:   manderson@pbsjlaw.com
          mlundy@pbsjlaw.com

This 25th day of April, 2013.

/s/ Ann G. Fort
Ann G. Fort

25