UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| VIRTUAL STUDIOS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:11-CV-359 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| BEAULIEU GROUP, LLC, ) | |
| ) | |
| Defendant. ) | |

### **MEMORANDUM**

Before the Court are the following motions: (1) Defendant Beaulieu Group, LLC's ("Defendant" or "Beaulieu") request for entry of default (Court File No. 41); (2) Defendant's motion to strike the affidavit of Tom Sucher (Court File No. 59); (3) Defendant's motion for summary judgment on its declaratory judgment counterclaim (Court File No. 46); and (4) Defendant's motion for summary judgment dismissing Plaintiff Virtual Studios, Inc.'s ("Plaintiff" or "Virtual") claims (Court File No. 47). The opposing party filed a response to the aforementioned motions (Court File Nos. 44, 51, 60) and the moving party subsequently filed a reply (Court File Nos. 45, 56, 63). For the following reasons

, the Court will **DENY** Defendant's request for entry of default (Court File No. 41); **GRANT IN PART and DENY IN PART** Defendant's motion to strike the affidavit of Tom Sucher (Court File No. 59); **DENY** Defendant's motion for summary judgment on its declaratory judgment counterclaim (Court File No. 46); and **GRANT IN PART and DENY IN PART** Defendant's motion for summary judgment dismissing Plaintiff's claims (Court File No. 47).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

In 1996, Plaintiff Virtual started its business as a graphic design company that served carpet manufacturers in Dalton, Georgia (Court File No. 53 ("Sucher Aff."), ¶ 3). Virtual offers a number of services including scanning, photography, image setting, and room scene manipulation (Court File No. 49-45 ("Sucher Dep."), at 18).[1] Room scene manipulation involves the digital alteration of a photograph of a room so that a client's flooring product (e.g., tile, wood, or carpet) is virtually displayed in the room scene (Sucher Aff. ¶¶ 4-5). In 1997, Virtual and Beaulieu started doing business together (Court File No. 49-46 ("Stern Dep."), at 33; Sucher Dep. at 17-18; Sucher Aff. ¶ 11). Initially, Beaulieu hired Virtual to digitize Beaulieu's existing room scene library (Stern Dep. at 36; Sucher Dep. at 51-52; Sucher Aff. ¶ 11). However, as time went on, Beaulieu also began to use room scenes from Virtual's room scene library (Sucher Dep. at 55-61; Sucher Aff. ¶ 12). Beaulieu used the room scene images for both its displays and advertisements (*see* Stern Dep. at 34-35). The general process for purchasing and delivering room scenes involves the client contacting Virtual with an order and Virtual then delivering the photographs of the room scene images to the client (Court File No. 49-48 ("Clay Dep."), at 30-31, 69-70, 75).

Virtual's President, Thomas Sucher, contends Virtual offers three different options for its clients to purchase room scene images (Sucher Dep. at 24). Option 1 provides that a client can buy a room scene outright and obtain ownership of the copyright (Sucher Dep. at 24). Option 2 provides

---

[1] To minimize confusion, the Court will cite to the original page numbers in the deposition transcripts since the parties have only provided select pages from the transcripts as attachments to their briefs. For all other documents, however, the Court will cite to the court file number and use the page numbering associated with that particular court document.

that a client can purchase the exclusive rights to a room scene for one year (Sucher Dep. at 25). During that time period, no other client can use the room scene. The client does not obtain the copyright to the room scene, however, nor does the client have permission to manipulate the scene in any way (Sucher Dep. at 25). Finally, Option 3 provides that a client can have free non-exclusive access to a room scene for one year. The client, however, must pay for any manipulations, and they cannot manipulate the scene on their own (Sucher Dep. at 25). Sucher also explained Virtual's invoices contained Virtual's "Terms and Conditions," one provision of which reads as follows: "Virtual Studios will provide its Client with the unlimited use of all photographs for a period of one year from the day of completion and payment of services as stated below" (Court File No. 51-2). Beaulieu paid most, if not all, of its invoices to Virtual between 1999 to 2008 (Sucher Aff. ¶ 18). Though Sucher initially had difficulty remembering at his deposition whether he spoke to Beaulieu about these terms (*see* Sucher Dep. at 39-40), he later recalled having the first conversation about the one-year time limit "probably" around 2000 with Bruce Stern, Beaulieu's Director of Advertising, and Sam Ruble, Beaulieu's Vice President of Marketing (Sucher Dep. at 39, 40, 137).

Beaulieu, on the other hand, argues it was not made aware of the one-year limitation until 2008 when Virtual first notified Beaulieu of its copyright infringement allegations (Stern Dep. at 46-47, 91-92; Court File No. 49-44 ("Flavin Dep."), at 66; Court File No. 49-47 ("Jayne Dep."), at 43-44). Beaulieu also claims Virtual never presented it with a formal contract document defining the terms of their dealings (Stern Dep. at 38-39). Beaulieu contends the invoices went directly to its accounts payable office so, to the extent the invoices contained Virtual's "Terms and Conditions," those documents were not reviewed by or signed by anyone outside of accounts payable (Stern Dep. at 44). Beaulieu further contends this information was not delivered or included with the images

3

themselves.

After Virtual contacted Beaulieu in 2008 to inform Beaulieu that it was infringing Virtual's copyrights by impermissibly using Virtual's room scene images, the parties communicated for several months in an attempt to resolve the problem. In August 2008, Sucher emailed Bruce Stern regarding the alleged misuse of Virtual's room scene images (Court File No. 49-21; Court File No. 49-23). In his email, Sucher claimed Beaulieu had used several of Virtual's images for more than one year and had impermissibly digitally manipulated those images (Court File No. 49-21). Sucher subsequently engaged in negotiations, primarily by email and through in-person meetings, with Patricia Flavin, Beaulieu's former Senior Vice President of Marketing (Court File No. 24; Flavin Dep. at 37, 61-65, 67-72, 74-79, 80-83; Sucher Dep. at 197-99, 201-03, 209-30, 233-38).

The parties dispute the outcome of those communications. In describing her perceptions at the time, Flavin explains, "When Tom and I reached an understanding that we were moving forward in a business relationship together, I guess I assumed some of the existing images that were in Beaulieu's possession were okay to be used" (Flavin Dep. at 36). She claims she reached this assumption "[w]hen Tom stopped communicating," which would have been in 2009 (Flavin Dep. at 36). After being asked how she came to understand the business relationship was "moving forward," Flavin responded, "[b]ecause Tom and I had communication and meetings with each other for four or five months, and we got to what I believed to be a resolution to move forward" (Flavin Dep. at 37). Sucher, on the other hand, claims he never felt they reached an agreement (Sucher Dep. at 209, 233). In June 2009, Sucher sent Flavin an email indicating that he had not received any recent responses from Flavin and that if she failed to respond Virtual would have to take legal action against Beaulieu (Court File No. 51-5). In response, Flavin explained that they would have more

4

work coming to Virtual but Beaulieu would need Virtual to sign a release to drop its grievances (Court File No. 51-5). Sucher claims he never affirmatively responded to Flavin's request that he sign a release to "drop" Virtual's dispute with Beaulieu (Sucher Aff. ¶ 26). He also claims he never signed any sort of settlement or release agreement (Sucher Aff. ¶ 26).

### B. Procedural Background

On December 1, 2011, Virtual brought suit against Beaulieu in the Eastern District of Tennessee (Court File No. 1). Virtual's primary allegation is copyright infringement, brought under the Federal Copyright Act of 1976 as amended, 17 U.S.C. §§ 101 *et seq.* The remaining counts of the complaint--that is, breach of contract, unjust enrichment, and misrepresentation--are state law claims. Virtual seeks, *inter alia*, injunctive relief, monetary damages, and attorney's fees.

## II. REQUEST FOR ENTRY OF DEFAULT

Beaulieu contends an entry of default by the Clerk's Office is appropriate pursuant to Fed. R. Civ. P. 55(a) because Virtual failed to plead or otherwise defend against Beaulieu's counterclaim. As noted above, Virtual filed a complaint in this case on December 1, 2011, alleging claims of copyright infringement, breach of contract, unjust enrichment, and misrepresentation (Court File No. 1). Beaulieu filed an answer on February 21, 2012, responding to Virtual's complaint and also asserting a counterclaim in which it sought a "declaration of rights under [the] room scene agreements" (Court File No. 7). The case proceeded forward with the Court holding a scheduling conference on March 26, 2012 (Court File No. 13) and the parties engaging in discovery, which can be observed by the parties' various filings and requests in this case (Court File Nos. 22, 33, 39).

On February 14, 2013, Beaulieu filed an application for clerk's default (Court File No. 41).

5

Case 1:11-cv-00359   Document 83   Filed 05/31/13   Page 5 of 18   PageID #: 2932

Four days later, Virtual submitted an answer to Beaulieu's counterclaim (Court File No. 42). Beaulieu filed a response to its application for clerk's default requesting that the clerk still enter default against Virtual because Virtual's answer was untimely (Court File No. 44). Virtual submitted a reply arguing that Beaulieu's request should be denied because it did "otherwise defend" itself with respect Beaulieu's counterclaim (Court File No. 45).

Rule 55 of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Virtual admits that it "failed to plead" within the requisite time period. However, the Court concludes that Virtual's actions in this case satisfy the alternative requirement of "otherwise defend[ing]" itself with respect to Beaulieu's counterclaim. As can be observed from both the docket sheet and Virtual's averments in its response brief, Virtual has actively participated in this litigation from the outset and has engaged in full discovery. In fact, now pending before the Court are Beaulieu's motions for summary judgment, one of which directly responds to the evidence offered by Virtual with respect to Beaulieu's counterclaim. While the Court does not take lightly Virtual's failure to file its answer, the Court nonetheless concludes Beaulieu has not been prejudiced by Virtual's failure to comply with the Federal Rules. Accordingly, the Court **DENIES** Beaulieu's request for entry of default (Court File No. 41).

### III. MOTION TO STRIKE SUCHER'S AFFIDAVIT

Beaulieu moves for the Court to strike the affidavit of Thomas Sucher, Virtual's President. Beaulieu contends the affidavit, which was filed in support of Virtual's response to Beaulieu's

6

motions for summary judgment, merely serves as an attempt to "erase his and other Virtual witnesses' damaging deposition testimony" (Court File No. 59 at 2). Beaulieu further argues "[t]his eleventh-hour, contradictory affidavit testimony is barred by law and must be stricken from the record" (*id.*). At a minimum, Beaulieu requests that the Court strike paragraphs 13-15, 27-30, and 34 of the affidavit. In response, Virtual contends the information offered by Sucher reiterates and expands upon information already in the record but does not contradict any evidence in the record. Thus, Virtual contends Sucher's affidavit should not be stricken.

As a general rule, a party cannot attempt to avoid summary judgment "by simply filing an affidavit that directly contradicts that party's previous testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006). On the other hand, filing an affidavit for the first time in support of a summary judgment motion can be permissible to fill in gaps, such as in the context of a party who claims he "was not directly questioned about an issue" at his deposition. *Id.*

Most of Sucher's averments in his affidavit raise few, if any, red flags. For example, in the affidavit he reiterates and clarifies some of the background information pertaining to Virtual's business and its relationship with Beaulieu. The Court will, however, briefly address the paragraphs that Beaulieu has specifically requested the Court strike. The first set of paragraphs Beaulieu seeks to strike pertains to Beaulieu's knowledge of the room scene options and Virtual's Terms and Conditions. Those paragraphs read:

> 13. Around this same time, I explained all three of Virtual's room scene options to Beaulieu employees, including Tony Godfrey, Sam Ruble, Bruce Sterns, and Kate Marsalis.
> 14. Beaulieu chose to obtain room scenes from Virtual only under Option 3.
> 15. Starting around 1999 or 2000, Virtual began providing room scene images to Beaulieu under Option 3.

(Court File No. 53). Some of this information probably would supplement Sucher's prior testimony

given that Sucher even admitted in his deposition that he thought he probably spoke to Sterns and Ruble around 2000 about Virtual's terms. At the same time, these paragraphs also present new information--that is, he identifies two new people who he allegedly spoke to and he provides additional information about the room scene options--that was not previously offered as evidence and could potentially conflict with other evidence in the record. Because the Court concludes a genuine issue of material fact exists even without regard to these facts, the Court need not determine whether these paragraphs must be stricken. The Court simply will not rely upon these facts for purposes of this motion. Similarly, with respect to paragraphs 27 to 30 the Court will refrain from considering these facts in deciding Beaulieu's motions. These paragraphs provide additional information about whether Virtual's photographers are "employees," which would aid Virtual in showing it had ownership of the copyrights at issue. However, again, because the Court concludes a genuine issue of material fact exists on the facts already in the record, the Court need not make a determination on those paragraphs.

The last paragraph, however, will be stricken. Paragraph 34 reads: "Greg Wright did not leave Virtual Studio's employment until 2008." As noted by Beaulieu, this paragraph directly contradicts information in the record and Virtual fails to adequately offer any evidence to the contrary.

In sum, the Court will **GRANT IN PART AND DENY IN PART** Beaulieu's motion. Specifically, the Court will consider the paragraphs for which no specific objection was raised. The Court will not make a determination with regard to paragraphs 13 to 15 and 27 to 30 given that the Court did not consider those paragraphs in reaching its decision in this memorandum and order. Finally, the Court will strike paragraph 34 from the record because it directly contradicts other

8

evidence that is before the Court. Whether that information would be admissible at trial, however, is a question not before the Court at this time.

IV.     MOTIONS FOR SUMMARY JUDGMENT

    A.     **Standard of Review**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

9

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**B.     Discussion**

Beaulieu has filed two motions for summary judgment. The first motion pertains to Beaulieu's declaratory judgment counterclaim. Beaulieu argues it is entitled to summary judgment on its counterclaim because Virtual and Beaulieu reached an accord and satisfaction, which Virtual breached by filing this lawsuit. Alternatively, in Beaulieu's second motion, Beaulieu seeks dismissal of all of Virtual's claims. In particular, Beaulieu contends Virtual's copyright claims all fail as a matter of law; Virtual's state law claims are all preempted by the Copyright Act; and Virtual's state law misrepresentation claim must be dismissed because it was not pleaded with specificity. The Court will address each issue in turn.

**1. Defendant's Counterclaim**

First, Beaulieu argues summary judgment should be granted in its favor based on the doctrine of accord and satisfaction. Beaulieu contends the agreement reached between Virtual and Beaulieu in 2009 constituted an accord. Beaulieu claims Virtual agreed not to bring a lawsuit against Beaulieu for allegedly misusing Virtual's room scene images. In return or in satisfaction of the agreement, Beaulieu agreed to bring Virtual room scene business and to consider taking advantage of other services offered by Virtual. Despite entering into this agreement, Beaulieu contends Virtual's President, Thomas Sucher, breached the agreement by filing suit against Beaulieu in 2011. Virtual,

on the other hand, argues no such agreement was reached between the parties. Therefore, there could not have been an accord and satisfaction.

Here, Beaulieu asserts accord and satisfaction as both an affirmative defense in its answer to Virtual's complaint and raises the issue in its counterclaim for declaratory judgment. Beaulieu, as the party that has pleaded and relied upon the doctrine of accord and satisfaction, bears the burden of establishing its applicability. *Quality Care Nursing Servs., Inc. v. Coleman*, 728 S.W.2d 1, 5 (Tenn. 1987) (citing *Inland Equipment Co. v. Tennessee Foundry & Machine Co.*, 241 S.W.2d 564, 565 (1951)). "An accord and satisfaction is a method of discharging a contract or settling a cause of action arising either from contract or tort by substituting for such contract or cause of action an agreement for the satisfaction thereof and the execution of such substituted agreement." *Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 75 (6th Cir. 1985) (citing *Union Indemnity Co. v. United States for the use of Page Eng'g Co.*, 74 F.2d 645, 646-47 (6th Cir. 1935)). While the "accord" is the "agreement to substitute the new obligation for the underlying cause of action or contract," the "satisfaction" is viewed as the "execution of the agreement." *Id.* (quoting *Tullahoma Concrete Pipe Co. v. Pyramid Concrete Pipe Co.*, 330 S.W.2d 578, 582 (1960)). In discussing factors a court should consider when determining whether an accord and satisfaction has been established, the Tennessee Supreme Court noted the following:

> [the party asserting there was an accord and satisfaction] has the burden of proving the material allegations of his plea, an accord or new agreement, inclusion of the item or items of indebtedness in the action or suit, satisfaction by performance of the agreement or the agreement itself, that the payment was offered on the condition that, if accepted, it would be in full settlement of the demand, and that the creditor understood the conditions of the tender, or the circumstances under which it was made were such that he was bound to understand, an acceptance by plaintiff in full satisfaction of his demand.

*Quality Care Nursing Servs., Inc.*, 728 S.W.2d at 5 (quoting *Inland Equipment Co. v. Tennessee*

*Foundry & Machine Co.*, 241 S.W.2d 564, 565–66 (1951)).

Viewing the facts in the light most favorable to Virtual, the Court concludes there is a genuine issue of material fact as to whether there was an accord and satisfaction in this case. Beaulieu contends the parties settled the dispute during the second in-person meeting in early 2009 between Virtual President Thomas Sucher and Beaulieu's Senior Vice President of Marketing Patricia Flavin. According to Beaulieu, at the meeting, Virtual agreed it would not sue Beaulieu for copyright infringement if, in return, Beaulieu would continue to use Virtual's room scene services and perhaps consider expanding its business with Virtual. Yet, based on the divergent accounts of Flavin and Sucher there is a genuine dispute over whether there was a meeting of the minds regarding the agreement or accord. There was no written agreement detailing the alleged promises made by both sides. Instead, there is merely conflicting testimony on the part of Flavin and Sucher, with Flavin stating during her deposition that she believed a resolution had been reached and Sucher contending there was no such agreement. Moreover, the record shows that in June 2009, Sucher reached out to Flavin to verify whether an agreement could be reached. He told Flavin in his email that he may have to bring suit against Beaulieu if he did not receive a response. Flavin explained Beaulieu was attempting to get Virtual more business but, in the interim, requested a release that Virtual would drop its grievances against Beaulieu. According to Virtual, Sucher did not affirmatively respond to this request nor did he sign a release or settlement agreement.

Thus, even though Beaulieu argues the parties went at least two years without incident following the negotiations between Sucher and Flavin, the threshold question is whether there was an underlying agreement by which the parties were bound. To sift through the conflicting testimony in the record on this matter would require that the Court make a credibility determination, which is

12

generally within the province of the jury. Moreover, there appears to be a genuine dispute over whether the parties actually entered into an agreement. This becomes even more apparent viewing the facts in the light most favorable to Virtual, even without regard to Beaulieu's other arguments-- i.e. pertaining to whether there was satisfaction or a breach, or whether Beaulieu has incurred damages. Accordingly, the Court must **DENY** Beaulieu's motion for summary judgment on its declaratory judgment counterclaim.

### 2. Motion for Summary Judgment Dismissing Plaintiff's Claims

#### a. Copyright Act

Beaulieu argues Virtual's federal Copyright Act claim, 17 U.S.C. §§ 101 *et seq.*, should be dismissed as a matter of law. First, Beaulieu argues Virtual failed to establish validity and ownership of its asserted copyrights. Second, Beaulieu contends even if the copyrights are valid, Beaulieu never agreed to a one-year license term. Third, Beaulieu contends even if it was bound to the license terms, Virtual failed to establish Beaulieu breached any of those terms. Each issue will be discussed below.[2]

#### i. Validity and Ownership of Copyright

Beaulieu argues Virtual failed to come forward with facts establishing validity and ownership of the copyrights at issue. Copyright infringement can be established if a person or entity "violates any of the exclusive rights of the copyright owner." *Bridgeport Music, Inc. v. WM Music*

---

[2] Beaulieu also raises several issues pertaining to damages. For instance, Beaulieu argues Virtual is not entitled to statutory damages, enhanced damages, or attorney's fees because their registrations were made too late and that Virtual is not entitled to statutory damages because Beaulieu's conduct constituted "innocent" infringement. Beaulieu also argues the statute of limitations may prevent recovery depending upon the type of damages sought. Because all of these arguments go toward damages and none of these issues is dispositive of the claims now before the Court, the Court will not decide these issues at this time.

13

*Corp.*, 508 F.3d 394, 398 (6th Cir. 2007) (citing 17 U.S.C. § 501(a)). There are two main elements to a copyright infringement claim: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Id.* (quoting *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir.2004)). At issue in this case is the first element. A certificate of copyright registration carries a presumption of validity of both the copyright and the facts contained in the registration. *See Sem-Torq, Inc. v. KMart Corp.*, 936 F.2d 851, 853-54 (6th Cir. 1991); *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).

Under the Copyright Act, the ownership of a copyright "vests initially in the author or authors of the work." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 201(a)). Generally speaking, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id.* (citing 17 U.S.C. § 102). One exception to this rule, however, is the "works for hire" exception. *Id.* "If the work is for hire, 'the employer or other person for whom the work was prepared is considered the author' and owns the copyright, unless there is a written agreement to the contrary." *Id.* (citing 17 U.S.C. § 201(b)). Thus, under the Copyright Act, "work prepared by an employee within the scope of his or her employment" can be considered "work for hire." *Id.* at 738 (quoting 17 U.S.C. § 101). Determining whether an individual is an "employee" should be "understood through application of the general common law of agency." *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).

The primary issue here is whether the photographers who photographed Virtual's room scene images were "employees," such that under the "work for hire" exception Virtual would be considered the author and owner of the copyrights. Thomas Sucher, Virtual's president, testified

14

under oath during his deposition that the photographers were employees of Virtual. Specifically, Sucher testified the photographers were all full-time employees of Virtual and that Virtual did not have to use freelance photographers because Virtual already had photographers on staff (Sucher Dep. at 51). Beaulieu contests Virtual's averments that all of its photographers were "employees," noting, *inter alia*, that the dates certain employees were alleged to have worked for Beaulieu and the number of photographs alleged to have been taken by those individuals did not align with other facts in the record, including facts contained in the copyright registrations. Because Beaulieu's arguments highlight the existence of a factual dispute that pertains to a material issue--that is, whether Virtual's photographers were actually "employees" under the "work for hire" exception--the Court will leave this factual determination to the jury.[3] Accordingly, for purposes of summary judgment, the Court determines a genuine issue of material fact exists with respect to the ownership and validity of the copyrights and the Court will therefore not dismiss the claim at this time.

### ii. Purchase of One-Year License

Beaulieu argues Virtual's claim should be dismissed because, even if the copyrights were valid, Beaulieu never agreed to a one-year license term. Specifically, Beaulieu claims it did not learn of the alleged one-year limitation period until 2008. Beaulieu also claims it never signed a formal contract agreeing to such terms nor did anyone with any decisionmaking power review or agree to such terms. A factual dispute arises, however, because Sucher claims he remembers talking to at least two Beaulieu employees--Stern and Ruble--around 2000 about the one-year time limit. Moreover,

---

[3] The Court also will not dismiss Virtual's claim at this stage with respect to the validity of the copyrights given that at least six of the eleven copyrights are entitled to a presumption of validity. With that said, with respect to all of the copyrights, especially the older ones, Beaulieu has identified a number of inconsistencies that may make it difficult for Virtual to prevail at trial on the issues of ownership and validity.

15

Sucher claims information about the one-year time limit was included on every invoice and Beaulieu made most, if not all, of their payments on those invoices. While the absence of any formal agreement acknowledging these terms certainly weighs in favor of Beaulieu, the Court observes Virtual has brought forth sufficient facts for the Court to not dismiss Virtual's claim at this time. Thus, the Court will not dismiss Virtual's claim on this grounds.

### iii. Breach of License Agreement

Beaulieu next argues that, even if the one-year license applied, it was not in breach of the license. First, Beaulieu argues the "Terms and Conditions" allow for "unlimited use" under the one-year limitation period. Second, Beaulieu argues Virtual has failed to offer any evidence showing Beaulieu acted outside of any one-year period. Virtual disputes both of these contentions.

Both of these issues turn on the facts of the case. Virtual admits that the term "unlimited use" was not defined in the "Terms and Conditions" and it argues the phrase was not in reference to the language in any particular statute. Yet, even just considering the plain language of the paragraph in the "Terms and Conditions," nothing in the provision expressly prohibits Beaulieu from manipulating the images during the relevant one-year period. Of course, under the three options for purchasing or using Virtual's room scene images, additional limitations are imposed. The record presently does not indicate whether Beaulieu ever specifically agreed to be bound by a particular option. Relying upon just the language of the "Terms and Conditions" alone, however, it does not appear Beaulieu was restricted from manipulating the images.

On the other hand, a genuine issue of material fact clearly exists with respect to whether Virtual acted outside of the one-year time limitation. Although Beaulieu argues Virtual has offered no support for this claim, Virtual offers two examples to establish Beaulieu acted outside of any

16

applicable one-year time period. Relying on Beaulieu's spreadsheet of purchase information and its own investigation, Virtual notes that a room scene image purchased in 2006 was being used to advertise products in a retail store in 2011. Virtual offers another example where a room scene was purchased in 2004, but the scene was still being displayed on Beaulieu's website in 2008 and 2009.

Taking all of this into account, the Court concludes a genuine issue of material fact does remain with respect to whether Beaulieu acted within the one-year time limit. With that said, from the record presently before the Court, a reasonable factfinder would be unlikely to conclude Beaulieu's actual use or "manipulation" of the images was improper if based solely upon the language in the "Terms and Conditions."

### b. Preempted State Law Claims

Beaulieu argues Virtual's state law claims must be dismissed because they are preempted by the Copyright Act. Section 301 of the Copyright Act reads as follows:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as defined by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright ... are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). A state law claim can be preempted under Section 301 if the moving party can show the work at issue "come[s] within the scope of the 'subject matter of copyright'" and the right the plaintiff is relying upon under state law to bring its claim is "equivalent to any of the exclusive rights within the scope of federal copyright protection." *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004). Beaulieu contends all of Virtual's state law claims satisfy the requirements for preemption.

Virtual does not dispute Beaulieu's averments. In fact, Virtual concedes in its response brief

17

that the state law claims can be dismissed.⁴ Accordingly, the Court will dismiss Virtual's state law claims in this case.⁵

## V. CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendant's request for entry of default (Court File No. 41); **GRANT IN PART and DENY IN PART** Defendant's motion to strike the affidavit of Tom Sucher (Court File No. 59); **DENY** Defendant's motion for summary judgment on its declaratory judgment counterclaim (Court File No. 46); and **GRANT IN PART and DENY IN PART** Defendant's motion for summary judgment dismissing Plaintiff's claims (Court File No. 47). Plaintiff's state law claims will be dismissed. All other claims will proceed to trial.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

⁴ Specifically, Virtual admits in a footnote: "The Court should note that the omission of any discussion about Virtual's common law claims is intentional. Virtual has chosen to focus solely upon its cause of action under federal copyright law, and will not contest Beaulieu's motion as it pertains to Virtual's other alternative claims" (Court File No. 51 at 23 n.76).

⁵ Because Virtual's state law claims are preempted by federal law, the Court need not consider Beaulieu's alternative argument that Virtual's state law misrepresentation claim must be dismissed due to Virtual's failure to plead with specificity.

18