UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| VIRTUAL STUDIOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11-CV-359 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| BEAULIEU GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M

Plaintiff Virtual Studios, Inc. ("Plaintiff" or "Virtual") alleged Defendant Beaulieu Group, LLC ("Defendant" or "Beaulieu") violated the United States Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* Beaulieu also filed a counterclaim against Virtual and sought, *inter alia*, a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 (and damages for breach of contract under state law). On June 13, 2013, a jury found in favor of Virtual and against Beaulieu.

Now at issue before the Court is Beaulieu's motion for judgment as a matter of law (Court File No. 153) and Virtual's request for a permanent injunction against Beaulieu. With respect to the motion for judgment as a matter of law, the Court will **DENY** Beaulieu's motion (Court File No. 153).

With respect to the permanent injunction, prior to the trial, the parties submitted proposed findings of fact and conclusions of law, some of which dealt with the injunction. Subsequent to the trial, the parties supplemented these filings to account for the jury verdict and submitted additional briefing on the injunction issue (Court File Nos. 136, 141, 142, 146, 150). The Court held a hearing regarding the permanent injunction on August 15, 2013 at which the parties provided argument and evidence.

For the following reasons, the Court will **GRANT** Virtual's request for an injunction. The

Court will issue an injunction against Beaulieu prohibiting future infringement. The Court will not, however, require Beaulieu to obtain and impound possibly infringing materials from its customers. The Court will require Beaulieu to submit a letter to customers Beaulieu reasonably believes purchased or received any product containing the infringing images identified by the jury, notifying these customers of the jury's verdict and the possibility they may be in possession of infringing materials. The letter should attach copies of the images found by the jury to be infringing and inform the customer the use of any such image should be discontinued. The injunction will list those customers Beaulieu has already identified as likely recipients of these materials. If, in the course of complying with the Court's order Beaulieu identifies other customers to whom these images were likely sent, Beaulieu must also send such a letter to the newly identified customer.

The Court must also decide whether to award attorney's fees to Virtual. Considering the circumstances of this case, the Court in its discretion will **DENY** Virtual's request for attorney's fees (Court File No. 145).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court previously discussed the facts in this case in its memorandum and order granting in part and denying in part Beaulieu's motion for summary judgment (Court File Nos. 83, 84). On December 1, 2011, Virtual brought suit against Beaulieu in the Eastern District of Tennessee (Court File No. 1). Virtual's primary allegation was copyright infringement, brought under the U.S. Copyright Act of 1976 as amended, 17 U.S.C. §§ 101 *et seq.* The remaining counts of the complaint–that is, breach of contract, unjust enrichment, and misrepresentation–were state law claims. The Court, however, dismissed Virtual's state law claims when it granted in part and denied in part Beaulieu's motion for summary judgment. Thus, the only claim that went to trial was

Virtual's federal Copyright Act claim.

On February 21, 2012, Beaulieu filed a counterclaim against Virtual. Beaulieu sought a declaratory judgment from this Court that (1) Beaulieu has not breached any agreement pertaining to room scene images; (2) Beaulieu has a license to use the images; and (3) Beaulieu's continued use of the images purchased from Beaulieu will not infringe upon any right held by Virtual or breach any agreement. Beaulieu sought compensatory, consequential, and punitive damages, as well as attorney's fees and costs.

After trial on these claims, the jury found in favor of Virtual. The verdict form contained a number of interrogatories on both Virtual's copyright claim and Beaulieu's counterclaim. With respect to Virtual's copyright claim, the jury found the following:

1. Virtual proved it had valid copyrights in the room scene images.
2. Virtual proved the room scene images were original.
3. Virtual was the employer of the photographers that took the room scene images.
4. Virtual proved its certificates of registration were valid.
5. Virtual proved it had a one year license with Beaulieu permitting use of the room scene images for one year.
6. Virtual proved Beaulieu used the room scene photographs beyond the one year permitted by the license.
7. Virtual proved it had a license with Beaulieu that prohibited Beaulieu from manipulating or allowing others to manipulate the room scene images after one year.
8. Virtual proved Beaulieu manipulated or allowed others to manipulate the images after one year.
9. Virtual proved that Beaulieu induced, caused, or intentionally contributed to a third party infringing Virtual's room scene images.
10. Virtual proved Beaulieu took Virtual's work directly or indirectly, intentionally or unintentionally.
11. **Accordingly, the jury found Virtual proved its claim of copyright infringement by a preponderance of the evidence**.

With respect to Beaulieu's affirmative defenses, the jury found the following:

1. Beaulieu did not prove Virtual abandoned its copyright rights in the room

3

scene images.

2.     Beaulieu did not prove Virtual granted Beaulieu an express or implied license beyond one year.

3.     Beaulieu did not prove Virtual granted an oral license to use the room scene images for more than one year.

4.     Beaulieu did not prove Virtual granted it an express or implied license to manipulate the room scene images for more than one year.

5.     Beaulieu did not prove it had an unlimited express or implied license to use the room scene images for more than one year.

6.     Beaulieu did not prove it had an accord and satisfaction with Virtual that resolved the dispute concerning Beaulieu's use of the room scene images.

7.     **Accordingly, the jury found Beaulieu did not prove its affirmative defenses to Virtual's infringement claim**.

With respect to Beaulieu's counterclaim, the jury found the following:

1.     Beaulieu did not prove it had an accord and satisfaction with Virtual that resolved the dispute concerning Beaulieu's use of the room scene images.

2.     Beaulieu did not prove Virtual breached that accord and satisfaction.

3.     **Accordingly, the jury found Beaulieu did not prove its counterclaim against Virtual.**

After the liability verdict, the trial moved to the damages phase. The Court limited Virtual's damages showing to statutory damages as a result of discovery violations. The jury found thirteen infringing images during the relevant time period and also found that Beaulieu's infringement was willful. The jury then imposed the maximum statutory damage amount, $150,000, for each infringing image for a total award of $1,950,000.00.

Subsequent to the jury's decision, the Court held a hearing regarding Virtual's request for a permanent injunction. At the hearing, Virtual offered a number of pictures of Beaulieu displays in its customer's stores still being used post-judgment. These displays, according to Virtual's president, contain Virtual's images. Beaulieu offered testimony of Michael McAllister, Beaulieu's Direct of Marketing. The Court must now decide whether to grant judgment as a matter of law in Beaulieu's favor, to remit the jury's award, or to grant a permanent injunction against Beaulieu

4

preventing Beaulieu from committing future infringement of Virtual's copyright.

## II.   DISCUSSION

### A. Judgment as a Matter of Law

#### 1. Legal Standard

Rule 50 of the Federal Rules of Civil Procedure states "if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [the] issue, the court may: (a) resolve the issue against the party; and (b) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on [the] issue." Fed. R. Civ. P. 50(a)(1).  If the Court denies the Rule 50(a) motion and submits the action to the jury, the party may renew the motion under Rule 50(b) after the entry of judgment.  In considering the renewed motion, the "'[C]ourt is to review all evidence and draw all reasonable inferences in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence.'" *Jones v. Nissan North America, Inc.*, 438 F. App'x 388, 396 (6th Cir. 2011) (quoting *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 392 (6th Cir. 2008)). Therefore, in order for Beaulieu to succeed, it  must show "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  *Id.* (quoting Fed. R. Civ. P. 50(a)(1)).  "In other words, the decision to grant judgment as a matter of law . . . is appropriate whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Burley v. Gagacki*, 729 F.3d 610, 621 (6th Cir. 2013) (internal quotation marks and citation omitted).

#### 2. Application

Beaulieu's motion for judgment as a matter of law relies essentially on one theory: The jury only awarded statutory damages, and it improperly based its theory on images that Beaulieu first used before registration. Under the Copyright Act, an infringer is liable for either the copyright owner's actual damages and any additional profits of the infringer, or statutory damages. 17 U.S.C. § 504(a). Under the Copyright Act, 17 U.S.C. § 504(c), a copyright owner may

> elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.[1]

17 U.S.C. § 504(c)(1). However, § 412 of the Copyright Act "states that there will be no award for statutory damages or attorney's fees if, 'any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.'" *Masck v. Sports Illustrated*, No. 13–10226, 2013 WL 2626853, at *5 (E.D. Mich. June 11, 2013) (quoting 17 U.S.C. § 412(2)).

Beaulieu's argument is relatively simple. The jury verdict form for the damages phase first requested that the jurors identify the trial exhibit number of each infringed image on an attached sheet. On that sheet, the jury dutifully listed seventy-four different images it found to be infringing as well as the corresponding exhibit numbers. The parties agree that sixty-one[2] of these images were from so-called "room scene" displays in various retail stores and thirteen of the images were used

---

[1] The Act also provides for a higher range of statutory damages where a defendant has willfully infringed the plaintiff's copyright. 17 U.S.C. § 504(c)(2). The jury found willful infringement in this case and awarded statutory damages for each infringing image in the amount of $150,000, the highest amount allowed by the Act.

[2] Virtual stated that sixty of these were room-scene images but this was presumably a simple error.

6

on Beaulieu's website. The second question on the jury form asked whether Virtual had proved willful infringement. The jury concluded that Beaulieu had willfully infringed Virtual's copyright. The third question asked whether Beaulieu had proved that it innocently infringed Virtual's copyright which, consistent with the second answer, the jury answered in the negative.

The crux of Beaulieu's motion concerns the next question. Question four asked the jury to indicate the number of works Beaulieu infringed within the relevant time period. The jury answered thirteen. The jury then assessed the maximum $150,000 in statutory damages for each of these thirteen works for a total of $1,950,000.00.

Beaulieu argues the copyright registration for the thirteen images found on Beaulieu's website post-dated the first infringement of those images by Beaulieu.[3] Therefore, Beaulieu reasons, *if* the jury based its statutory damages award on those images, it did so erroneously. Beaulieu points to a number of characteristics of the verdict form that demonstrate the jury did base its award on those images: The jury "clearly drew a dichotomy" between the "display" images and the website images. The numbers themselves line up: thirteen in the relevant time period and thirteen on Beaulieu's website. Moreover, Beaulieu's damages expert used a chart discussing the thirteen website images, which the jury's verdict form mirrored; the jury listed the Bates numbers of those images in the same order they appeared on the chart (Court File No. 154-2). Beaulieu thus argues "there can be no reasonable dispute that the 13 images found by the jury to warrant statutory damages are the website images listed in the far right column of the special verdict form."

The Court disagrees. The Court instructed the jury as follows:

The Copyright Act requires that a copyright owner timely register its works with the

_____

[3] In fact, Beaulieu argues two of the images have never been registered.

7

Copyright Office in order to be able to collect statutory damages.
Here, Virtual Studios must have registered its room scene images prior to Beaulieu's first infringement of those images, or within three months of the first publication of the work, in order to be eligible to collect statutory damages. The effective date of a copyright registration is identified on the face of the registration.
If and only if Virtual Studios proved by a preponderance of the evidence that its registration was timely should you go on to consider statutory damages.

(Court File No. 131, pp. 883-84). The Court presumes the jury followed its instruction. *United States v. Cunningham*, 679 F.3d 355, 383 (6th Cir. 2012) ("'[J]uries are presumed to follow their instructions' . . . .") (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

Beaulieu offers little more than speculation to impugn the jury's verdict. The number thirteen must not be a coincidence; the order in which the jury listed the images indicates its reliance on an exhibit; maybe the jury was confused by the dates the screenshots were printed. But this is just that: speculation. Beaulieu argues the jury copied the Bates-numbered images from certain exhibits, but even if this is true that does not necessarily indicate the thirteen images the jury concluded were willfully infringed within the relevant time period correspond to the website images. And contrary to Beaulieu's argument, Virtual need not "offer[] a plausible alternative explanation for the pointed and compelling correlation between the 13 website images and the 13 statutory damage awards." It is *Beaulieu*'s burden to demonstrate that "there is no legally sufficient evidentiary basis for a reasonable jury to find for [Virtual] on th[is] issue." *Jones*, 438 F. App'x at 396. Beaulieu implores the Court to search for patterns on the jury's verdict form and pick the pattern that indicates the jury ignored the Court's instructions. This the Court will not do. Given the presumption that juries follow their instructions, the Court will not overturn the jury's verdict on the basis of Beaulieu's conjecture about the jury's intent. Accordingly, the Court will **DENY** Beaulieu's motion for judgment as a matter of law.

8

**B. Remittitur**

**1. Legal Standard**

Beaulieu also moves, in the alternative, for remittitur of the jury's award. Beaulieu argues the award in this case violates due process under the Supreme Court's rulings in *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003). The Court has indicated that due process limits punitive damages awards that are "grossly excessive" and that courts should consider "(1) 'the degree of reprehensibility of the' defendant's conduct; (2) 'the disparity between the harm or potential harm suffered by [the plaintiff] and [the] punitive damages award'; and (3) 'the difference between this remedy and the civil penalties authorized or imposed in comparable cases.'" *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 587 (6th Cir. 2007) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). In *Campbell*, the Court suggested ratios between compensatory and punitive damages that were greater than one digit (i.e., ten times compensatory damages or more) might be grossly excessive. *Campbell*, 538 U.S. at 425; *Zomba*, 491 F.3d at 587.

Beaulieu admits that the extent to which *Campbell*'s punitive-damages analysis is applicable to statutory damages is unclear. However, the Sixth Circuit has in fact provided guidance on this issue. In *Zomba*, the court acknowledged "the uncertainty regarding the application of *Gore* and *Campbell* to statutory-damage awards," but noted that due process does still apply to such awards under *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67 (1919). *Zomba*, 491 F.3d at 587. "In such cases, [courts] inquire whether the awards are 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" *Id.* (quoting *Williams*, 251 U.S. at 67). The Sixth Circuit describes this review as "extraordinarily deferential." *Id.*

**2. Application**

9

Beaulieu contends the distinctions between *Campbell*'s and *Williams*'s analyses are immaterial in this case because under either standard the award is excessive. Beaulieu points to the testimony of Virtual's president who indicated he had been willing to sell each room scene to Beaulieu for $750. Beaulieu calculates the actual damages then to be $9,750: $750 for each of the thirteen images. Beaulieu argues this disparity–statutory damages being two-hundred times the actual damage–is so excessive as to implicate due process.

The Court is unconvinced. As an initial matter, the Court notes Virtual was not given the opportunity to present evidence of actual damages. Beaulieu's calculation would be an unfair basis for considering the constitutionality of the jury's verdict given this fact. But even were the Court to take Beaulieu's word for it, the statutory damage amount is simply not so excessive as to implicate due process. *Williams* itself involved a 113:1 ratio. *Zomba*, 491 F.3d at 588. The First Circuit, relying in part on *Zomba* and also applying *Williams*, recently confronted this issue and intimated that a $675,000 verdict on an estimated actual injury of $450, or 1,500 times actual injury, was not unconstitutional. *Sony BMG Music Entertainment v. Tenenbaum*, 719 F.3d 67, 71 (1st Cir. 2013). The Eighth Circuit recently concluded an award of $9,250 per downloaded song was not excessive under the *Williams* standard. *Capitol Records, Inv. v. Thomas-Rasset*, 692 F.3d 899, 907-08 (8th Cir. 2012).

Even more convincing, both *Tenenbaum* and *Thomas-Rasset* involved *individuals* who downloaded copyrighted works illegally. In this case, however, the defendant is one of the largest carpet manufacturers in the world and evidence was introduced in the damages phase of Beaulieu's hundreds of millions of dollars in annual sales revenue. Given Beaulieu's enormous resources, the Court simply finds it difficult to describe the jury's verdict in this case as severe or oppressive. This

is particularly true given the nature of the Copyright Act's statutory damage provision, which is intended to discourage copyright violations, a factor that has been taken into account by courts when considering the constitutionality of such an award. *See Tenenbaum*, 719 F.3d at 71 ("Statutory damages under the Copyright Act are designed not only to provide 'reparation for injury,' but also 'to discourage wrongful conduct.'") (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc*., 344 U.S. 228, 233, (1952)); *Thomas-Rasset*, 692 F.3d at 910 ("[S]tatutory damages are 'designed to discourage wrongful conduct,' in addition to providing 'restitution of profit and reparation for injury.'") (quoting *F.W. Woolworth*).

Accordingly, the Court does not find the jury's award to be severe or oppressive in this context and will **DENY** Beaulieu's motion for remittitur.

### C. Permanent Injunction

#### 1. Copyright

Pursuant to 17 U.S.C. § 502, this Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "It is uncontroversial that a 'showing of past infringement and a substantial likelihood of future infringement' justifies issuance of a permanent injunction." *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 492 (6th Cir. 2007) (quoting Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.06 [B] (2007)); *see also Jobete Music Co., Inc. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d 1077, 1092 (S.D. Ohio 2003) ("While the issuance of an injunction is in the discretion of the court, courts have traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists.") (internal quotation marks and citations omitted). "Not only is the issuance of a permanent injunction justified '[w]hen a copyright plaintiff

11

has established a threat of continuing infringement, he is *entitled* to an injunction.'" *Bridgeport Music, Inc.*, 507 F.3d at 492 (emphasis in original) (quoting *Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C. Cir. 1990)). "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise amount to a forced license to use the creative work of another." *Id.* (quoting *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 967-68 (8th Cir. 2005)) (internal quotation marks omitted).

Considering Virtual has already established infringement, the Court need only determine whether a continuing threat of infringement exists. One way of demonstrating a threat of future infringement is showing a defendant repeatedly ignored asserted rights. *See Superhype Publ'g, Inc. v. Vasiliou*, 838 F. Supp. 1220, 1226 (S.D. Ohio 1993); *see also Broadcast Music, Inc. v. Marler*, 2009 WL 3785878, at *6 (E.D. Tenn. Nov. 12, 2009) (citing *Superhype*, 838 F. Supp. at 1226). At trial, Virtual offered evidence Beaulieu continued to use its images, including on its website, after it had notice Virtual disputed Beaulieu's use of its images. Moreover, many of Virtual's images were used on displays still in circulation.[4] Thus there is a possibility such a display could make it back into the hands of Beaulieu, or Beaulieu could direct the display to one of its customers. Given the low burden that an injunction precluding future infringement places on Beaulieu, this risk counsels in favor of such an injunction.

Accordingly, the Court will **GRANT** an injunction to Virtual. Considering the determination

---

[4] Beaulieu argues vigorously Virtual has not demonstrated the images introduced at the injunction hearing are the same images the jury found to be infringing. Beaulieu contends its Seventh Amendment right to a jury trial would be violated were the Court to grant an injunction on the basis of these images. However, the Court relies not on the images found in stores in 2013, but on those images used after Virtual asserted its rights in 2008. Moreover, the Court must find a *risk* of future infringement. The Court need not find continued infringement is actually occurring.

by the jury that past infringement occurred, and Beaulieu's continued infringement following Virtual's assertion of its rights and even after the instant action was filed, Virtual has met its burden to obtain an injunction against future infringement.

### 2. General Equitable Principles

Beaulieu argues the Supreme Court rejected the above standard in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Beaulieu acknowledges the Sixth Circuit has continued to apply the above standard following *eBay*, *see Bridgeport Music*, 507 F.3d at 492, but maintains the Sixth Circuit does so erroneously and perhaps unintentionally. The Court cannot, however, explain away circuit precedent based on speculative factors offered by Beaulieu, such as the length of the opinion and what the panel *may* have intended or overlooked. Nevertheless, many courts do look to broader equitable injunction principles when considering whether to grant an injunction in copyright cases, given the Supreme Court's indication such consideration is appropriate. *See eBay*, 547 U.S. at 392 (stating the approach adopted is "consistent with our treatment of injunctions under the Copyright Act"). The issue need not be definitively decided here because the Court concludes Virtual has established its entitlement to an injunction under either analysis.

The Supreme Court identified "well-established principles of equity" in *eBay* that a court should consider in issuing a permanent injunction: "(1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391.

13

With respect to the first factor, intellectual property is unique and infringement of intellectual property rights creates a unique harm. "[A] copyright holder possesses 'the right to exclude others from using his property.'" *eBay*, 547 U.S. at 392 (quoting *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932)). This characteristic of intellectual property has caused some courts to conclude "copyright infringement is presumed to give rise to irreparable injury." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (quoting *Capitol Records, Inc. v. Zahn*, 2007 WL 542816, *4 (M.D. Tenn. Feb.16, 2007)); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532-33 (6th Cir. 2004) ("[I]rreparable harm is presumed once a likelihood of success on the merits has been established [in the preliminary injunction context] . . . ."). However, the viability of such a presumption after *eBay* is far from clear. *See eBay*, 547 U.S. at 392-93 ("[T]his Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed."); *Bethesda Softworks, LLC v. Interplay Entertainment Corp.*, 452 F. App'x 351, 354 (4th Cir. 2011) (concluding, consistent with Beaulieu's position, that the Supreme Court did away with the presumption articulated in *Lexmark* when it announced the decision in *eBay*).

Regardless, and contrary to Beaulieu's representations, the injury here is not simply nonpayment for use of Virtual's images. The owner of intellectual property, as indicated in *eBay*, has a right–separate from commercial interest or desire for payment–to keep his property to himself and to ensure others respect his exclusive control over that property even if he wishes not to use it at all. Infringement of that right, regardless of whether the holder of the copyright does not stand to lose any money or commercial advantage, is a unique injury in its own right. For the reasons discussed herein, the Court concludes that Virtual does face a risk of future infringement. The Court

14

is without the ability to rectify Virtual's injury in light of this risk without enjoining such infringement. Thus Virtual has established the first factor.

"With regard to the second factor, the Sixth Circuit has explained that where there is potential for future harm from infringement, there is no adequate remedy at law." *Microsoft Corp.*, 490 F. Supp. 2d at 882 (citing *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006)). For the reasons discussed above, Virtual's interest in exclusive control over its images is separate from its interest in damages. Beaulieu has indicated its new, post-judgment policies seek to avoid any future infringement of Virtual's copyright. The Court applauds Beaulieu's efforts. But given Beaulieu's past infringement after notification of Virtual's copyright interest, and the continued circulation of possibly infringing materials,[5] the Court concludes some risk of future infringement remains. The injury incurred by a copyright holder from an infringer's disrespect for its exclusive rights cannot be rectified by damages. The only means of ensuring that independent interest is validated is through an injunction prohibiting further infringement.

The third factor, the balance of hardships, is well established. An injunction merely requires Beaulieu to comply with the Copyright Act, but failing to enjoin Beaulieu could put Virtual at risk

---

[5] Again, the Court feels compelled to clarify it does not necessarily conclude the room scene images still in circulation were any of those found to be infringing by the jury. Beaulieu has made clear it would balk at any such conclusion. But the Court is tasked here with considering the *risk* of future infringement. At the hearing on this matter, Virtual identified a number of Beaulieu products still on display in stores that contain Virtual's images. Even if the specific images were not found to be infringing by the jury and do not constitute current infringement by Beaulieu, the Court finds the likelihood is high that displays abound containing infringing images. That infringing materials are still possessed among Beaulieu's customers presents a *risk* they could fall back into Beaulieu's hands. Given Beaulieu's past infringement and current protestations about the scope of the jury's verdict, there is a *risk* such materials could be used in the future to infringe Virtual's copyright. A *risk* is all the Court is required to find; the Court is not required to find future infringement is a certainty.

15

of suffering future infringement. Beyond the unique harm a copyright owner suffers when he loses exclusive control over his intellectual property, future infringement could require a new, independent action. Moreover, were Beaulieu inclined to continue using Virtual's images, the absence of an injunction may lead to further lost profit. *See id.* ("With regard to the balance of hardships, the Court finds a permanent injunction is warranted because there is no harm to the Defendant inasmuch as an injunction will merely require Defendant to comply with the Copyright Act and Lanham Act. In contrast, Microsoft faces hardship from loss of sales.") (internal citations omitted); *see also Audi*, 469 F.3d at 550 ("In balancing the hardships between each party, we note that D'Amato faces no hardship in refraining from willful trademark infringement, whereas Audi faces hardship from loss of sales.").

Finally, the public's interest would not be disserved by an injunction. "Given 'the public interest . . . in upholding copyright protections,' injunctions are regularly issued pursuant to 17 U.S.C. § 502." *Disney Enters. v. Farmer*, 427 F. Supp. 2d 807, 819 (E.D. Tenn. 2006) (quoting *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003)).

Accordingly, Virtual is entitled to an injunction under the general equitable principles discussed in *eBay*. Given the lengthy term of Beaulieu's prior infringement, and that Beaulieu continued infringing after receiving notice of Virtual's rights, an injunction is appropriate in this case.

### 3. Accounting and Impoundment

Virtual also seeks an injunction requiring Beaulieu "to account for and remove any in-store, online, or print advertising that depicts or displays its products in Virtual's copyrighted room scenes." In Virtual's supplement to its proposed findings of fact, it further sought an "impoundment

16

of all the infringing copies Beaulieu uses to display its products." Beaulieu, in its pre- and post-trial filings, objected to Virtual's request for an impoundment and accounting of materials in the possession of third parties. Beaulieu argues Virtual has identified no legal basis for this request. The parties' primary dispute in this regard is whether a defendant must be in possession or control of the infringing materials for a court to order an impoundment. *Compare Societe Civile Succession Richard Guino v. Int'l Found. for Anticancer Drug Discovery*, 460 F. Supp. 2d 1105, 1107-12 (D. Ariz. 2006) (considering the case law and statutory context and concluding the Copyright Act "does not permit the impoundment of infringing items in the hands of innocent purchasers who are not themselves liable for infringement"), *with AMC Tech., LLC v. SAP AG, et al.*, No. Civ.A.05-CV -4708, 2005 WL 3008894, at *13 (E.D. Pa. Nov. 3, 2005) (requiring as part of an injunction the defendants "retrieve any copy of the Component Upgrade Guide or equivalent information already distributed").

The Court decides this issue on narrower grounds. In questions of equity, the Court has broad discretion to consider the hardship its orders would cause the defendant. *See eBay*, 547 U.S. at 391 (requiring consideration of "the balance of hardships between the plaintiff and defendant"); *Charter Twp. of Huron, Mich. v. Richards*, 997 F.2d 1168, 1175 (6th Cir. 1993) ("Before resorting to this extraordinary remedy [of issuing an injunction], a court must balance the interests of the parties giving particular attention to the public consequences of a decree."). At issue here is whether the Court should require Beaulieu to send its employees to every store in the country to which it has sold displays (on which Virtual's images frequently appear) to confiscate these images. Beaulieu, being one of the country's largest carpet retailers, has literally thousands of customers across the country who may be in possession of these carpet samples. Requiring this sort of action on

Beaulieu's part would be, it seems to the Court, wholly unreasonable and disproportionately harmful to Beaulieu.[6]

The Court will decline Virtual's request for such a disproportionate remedy. After all, if Beaulieu's customers are displaying Virtual's images, such a display may itself run afoul of the Copyright Act. The Court will not order that Beaulieu's resources be used to do Virtual's own investigation legwork. The Court disagrees, however, with Beaulieu's representation Virtual suffers *no harm at all* by its customers' continued display of infringing images. As discussed above, Virtual is entitled, as owner of a copyright, to exercise exclusive control over these images. That the images are being displayed in stores across the country does create a separate, independent harm. And, of course, these images are on display as a result of Beaulieu's prior infringement.

Accordingly, as part of its injunction, the Court will require Beaulieu to inform its customers by letter of the jury's verdict in this case and that they may be in possession of infringing materials. Beaulieu will not be required to send this letter to all it customers; Beaulieu must only send this letter to those customers it reasonably believes received Virtual's images. Beaulieu prepared a list of these customers in its third supplemental response to Virtual's request for interrogatories. This list was offered as an exhibit at trial (Plaintiff's Exhibit 62, Defendant's Exhibit 338), and the full list was read into the record (Court File No. 128, p. 349). The parties also referred to this list during the permanent injunction hearing. The Court will require Beaulieu to send a letter to these identified customers informing them of the jury's verdict and that they do not have the right to display the images the jury found infringed Virtual's copyright and listed on the verdict form at Court File No.

---

[6] The cost would likely be so prohibitively expensive Beaulieu would be forced to pay, in addition to the nearly two million dollar judgment in this case, some extravagant fee to Virtual to avoid this extreme undertaking.

Case 1:11-cv-00359-CLC-SKL   Document 166   Filed 12/17/13   Page 18 of 22   PageID #: 5678

123, p. 3.  Attached to this letter should be copies of the images on which the jury relied so the customers may be able to identify which of the displays contain these images.  If, in the course of complying with the Court's order, Beaulieu identifies other customers to whom these images were likely sent, Beaulieu must also send the letter to the newly identified customer.

Beaulieu argues such a letter could poison an otherwise fruitful business relationship.  In the context of Virtual's harm, this speculative concern is insufficient to avoid this simple fix. Accordingly, the Court will **DENY** Virtual's request for impoundment of articles not in Beaulieu's possession but will require Beaulieu to notify its customers they may be in possession of infringing materials.

### 4.  Laches

Beaulieu has also raised the issue of laches. Laches is "a negligent and unintentional failure to protect one's rights." *Chirco v. Crosswinds Communities, Inc*., 474 F.3d 227, 231 (6th Cir. 2007) (citing *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc*., 936 F.2d 889, 894 (6th Cir. 1991)). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Id.* (quoting *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)). Under most circumstances, given that laches is generally considered an equitable doctrine, "efforts by a plaintiff to obtain the monetary or injunctive relief authorized by statute within the limitations period provided by the Copyright Act will be allowed to proceed." *Id.* at 236.  However, in "unusual cases" where "the relief sought will work an *unjust* hardship upon the defendants or upon innocent third parties," the doctrine of laches may be available in a copyright infringement action. *Id.* at 236 (emphasis in original).

Beaulieu merely argues Virtual waited too long, as it "slept on its rights for at least seven

19

years" and "gave every indication that it was no longer asserting any claim, from 2009 to 2011."

However, this action was brought within the statute of limitations and Beaulieu has not established

an unjust hardship. To the extent impoundment of materials in the possession of Beaulieu's

customers would have created a hardship, the Court has declined to require impoundment here.

Further, the jury considered this issue and rejected Beaulieu's argument. Accordingly, Beaulieu is

not protected by the doctrine of laches.

### D. Attorney's Fees

Finally, Virtual requests attorney's fees under the Copyright Act, which provides, "the court

in its discretion may allow the recovery of full costs by or against any party. . . . [T]he court may

also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

In the Sixth Circuit, "[t]he grant of fees and costs 'is the rule rather than the exception and they

should be awarded routinely.'" *Balsley v. LFP, Inc.*, 691 F.3d 747, 773 (6th Cir. 2012) (quoting

*Bridgeport Music, Inc. v. WB Music Corp. (WB Music II)*, 520 F.3d 588, 592 (6th Cir. 2008)). But

recognizing an award of attorney's fees is a matter within the Court's discretion, the Supreme Court

has identified a number of factors to guide the exercise of that discretion, including "frivolousness,

motivation, objective unreasonableness (both in the factual and legal components of the case) and

the need in particular circumstances to advance considerations of compensation and deterrence." *WB

Music II*, 520 F.3d at 592 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). "The

factors need not all weigh in favor of an award in order to grant fees to a prevailing party and other

factors may be considered." *Id.*

Beaulieu does not spend any portion of its brief analyzing these points. Rather, Beaulieu

argues the jury improperly found in favor of Virtual. But the Court must credit the jury's verdict.

Virtual is the prevailing party in this case. Due to Beaulieu's haste to attack the jury's verdict, the Court is without Beaulieu's input on the operative analysis.

Notwithstanding Beaulieu's failure to address the salient issues, the Court concludes an award of attorney's fees is inappropriate in this case. Beaulieu's defenses and counterclaim were not frivolous. There were legitimate questions regarding Virtual's long wait to raise these claims as well as a history of agreements between the parties. Relying on these theories at trial, although they were rejected by the jury, was reasonable trial strategy. Moreover, Virtual was well compensated by the award in this case. Beaulieu does not require special deterrence, as the Court has also granted an injunction preventing Beaulieu from committing future infringement. With regard to general deterrence, the verdict in this case totaled nearly two million dollars, and only then after the Court limited Virtual's ability to prove damages as a sanction for discovery violations. Such a judgment itself provides an adequate deterrent against copyright infringement.

After evaluating all the facts and circumstances in this case, the Court finds the jury's verdict adequately compensated Virtual in this case and serves as a sufficient deterrent. Moreover, there were legitimate questions about Virtual's past agreements with Beaulieu and whether Beaulieu was still entitled to use Virtual's images. Virtual has not shown any evidence of a coverup, gross misconduct during litigation, or any other actions by Beaulieu the Court would particularly like to discourage. Therefore, the Court will **DENY** Virtual's request for attorney's fees (Court File No. 145).

## III.     CONCLUSION

For the foregoing reasons, the Court will **DENY** Beaulieu's motion for judgment as a matter of law or remittitur (Court File No. 153). The Court will also **GRANT** Virtual's request for an

21

injunction. The Court will issue an injunction against Beaulieu precluding future infringement of Virtual's images. The Court will not, however, require Beaulieu to impound any materials under third party control. A separate order shall enter containing this injunction. The Court will, however, **DENY** Virtual's motion for attorney's fees (Court File No. 145).

**An Order shall enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**